UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

GENCO IMPORTING INC. d/b/a
MANITOBA'S,

          Plaintiff,

vs.

CITY OF NEW YORK, EMILY LLOYD, in her
capacity as Commissioner of the New York City
Department of Environmental Protection and as
Chairman of the New York City Environmental
Control Board, NEW YORK CITY
DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD,

          Defendants.

---

07 CV 3560

Civil Action No.

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
DAMAGES

JUDGE KAPLAN



Plaintiff Genco Importing Inc. d/b/a Manitoba's ("Manitoba's"), by its attorneys, Akin Gump Strauss Hauer & Feld LLP, as and for its complaint against Defendants, alleges as follows:

### SUMMARY

1.    Manitoba's challenges two provisions the New York City Administrative Code as unconstitutional.

2.    Manitoba's alleges that New York City Administrative Code § 24-241.1 ("Code § 24-241.1"): (1) violates due process on its face; and (2) substantially burdens protected speech on its face.

3.    Manitoba's alleges that New York City Administrative Code § 24-218 ("Code § 24-218"): (1) substantially burdens protected speech, as applied to Manitoba's; (2) violates due process, as applied to Manitoba's; (3) violates due process on its face; and (4) substantially burdens protected speech on its face.

## **INTRODUCTION**

4. Manitoba's, which operates a small bar and live music performance venue located in New York City's East Village, challenges the constitutionality of Code § 24-241.1 and Code § 24-218. In or about October 2006, Defendants issued a violation under Code § 24-241.1 against Manitoba's, seeking to impose a fine of up to $8,000. In or about February 2007, Defendants issued a second violation under Code § 24-218, seeking to impose a fine up to $875.

5. Both violations were issued to Manitoba's in connection with live musical performances occurring at Manitoba's' place of business.

6. Neither violation has yet been adjudicated. Nevertheless, as a result of the violations issued by Defendants and their potentially burdensome fines, Manitoba's has stopped hosting live music performances, a practice in which it had engaged consistently since its inception. In fact, under Code § 24-241.1 a first-time-offender may be fined up to $8,000. The fine doubles with the second offense and triples with the third—for a potential maximum of $48,000.

7. Code § 24-241.1 is unconstitutional. It provides inadequate notice of the conduct it proscribes, makes compliance contingent on the actions of a third-party private citizen, allows for arbitrary and discriminatory enforcement, and places a severe and unjustified burden on protected speech in violation of the First and Fourteenth Amendments to the United States Constitution.

8. Code § 24-218 is also unconstitutional, both on its face and as applied to Manitoba's. It provides inadequate notice of the conduct it proscribes, allows for arbitrary and discriminatory enforcement, and places a severe and unjustified burden on protected speech in violation of the First and Fourteenth Amendments to the United States Constitution.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4), 2201, and 2202, and 42 U.S.C. § 1983.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this District.

## THE PARTIES

11. Manitoba's is a corporation established under the laws of the State of New York. Its principal place of business is at 99 Avenue B in New York City's East Village, where it operates as a bar and performance venue for local musicians. Manitoba's has been in continuous operation since January 14, 1999 and since that time has featured pre-recorded and live music performances. Manitoba's is part-owned and operated by its namesake, Richard Manitoba, an East Village resident who has been well-known in the music industry for over thirty years as Handsome Dick Manitoba, lead singer for punk rock bands The Dictators, Manitoba's Wild Kingdom, and The MC5.

12. Defendant City of New York, by and through the Office of the Mayor, appoints "the heads of administrations, departments, [and] all commissioners," including the Commissioner of the New York City Department of Environmental Protection. N.Y. City Charter § 6.

13. Defendant Emily Lloyd is Commissioner of New York City Department of Environmental Protection and Chairman of New York City Environmental Control Board. Appointed in 2005, she is charged with a duty to "enforce all laws, rules and regulations to eliminate noise pollution." N.Y. City Charter § 1403d.

14. Defendant New York City Department of Environmental Protection is a New York City agency responsible, *inter alia*, for all "functions and operations of the city relating to…noise pollution." N.Y. City Charter § 1403.

15. Defendant New York City Environmental Control Board is required to enforce all provisions of the New York City Administrative Code relating to noise pollution. N.Y. City Charter § 1404c(1)(d).

16. Defendants are all proper defendants under 42 U.S.C. § 1983 because they enforce the provisions at issue as a matter of official policy and as part of a systematic and deliberate law enforcement effort. At all times herein mentioned, Defendants acted under color of state law.

## FACTS

17. Manitoba's has been in continual operation since January 14, 1999.

18. Manitoba's occupies a space it leases on the ground floor of a of a multi-story, walk-up building on New York City's Avenue B near 6th Street. The neighborhood is a night-life destination, often crowded with foot traffic, and there are numerous bars and restaurants immediately next to and across the street from Manitoba's, as well as all along Avenue B. As with most other bars and restaurants in the neighborhood, there are residential units located above Manitoba's.

19. Prior to approximately 2002, Manitoba's featured live musical performances almost daily. These performances often featured bands playing punk rock music and usually involved electronically-amplified instruments.

20. In approximately 2002, Manitoba's limited the live music performances it hosted to about one per week, usually held on Monday evenings. This decision was made, in part, to

accommodate the changing character of the neighborhood and respect the rights and concerns of its neighbors. These performances almost always began at approximately eight o'clock p.m. and ended promptly at ten o'clock p.m.

21. Upon information and belief, between approximately 2002 and October 23, 2006, Defendants never issued Manitoba's a violation or assessed a penalty against it.

22. Upon information and belief, on or about October 23, 2006, an inspector associated with Defendants investigated a noise complaint made by a resident of the second floor of the building where Manitoba's is located. Upon information and belief, that resident was aware of Manitoba's' existence and the nature of its business prior to purchase this apartment.

23. Following the investigation, the inspector informed the Manitoba's staff that it was in violation of the New York Administrative Code in connection with a live music performance because the sound level readings the inspector had taken from the inside of a residential unit purportedly exceeded the 45 dB(A) limit. Manitoba's received by mail the Notice of Violation and Hearing sometime after the investigation and may now be fined up to $8,000.

24. On or about February 12, 2007, a night on which Manitoba's featured a live musical performance, an inspector associated with Defendants informed the Manitoba's staff that, unless the volume of the music being played was lowered, Manitoba's would again be cited for violating the New York Administrative Code. The band had finished performing and thus played no additional live music.

25. Approximately two weeks later, however, Manitoba's received by mail a second Notice of Violation and Hearing, this time issued under Code § 24-218, New York City's general noise provision. They may be fined up to an additional $875.

26. Upon information and belief, the basis for the second violation was a live musical performance by a three-piece band utilizing electronically amplified instruments. The investigating inspector purportedly took noise meter readings from a hallway in the complainant's apartment building and concluded that Manitoba's was in violation of Code § 24-218 because the volume of the music exceeded 45 dB(A).

27. After receiving the second violation, Manitoba's stopped featuring live music altogether for the first time since its inception.

28. Manitoba's has suffered significant economic harm as a result of its decision to stop hosting live music performances. Evenings on which Manitoba's featured live music performances drew in many more patrons than evenings without live music. Accordingly, Manitoba's' profits have been materially and adversely affected.

29. A hearing on both violations is scheduled for May 8, 2007 before an administrative law judge associated with the New York City Environmental Control Board. Under New York law, the administrative law judge lacks authority to address Manitoba's' constitutional claims.

## CLAIMS FOR RELIEF

### COUNT ONE
(Code § 24-241.1 Violates the Due Process Clause of the
Fourteenth Amendment to the United States Constitution)

30. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 29 as if set forth herein in full.

31. Code § 24-241.1 is entitled "Commercial music" and reads as follows:

> No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound

       of such music, as measured inside any residential unit is in excess of either;
          (a) 45dB(A) as measured with a sound meter; or
          (b) 45dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz inclusive (ANSI bands numbers 18 through 27, inclusive, in accordance with American national standards institute standard S1.6-1984.

32.   A first offense under Code § 24-241.1 may be fined up to $8,000. The fine doubles for the second offense and triples for the third, for a maximum total of $48,000 for three offenses.

33.   Code § 24-241.1 deprives ordinary persons of the right to fair notice of the conduct the ordinance proscribes and allows for arbitrary and discriminatory enforcement. Therefore, Code § 24-241.1 violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague.

34.   Through the enforcement of Code § 24-241.1, Defendants, acting under color of state law, have deprived and will deprive Manitoba's of the rights, privileges, and immunities secured to it by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

**COUNT TWO**
**(Code § 24-241.1 Violates the Right to Free Speech, Protected by the First and Fourteenth Amendments to the United States Constitution)**

35.   Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if set forth herein in full.

36.   The hosting of live musical performances or playing of pre-recorded music by a commercial establishment constitutes speech protected under the First and Fourteenth Amendments to the United States Constitution.

37. Code § 24-241.1 burdens substantially more protected speech than is constitutionally permissible to further New York City's legitimate noise control policy. Code § 24-241.1 therefore infringes upon the right to free speech protected by the First and Fourteenth Amendments to the United States Constitution.

38. Through the enforcement of Code § 24-241.1, Defendants, acting under color of state law, have deprived and will deprive Manitoba's of the rights, privileges, and immunities secured to it by the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

**COUNT THREE**
**(Code § 24-218, As Applied in this Case, Violated Manitoba's'**
**Right to Free Speech, Protected by the First and Fourteenth Amendments)**

39. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 38 as if set forth herein in full.

40. Code § 24-218 is entitled "General prohibitions" and reads as follows:

> No person shall make, continue or cause or permit to be made or continued any unreasonable noise, except that this section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section of this title and where there is compliance with all other applicable requirements of law with respect to such sound.

41. Code § 24-203(ccc) defines unreasonable noise to

> mean[] any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities or injures or endangers the health or safety of a reasonable person of normal sensitivities, or which causes injury to plant or animal life, or damage to property or business.

42. Code § 24-218, as applied to Manitoba's, burdened substantially more protected speech than is constitutionally permissible. Therefore, Defendants violated Manitoba's' rights under the First and Fourteenth Amendments to the United States Constitution.

43. Defendants' enforcement of Code § 24-218 against Manitoba's, under color of state law, has deprived and will deprive Manitoba's of the rights, privileges, and immunities secured to it by the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

## COUNT FOUR
**(Code § 24-218, As Applied in this Case, Violated Manitoba's'
Due Process Rights, Protected by the Fourteenth Amendments)**

44. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

45. Defendants' interpretation of Code § 24-218's unreasonable noise standard in this case deprived Manitoba's of its right to fair notice of the conduct that the provision proscribes and allows for arbitrary and discriminatory enforcement. The application of Code § 24-218 in this case therefore deprived Manitoba's of the right to due process secured to it by the Fourteenth Amendment to the United States Constitution.

46. Through the enforcement of Code § 24-218 in this manner, Defendants, acting under color of state law, have deprived and will deprive Manitoba's of the rights, privileges, and immunities secured to it by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

## COUNT FIVE
### (Code § 24-218, On its Face, Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution)

47. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 46 as if set forth herein in full.

48. Code § 24-218 deprives ordinary persons of the right to fair notice of the conduct the ordinance proscribes and allows for arbitrary and discriminatory enforcement. Therefore, Code § 24-218 violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague.

49. Defendants' enforcement of Code § 24-218 against Manitoba's, under color of state law, has deprived and will deprive Manitoba's of the rights, privileges, and immunities secured to it by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

## COUNT SIX
### (Code § 24-218, On its Face, Violates the Right to Free Speech, Protected by the First and Fourteenth Amendments to the United States Constitution)

50. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if set forth herein in full.

51. Code § 24-218 burdens substantially more protected speech than is constitutionally permissible to further New York City's legitimate noise control policy. Code § 24-218 therefore infringes upon the right to free speech protected by the First and Fourteenth Amendments to the United States Constitution.

52. Defendants' enforcement of Code § 24-218 against Manitoba's, under color of state law, has deprived and will deprive Manitoba's of the rights, privileges, and immunities

secured to it by the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

## COUNT SEVEN
### (Manitoba's Has Suffered Damages as a Result of the Violation of Its Constitutional Rights)

53. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 52 as if set forth herein in full.

54. On account of Defendants' actions, Manitoba's has suffered damages resulting from lost trade, lost revenues, and the infringement of its constitutional rights.

## JURY DEMAND

55. Manitoba's hereby demands a trial by jury on all issues so triable

## PRAYER FOR RELIEF

WHEREFORE, Manitoba's respectfully asks this Court to enter judgment in its favor and against Defendants:

a. Declaring and determining that the offending provisions of New York City's Administrative Code are void and unenforceable as violative of the United States Constitution;

b. Permanently enjoining Defendants from enforcing future violations issued under Code §§ 24-241.1 and 24-218 against Manitoba's;

c. Permanently enjoining Defendants from enforcing the violations issued against Manitoba's;

d. Awarding Manitoba's damages for its unlawful prosecution, the deprivation of its constitutional liberties, and the costs incurred in this litigation, including reasonable attorneys' fees;

e. Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
May 3, 2007

David M. Zensky (DZ5913)
Jason W. Sunshine (JS0562)
Ryan N. Marks (Bar Admission Pending)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

*Counsel for Plaintiff*