Index No.  07 CV 3560 (LAK)(ECF Case)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENCO IMPORTING INC., d/b/a MANITOBA'S,

Plaintiff,

- against -

CITY OF NEW YORK, EMILY LLOYD, in her capacity
as Commissioner of the New York City Department of
Environmental Protection and as Chairman of the New
York City Environmental Control Board, NEW YORK
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Michelle Goldberg-Cahn*
*Tel:  (212) 788-0758*
*NYCLIS No. 2007-015423*

June 21, 2007

GABRIEL TAUSSIG,
PAULA VAN METER,
MICHELLE GOLDBERG-CAHN,
            Of Counsel.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

STATUTORY FRAMEWORK .......................................................................................... 2

STATEMENT OF MATERIAL FACTS ............................................................................ 6

ARGUMENT

    POINT I

        THE CHALLENGED PROVISIONS OF THE NOISE CODE ARE CONTENT NEUTRAL TIME, PLACE AND MANNER REGULATIONS THAT ARE NARROWLY TAILORED TO PROMOTE A SIGNIFICANT GOVERNMENT INTEREST AND AFFORD PLAINTIFF AMPLE AVENUES FOR SPEECH, AND THUS, DO NOT VIOLATE THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION. .................................................................6

           A.    The Challenged Provisions Of The Noise Code (Admin. Code §§ 24-218 And 24-241.1) Are Content-Neutral................................................................8

           B.    Noise Code Sections 24-218 And 24-241.1 Are Narrowly Tailored To The City's Interest In Protecting The Public Health, Welfare, And Safety. ...............................................................10

           C.    The Challenged Provisions Of The Noise Code Afford Plaintiff And Others Ample Channels Of Communication.....................................................14

    POINT II

        THE CHALLENGED PROVISIONS OF THE CITY'S NOISE CODE ARE NOT UNCONSTITUTIONALLY VAGUE.......................................................................15

**Page**

    A.    The Challenged Provisions Of The Noise Code Are Not Unconstitutionally Vague Under The Void-For-Vagueness Doctrine. ........................................................15

    B.    The Challenged Provisions Of The Noise Code Are Not Unconstitutionally Vague Under The Stringent Vagueness Test Applied In First Amendment Cases. ........................................................19

CONCLUSION ........................................................................21

APPENDIX

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                               <u>**Pages**</u>

<u>Alexander v. United States</u>,
    509 U.S. 544, 113 S. Ct. 2766 ...........................................................................14

<u>Boos v. Barry</u>,
    485 U.S. 312, 108 S. Ct. 1157 (1988).................................................................9

<u>Burson v. Freeman</u>,
    504 U.S. 191, 112 S. Ct. 1846 (1992).................................................................7

<u>Carew-Reid v. Metropolitan Transp. Authority</u>,
    903 F.2d 914 (2d. Cir. 1990),.............................................................................12

<u>Matter of Children of Bedford, Inc. v. Petromelis</u>,
    77 N.Y.2d 713, 570 N.Y.S.2d 453 (1991) .........................................................15

<u>City Council of Los Angeles v. Taxpayers for Vincent</u>,
    466 U.S. 789, 104 S. Ct. 2118 (1984)..........................................................10, 19

<u>City of Beaufort v. Baker</u>,
    315 S.C. 146, 432 S.E.2d 470 (S.C. 1993) ......................................................18

<u>City of Madison v. Baumann</u>,
    162 Wis. 2d 660, 470 N.W.2d 296 (Wis. 1991) ...............................................18

<u>Clark v. Community for Creative Non-Violence</u>,
    468 U.S. 288, 104 S. Ct. 3065 (1984).......................................................7, 8, 11

<u>Crockett Promotion v. City of Charlotte</u>,
    706 F.2d 486 (4th Cir. 1983) ............................................................................20

<u>Dae Woo Kim v. City of New York</u>,
    774 F. Supp. 164 (S.D.N.Y. 1991) ...................................................................18

<u>Foss v. City of Rochester</u>,
    65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985) ........................................................15

<u>Grayned v. City of Rockford</u>,
    408 U.S. 104, 92 S. Ct. 2294 (1972)..............................................................8, 10

<u>The Harlem Yacht Club v. City of New York Environmental Control Board</u>,
    2007 N.Y. Slip Op. 4053, 2007 N.Y. App. Div. LEXIS 5842 (1st Dep't, May 10,
    2007) ...............................................................................10, 11, 14, 17, 20

**Cases**                                                                                     **Pages**

Heffron v. International Society for Krishna Consciousness, Inc.,
　　452 U.S. 640, 101 S. Ct. 2559 (1981) ...................................................................7

Housing Works, Inc. v. Kerik,
　　283 F.3d 471 (2d Cir. 2002) ..............................................................................7

Howard Opera House Associates v. Urban Outfitters, Inc.,
　　131 F. Supp. 2d 559 (D. Vt. 2001) ..............................................................17, 18

Jim Crockett Promotion, Inc. v. City of Charlotte,
　　706 F.2d 486 (4th Cir. 1983) ............................................................................19

Kovacs v. Cooper,
　　336 U.S. 77, 69 S. C. 448 (1949) .....................................................................11

New Amber Auto Service v. New York City Environmental Control Board,
　　163 Misc. 2d 113 (N.Y. Sup. Ct., N.Y. County 1994) .....................................19

New York State Nat'l Org. for Women v. Terry,
　　886 F.2d 1339 (2d Cir. 1989) .............................................................................8

Olivieri v. Ward,
　　801 F.2d 602 (2d Cir. 1986),
　　cert. denied, 480 U.S. 917 (1987) ...................................................................7, 8

People v. The Engineer's County Club, Inc.,
　　2003 N.Y. Slip Op. 510690; 2003 N.Y. Misc. LEXIS 858
　　(Village Court, Roslyn Harbor, June 23, 2003) ................................................9

People v. Foley,
　　94 N.Y.2d 668, 709 N.Y.S.2d 467 (2000),
　　cert denied, 531 U.S. 875, 121 S. Ct. 181 (2000) ...........................................16

People v. New York Trap Rock Corp.,
　　57 N.Y.2d 371, 456 N.Y.S.2d 711 (1982) .......................................................18

People v. Shack,
　　86 N.Y.2d 529, 538, 634 N.Y.S.2d 666 (1995) ...............................................16

People v. Smith,
　　44 N.Y.2d 613, 407 N.Y.S.2d 462 (1978) .......................................................15

People v. Toback,
　　170 Misc. 2d 1011, 652 N.Y.S.2d 946 (City Court, Long Beach, Dec. 17, 1996) ..............9, 20

**Cases**                                                      **Pages**

Price v. State,
    622 N.E.2d 954 (Ind. 1993) ...........................................................................18

Pro-Choice Network v. Schenck,
    67 F.3d 359 (2d Cir. 1994),
    modified on other grounds en banc, 67 F.3d 377 (2d Cir. 1995),
    aff'd in part, rev'd in part on other grounds, 519 U.S. 357, 117 S. Ct. 855 (1997)................18

Reaves v. McCann,
    631 F.2d 377 (5th Cir. 1980) ..........................................................................19

Reminisce Bar and Lounge v. City of New York Dep't of Envt'l Protection,
    178 Misc. 2d 640 (Sup. Ct., N.Y. County 1998) ..................................................21

Sharkeys, Inc. v. City of Waukesha,
    265 F. Supp. 2d 984 (E.D. Wisc. 2003)....................................................17, 18, 19

Shuttlesworth v. City of Birmingham,
    394 U.S. 147, 89 S. Ct. 935 (1969)....................................................................7

State v. Linares,
    232 Conn. 345, 655 A.2d 737 (Conn. 1995)........................................................18

Texas v. Johnson,
    491 U.S. 397, 109 S. Ct. 2533 (1989)..................................................................7

Turley v. Giuliani,
    86 F. Supp. 2d 291 (S.D.N.Y. 2000)............................................................12, 13

Turley v. New York City Police Dep't,
    No. 93 Civ. 8748, 1996 WL. 93726 (S.D.N.Y. 1996) ..........................................11

United States v. Grace,
    461 U.S. 171, 103 S. Ct. 1702 (1983)..................................................................7

United States v. Schneiderman,
    968 F.2d 1564 (2d Cir. 1992),
    cert. denied, 507 U.S. 921, 113 S. Ct. 1283 (1993) ..............................................15

Village of Hoffman Estates v. The Flip Side, Hoffman Estates, Inc.,
    455 U.S. 489, 102 S. Ct. 1186 (1981)................................................................16

Ward v. Rock Against Racism,
    491 U.S. 781, 109 S. Ct. 2746 (1989)............................................................ *passim*

**Cases**                                                                                                    **Pages**

United States v. Albertini,
    472 U.S. 675, 689, 105 S. Ct. 2897, 2906-07 (1985)) .............................................................12

Wegman's Food Markets, Inc. v. State of New York,
    76 A.D.2d 95 (4th Dep't 1980)................................................................................................16

**Statutes**

15 RCNY § 31-11 .........................................................................................................................5

15 RCNY § 31-51 .........................................................................................................................5

15 RCNY § 31-57 .........................................................................................................................5

15 RCNY § 31-71 .........................................................................................................................5

15 RCNY § 31-74 .........................................................................................................................5

15 RCNY § 31-75 .........................................................................................................................6

Administrative Code § 24-241.1 ............................................................................................. *passim*

Administrative Code § 24-218 ................................................................................................ *passim*

Administrative Code § 24-202.........................................................................................2, 9, 13

Administrative Code § 24-203(kk) ...............................................................................................3

Administrative Code § 24-203(g) .................................................................................................3

Administrative Code § 24-203(y) .................................................................................................3

Administrative Code § 24-257.......................................................................................................5

Administrative Code § 24-203(ccc)......................................................................................... *passim*

City Charter § 1404(c)(1)(d) .........................................................................................................5

FRCP Rule 12(b)(6)........................................................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

GENCO IMPORTING INC., d/b/a MANITOBA'S,

                                        Plaintiff,

                   - against -

CITY OF NEW YORK, EMILY LLOYD, in her capacity
as Commissioner of the New York City Department of
Environmental Protection and as Chairman of the New
York City Environmental Control Board, NEW YORK
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD,

                                  Defendants.

-------------------------------------------------------------------- x

07 CV 3560 (LAK)
(ECF Case)

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

### PRELIMINARY STATEMENT

      Defendants, the City of New York, Emily Lloyd in her capacity as Commissioner

of the New York City Department of Environmental Protection ("DEP") and as Chair of the New

York City Environmental Control Board ("ECB"), DEP, and ECB, submit this memorandum of

law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

("FRCP"), because the complaint fails to state a cause of action against defendants.

      Plaintiff is an operator of Manitoba's, a bar located in the East Village of New

York City. Plaintiff alleges that while it used to have daily or weekly live musical performances,

it has scaled back its live music performances due to both the change in the character of the

neighborhood and because of the issuance of two violations of the New York City Noise Control

Code ("Noise Code") by DEP, which have yet to be adjudicated at ECB. Plaintiff herein

challenges two provisions of the Noise Code — Administrative Code §§ 24-218 and 24-241.1 —
alleging that those provisions violate its constitutional rights. Specifically, plaintiff alleges that
Administrative Code § 24-241.1 is: (1) unconstitutionally vague in violation of its federal due
process rights (Complaint, Count 1); and (2) unconstitutionally burdensome of the right to free
speech under the First Amendment of the United States Constitution (Complaint, Count 2).
Plaintiff further alleges that Administrative Code § 24-218 is: (1) unconstitutionally vague in
violation of its federal due process rights (Complaint, Count 5); (2) in violation of plaintiff's due
process rights as applied to it (Complaint, Count 4); (3) in violation of plaintiff's First
Amendment rights to protected speech as applied to it (Complaint, Count 3); and (4)
unconstitutionally burdensome of the right to free speech under the First Amendment of the
United States Constitution (Count 6).

  As is set forth herein, plaintiff's allegations fail to state a cause of action. First,
plaintiff's claims that Administrative Code sections 24-218 and 24-241.1 violate the First
Amendment both on their face and as applied to plaintiff fail as a matter of law, since both
provisions contain time, place, and manner restrictions as permitted under the First Amendment.
Second, plaintiff's claim that the provisions violate their Due Process rights insofar as plaintiff
alleges they are unconstitutionally vague, further fails as a matter of law because meaning of the
challenged provisions of the Noise Code is easily understood by persons of ordinary intelligence.
As a result, this Court should dismiss the complaint in its entirety.

## STATUTORY FRAMEWORK

### The New York City Noise Control Code

  The New York City Noise Control Code ("Noise Code") is codified in Chapter 2
of Title 24 of the Administrative Code. As set forth in Administrative Code § 24-202, the Noise
Code was enacted to "to reduce the ambient noise level in the city, so as to preserve, protect and

promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster the convenience and comfort of its inhabitants, and facilitate the enjoyment of the natural attractions of the city." As further set forth in that section:

> It is the public policy of the city that every person is entitled to ambient noise[1] levels that are not detrimental to life, health and enjoyment of his or her property. It is hereby declared that the making, creation or maintenance of excessive and unreasonable noises within the city affects and is a menace to public health, comfort, convenience, safety, welfare and the prosperity of the people of the city. For the purpose of controlling and reducing such noises, it is hereby declared to be the policy of the city to set the unreasonable noise standards and decibel levels[2] contained herein and to consolidate certain of its noise control legislation into this code. The necessity for legislation by enactment of the provisions of this chapter is hereby declared as a matter of legislative determination.

> This code shall be liberally construed so as to effectuate the purposes described in this section. Nothing herein shall be construed to abridge the emergency powers of the board of health or the right of the department of health to engage in any of its necessary or proper activities. Nothing herein shall abridge the powers and responsibilities of the police department to enforce the provisions of this code.

---

[1] As defined in Administrative Code § 24-203(kk), noise "means an erratic, intermittent, or statistically random oscillation." "Ambient noise" is defined in Administrative Code § 24-203(g), as "the all-encompassing noise associated with a given environment, being usually a composite of sounds from many sources near and far."

[2] Administrative Code § 24-203(y), defines "decibel" as "one-tenth of a bel. Thus, the decibel is a unit of level when the base of the logarithm is the tenth root of ten, and the quantities concerned are proportional to power." Because the decibel scale is logarithmic, an increase of 10 dB(A) will be perceived as a doubling of loudness, a decrease of 10 dB(A) as a halving of loudness.

As set forth in Administrative Code § 24-218, "no person shall make, continue or cause to permit to be made or continued any unreasonable noise, except that this section shall not apply to any sound[3] from any source where the decibel level of such sound is within the limits prescribed by another section of this title and where there is compliance with all other applicable requirements of law with respect to such sound."

The term "unreasonable noise" is defined in Administrative Code § 24-203(ccc) to mean "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business."

Administrative Code § 24-241.1 sets forth the restrictions on commercial music. It states, as follows:

> **§ 24-241.1  Commercial music.**
>
> No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound of such music, as measured inside any residential unit is in excess of either;
>
> (a)  45 dB(A) as measured with a sound level meter; or
>
> (b)  45 dB in any one-third octave band having a center frequency between 63 hertz and 500 (ANSI bands numbers 18 through 27, inclusive), in accordance with American National Standards standard S1.6-1984.

---

[3] A sound is "an oscillation in pressure, stress, particle displacement, particle velocity, etc., in a medium with internal forces (e.g., elastic, viscous), or the superposition of such propagated oscillation which evokes an auditory sensation." Admin. Code § 24-203(ss).

**Adjudication of Noise Code Violations at ECB**

ECB is a division of DEP which is headed by a thirteen member board and which has the powers and duties enumerated in Section 1404 of the City Charter. Pursuant to City Charter § 1404(c)(1)(d) and Administrative Code § 24-257, ECB is empowered to adjudicate and enforce the provisions of the Noise Code. To this end, ECB may conduct adjudicatory proceedings, impose penalties, and enter and enforce judgments. City Charter § 1404(c)(1)(d) and Admin. Code § 24-257. ECB has adopted rules and regulations governing the conduct of its enforcement proceedings.[4]

ECB's hearing procedures are set forth in Title 15, Chapter 31, Sub-Chapter C, of the Rules of the City of New York ("RCNY"). Tile 15 RCNY Section 31-51 sets forth the general rules for hearings at ECB, and states that ECB respondents shall receive a fair and impartial hearing before an ECB hearing officer. ECB hearing officers render recommended decisions and orders in accordance with 15 RCNY § 31-57. Title 15 RCNY Section 31-71 sets forth the procedures for appealing an ECB hearing officer's decision. If a party aggrieved by a hearing officer's determination files written exceptions[5] with the Board, the Board will review the record and render a determination in accordance with 15 RCNY § 31-74.

---

[4] In addition to the rules and regulations adopted by ECB, from time to time the Board adopts resolutions at its public meetings, which set penalty schedules, that are later published in the *City Record* pursuant to the provisions in the New York City Administrative Procedure Act ("CAPA"), that become rules setting forth the penalty schedules for ECB Administrative Law Judges ("ALJs") to use when assessing fines. As defined in 15 RCNY § 31-11, a "respondent" is the person against whom the charges alleged in the NOV have been filed. The "petitioner" is the commissioner, department or bureau within a department of the City, which commences adjudicatory, or enforcement proceedings before the ECB. See 15 RCNY § 31-11.

[5] For the purposes of full ECB review, the filing of exceptions is the same as the filing of an appeal.

As set forth in 15 RCNY § 31-75, "judicial review of the final decision and order of the board may be sought pursuant to Article 78 of the New York Civil Practice Law and Rules."

## STATEMENT OF MATERIAL FACTS

The statement of material facts are set forth in the Complaint, ¶¶ 17-29.  For the purposes of this motion to dismiss the complaint pursuant to FRCP Rule 12(b)(6), defendants will assume those facts to be true.

## ARGUMENT

## POINT I

## THE CHALLENGED PROVISIONS OF THE NOISE CODE ARE CONTENT NEUTRAL TIME, PLACE AND MANNER REGULATIONS THAT ARE NARROWLY TAILORED TO PROMOTE A SIGNIFICANT GOVERNMENT INTEREST AND AFFORD PLAINTIFF AMPLE AVENUES FOR SPEECH, AND THUS, DO NOT VIOLATE THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION.

Plaintiff's complaint does not even set forth what aspect of its speech is allegedly curtailed by the requirements of Admin. Code §§ 24-241.1 and 24-218.  To the extent that plaintiff is alleging that its First Amendment rights to have live music or loud recorded music played at its commercial establishment are violated by the challenged Noise Code provisions (both on their face and as applied to plaintiff),[6] plaintiff's arguments fail as a matter of law. While defendants recognize that music constitutes speech that is entitled to First Amendment protection, the United States Supreme Court has held that "the First Amendment does not

---

[6] Despite that plaintiff's complaint alleges both a "facial" challenge (Count 6) and an "as applied" (Count 3) First Amendment challenge to Admin. Code § 24-218, in reality, the challenge raised by plaintiff is really the same thing and the same analysis applies.

guarantee the right to communicate one's views at all times and places and in any manner that may be desired." Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981). See also United States v. Grace, 461 U.S. 171, 177-78, 103 S. Ct. 1702, 1706-1708 (1983); Olivieri v. Ward, 801 F.2d 602, 605 (2d Cir. 1986), cert. denied, 480 U.S. 917 (1987) ("the First Amendment does not guarantee an absolute right to anyone to express their views any place, at any time, and in any way they want."). "'[E]xpressive activity, even in a quintessential public forum, may interfere with other important activities for which the property is used.'" Housing Works, Inc. v. Kerik, 283 F.3d 471, 478 (2d Cir. 2002), quoting Burson v. Freeman, 504 U.S. 191, 196, 112 S. Ct. 1846, 1850 (1992).

The Supreme Court has held that the use of public streets and parks, although covered by the First Amendment, is not considered "pure speech" within the First Amendment. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 152, 89 S. Ct. 935, 940 (1969). Accordingly, the government "has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Texas v. Johnson, 491 U.S. 397, 406, 109 S. Ct. 2533, 2540-41 (1989). Thus, plaintiff's right to play music may be curtailed by reasonable restrictions on the time, place, or manner of speech. See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753-54 (1989); Housing Works, Inc., 283 F.3d at 478. The Noise Code provisions at issue here are exactly the type of regulation of speech that has been upheld on numerous occasions and in numerous contexts.

To pass constitutional muster, a time, place and manner restriction of speech or conduct in a public forum must be content-neutral, narrowly tailored to meet a significant governmental interest, and leave open ample alternative means of communication. See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984);

Olivieri, 801 F.2d at 605.  In addition, the Supreme Court has found that "the nature of a place, and the pattern of its normal activities, dictate the kind of regulations of time, place and manner that are reasonable."  Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S. Ct. 2294, 2303 (1972); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1363 (2d Cir. 1989).

**A.  The Challenged Provisions of the Noise Code (Admin. Code §§ 24-218 and 24-241.1) Are Content-Neutral.**

Plaintiff sets forth the bald conclusion with nothing more that the challenged Noise Code provisions burden "substantially more protected speech than is constitutionally permissible to further New York City's legitimate noise control policy."  Complaint, ¶¶ 37, 51. Plaintiff simply alleges that "[t]he hosting of live musical performances or playing of pre-recorded music by a commercial establishment constitutes speech protected under the First and Fourteenth Amendments to the United States Constitution."  Complaint, ¶ 36.  While defendants do not dispute that music is a form a protected speech, plaintiffs do not allege — and, indeed, cannot allege — that the challenged Noise Code provisions are not content-neutral.  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  Rock Against Racism, 491 U.S. at 791, 109 S. Ct. at 2753.  "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  Id.  A regulation is content-neutral where, as here, it is "justified without reference to the content of the regulated speech."  Id. (quoting Clark, 468 U.S. at 295, 104 S. Ct. at 3070).

Admin. Code § 24-218 prohibits "any reasonable noise, except that this section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section of this title ...."  Admin. Code § 24-203(ccc) defines

"unreasonable noise" as "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities or endangers the health or safety of a reasonable person of normal sensitivities, or which causes injury to plant or animal life, or damage to property or business." Moreover, Admin. Code § 24-241.1 sets forth specific decibel limits prohibiting "music originating from or in connection with the operation of any commercial establishment or enterprise." These Noise Code provisions govern the use of sound and music heard on the City's streets, without regard to the genre of the music or message it conveys — be it classical, rock and roll, or rap. As set forth above, the Noise Code was first enacted "to reduce the ambient noise level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster convenience and comfort to its inhabitants, and facilitate the enjoyment of the natural attractions of the city." Admin. Code § 24-202. The Noise Code was not enacted due to a disagreement with any messages that may be associated with certain types of noise or music. Indeed, plaintiff itself admits that the city has a "legitimate noise control policy." Complaint, ¶¶ 37, 51.

Noise Code provisions similar to the challenged provisions have already been found by the courts to be content neutral. See Ward v. Rock Against Racism, 491 U.S. at 791-792, 109 S. Ct. at 2753-54 (holding that sound-amplification guideline based on city's desire to control noise levels "'has nothing to do with content'") (quoting Boos v. Barry, 485 U.S. 312, 320, 108 S. Ct. 1157, 1163 (1988)). See also People v. Toback, 170 Misc.2d 1011, 1013, 652 N.Y.S.2d 946, 948 (City Court, Long Beach, Dec. 17, 1996) (upholding town noise code as content neutral as it "places a limitation on the loudness of the speech and in no way distinguishes its content"); (People v. The Engineer's County Club, Inc., 2003 N.Y. Slip Op.

51069U; 2003 N.Y. Misc. LEXIS 858, *8 (Village Court, Roslyn Harbor, June 23, 2003) (a copy is appended hereto) (finding unreasonable noise statute to be content neutral). Indeed, the New York State Supreme Court, Appellate Division, First Department, recently upheld the constitutionality of Admin. Code § 24-218 — one of the provisions specifically challenged herein — in <u>The Harlem Yacht Club v. City of New York Environmental Control Board</u>, 2007 N.Y. Slip Op. 4053, 2007 N.Y. App. Div. LEXIS 5842 (1st Dep't, May 10, 2007) (a copy is appended hereto). In <u>Harlem Yacht Club</u>, the petitioner therein challenged Admin. Code § 24-218 alleging that such ordinance violates its First Amendment rights and is unconstitutionally vague. <u>See id.</u> The Appellate Division, First Department found that "[t]here is no dispute that the ordinance is content neutral; respondent met its burden of demonstrating that the ordinance was enacted to further a substantial government interest in protecting its citizens from unwelcome noise and is narrowly tailored to achieve that goal [citations omitted]; and petitioners are not without alternative means of communications . . . ." <u>Id.</u> at *2.

**B.    Noise Code Sections 24-218 and 24-241.1 are Narrowly Tailored to the City's Interest in Protecting the Public Health, Welfare, and Safety.**

It appears that plaintiff's attack on the constitutional viability of the challenged Noise Code is based upon their argument that the Noise Code provisions are not narrowly tailored to a significant government interest. Specifically, plaintiff alleges that the challenged provisions of the Noise Code "burden[] substantially more protected speech than is constitutionally permissible to further New York City's legitimate noise control policy." Complaint, ¶¶ 31, 51. It is undisputed that the City has "'a substantial interest in protecting its citizens from unwelcome noise.'" <u>Ward v. Rock Against Racism</u>, 491 U.S. at 795, 109 S. Ct. at 2756; quoting <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 806, 104 S. Ct. 2118, 2129 (1984). <u>See also Grayned v. City of Rockford</u>, 408 U.S. 104, 116, 92 S. Ct. 2294,

2303-04 (1972); <u>Turley v. New York City Police Dep't</u>, No. 93 Civ. 8748, 1996 WL 93726, *18 (S.D.N.Y. 1996) (overruled in part on other grounds) (finding the "regulation of sound and noise, especially when competing values are threatened has long been a recognized government interest."). It has been held that "[t]his interest is perhaps at its greatest when government seeks to protect 'the well-being, tranquility, and privacy of the home,' <u>Frisby v. Schultz</u>, 487 U.S. at 484 [quotations omitted], but it is by no means limited to that context, for the government may act to protect even such traditional public forums as city streets and parks from excessive noise." <u>Ward</u>, 491 U.S. at 795, 109 S. Ct. at 2756, <u>citing</u> <u>Kovacs v. Cooper</u>, 336 U.S. 77, 86-87, 69 S. Ct. 448, 453-54 (1949) ("The unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street he is practically helpless to escape this interference with his privacy by loud speakers except through the protection of the municipality."); <u>Clark v. Community for Creative Non-Violence</u>, 468 U.S. 288, 296, 104 S. Ct. 3065, 3070 (1984) (holding that government has substantial interest in maintaining the parks in an attractive manner for all to use and enjoy). That plaintiff takes issue with the City's chosen method for protecting the public (both in their homes and on the streets) from loud noise is not legally significant. Indeed, the requirements that no persons shall make any "unreasonable noise" (Admin. Code § 24-218) as defined by Admin. Code § 24-2-3(ccc) so as not to disturb the "peace, comfort or repose of a reasonable person of normal sensitivities or injures or endangers the health or safety of a reasonable person of normal sensitivities, or which causes injury to plant or animal life, or damage to property of business" and that commercial music be limited to under 45 decibels measured by a meter when "measured inside any residential unit" (Admin. Code § 24-241.1) are narrowly tailored to these significant government interests. <u>See</u> <u>Harlem Yacht Club</u>, 2007 N.Y. Slip Op. 4053, at *2-3.

It is well-established that regulation of the time, place or manner of protected speech, such as the speech covered by the challenged Noise Code provisions, need not be "the least restrictive or least intrusive means" of achieving the City's interest in protecting the public from excessive noise. See Ward, 491 U.S. at 798, 109 S. Ct. at 2757. Rather, "the narrow tailoring requirement is satisfied so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Id. (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906-07 (1985)).

Moreover, municipalities are afforded substantial deference in determining what steps are necessary to protect the public health, welfare and safety. So long as the regulations are "not substantially broader than necessary to achieve the government's interest … the regulation[s] will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Ward, 491 U.S. at 798, 109 S. Ct. at 2757. "'The validity of [time, place or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id., quoting Albertini, 472 U.S. at 689, 105 S. Ct. at 2906-07. Indeed, the "'essence' of narrow tailoring is a 'focus on the source of the evils' that the regulation seeks to eliminate and the elimination of those evils 'without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'" See Carew-Reid v. Metropolitan Transp. Authority, 903 F.2d 914, 917 (2d. Cir. 1990), quoting, Ward 491 U.S. at 800, n. 7, 109 S. Ct. at 2758, n. 7. In Turley v. Giuliani, where plaintiffs raised a concern about Admin. Code § 24-218 and the decibel limitation applicable to permits issued at that time pursuant to Admin. Code § 10-108(e), the Court found that plaintiffs were not likely to succeed

on the merits because the City's then-applicable method with regard to the timing of sound measurements "is not so arbitrary as to be inherently inconsistent with valid time, place and manner restrictions." Turley v. Giuliani, 86 F. Supp.2d 291, 298 (S.D.N.Y. 2000) (citing Ward, 491 U.S. at 800, 109 S. Ct. at 2758).

Here, as stated in Admin. Code § 24-202 (the "Declaration of policy" of the Noise Code), the City has declared that its policy is "to reduce the ambient noise level in the city, so as to preserve, protect and promote the public heath, safety and welfare, and the peace and quiet of the inhabitants to the city . . . " via the enactments of the provisions of the Noise Code setting standards for controlling unreasonable noise and decibel levels.    Contrary to plaintiff's allegations, the challenged provisions of the Noise Code do not "burden[] substantially more protected speech than is constitutionally permissible."    Complaint, ¶¶ 37, 51.    Plaintiff's conclusion that the challenged provisions burden more protected speech than is permitted by the United States Constitution because plaintiff decided to stop hosting live music performances in order to prevent the issuance of additional violation orders by DEP (Complaint, ¶¶ 26-28), is not sufficient to render the determination by DEP to issue the notices of violation to plaintiff — or the challenged provisions of the Noise Code themselves — incorrect or unconstitutional.  Indeed, as set forth above, the fact that plaintiff would prefer that the City would regulate differently is constitutionally insignificant.[7]

---

[7] Notably, while plaintiff challenges the two provisions of the Noise Code for which it received notices of violation as unconstitutional, despite its statements that the City has a "legitimate noise control policy" (Complaint, ¶¶ 37, 51), plaintiff fails to set forth any allegation as to how it would otherwise choose to regulate noise levels in furtherance of that legitimate policy.

**C.    The Challenged Provisions of the Noise Code Afford Plaintiff and Others Ample Channels of Communication.**

The challenged provisions of the Noise Code afford plaintiff and others ample channels of communication. Indeed, Admin. Code §§ 24-218 and 24-241.1 do "not attempt to ban any particular manner or type of expression at a given place or time." Ward, 491 U.S. at 802, 109 S. Ct. at 2760; see also Harlem Yacht Club, 2007 N.Y. Slip Op. 4053, at *2-3. Rather, the Noise Code provisions allow First Amendment expressive musical activity on the City's streets and in the City's commercial establishments subject to certain limited time, place, and manner restrictions. The Noise Code provisions have no effect on the quantity or content of that expression beyond regulating the extent of the volume of the music. See Ward, 491 U.S. at 802, 109 S. Ct. at 2760. In fact, so long as the sound made by music is not unreasonably loud, it is perfectly legal for plaintiff to host and enjoy live music or recorded music at its commercial establishment. As a result, the challenged provisions of the Noise Code leave ample channels of communication open for people to both perform and enjoy listening to live or recorded music.[8]

Thus, for all of the reasons set forth above, Admin. Code §§ 24-218 and 24-241.1 do not violate the First Amendment of the United States Constitution, and plaintiff's claims should be dismissed.

---

[8] That plaintiff may, after hearing and adjudication (or upon default) on a notice of violation, be subjected to monetary fines for violating of the Noise Code, is not a prior restraint on speech, but rather, it is a subsequent penalty punishing plaintiff for a violation of the challenged regulation after the fact. See Alexander v. United States, 509 U.S. 544, 549-552, 113 S. Ct. 2766, 2770-72 (order directing asset forfeiture which effectively shut down adult entertainment business is not a prior restraint because it "does not forbid petitioner to engage in any expressive activities in the future nor does it require him to obtain prior approval for any expressive activities;" it simply imposes a penalty for previous racketeering violations). To the extent that plaintiff claims that it is afraid to host live music because it does not know whether it will be subjected to the issuance of further notices of violation, which carry monetary fines, plaintiff's claim is really that the possibility of being subject to sanctions "chills" its speech, not that the Noise Code gives the government the potential power to freeze speech in the first instance. Thus, plaintiff's claim is more properly analyzed under the vagueness doctrine, discussed below.

## POINT II

### THE CHALLENGED PROVISIONS OF THE CITY'S NOISE CODE ARE NOT UNCONSTITUTIONALLY VAGUE.

**A.    The Challenged Provisions of the Noise Code are Not Unconstitutionally Vague Under the Void-for-Vagueness Doctrine.**

Plaintiff challenges Admin. Code §§ 24-241.1 and 24-218 on the grounds that those provisions of the Noise Code are unconstitutionally vague and thus, violate the Due Process clause of the United States Constitution. Complaint, Counts 1 and 5. Plaintiff alleges that the challenged provisions of the Noise Code "deprive[] ordinary persons of the right to fair notice of the conduct the ordinance[s] proscribe and allows for arbitrary and discriminatory enforcement." Complaint, ¶¶ 33, 48. The void-for-vagueness doctrine requires that laws be clear enough so as to give notice as to prohibited conduct and so that protected expression will not be "chilled."

It is well-settled that due process "requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms." Foss v. City of Rochester, 65 N.Y.2d 247, 253, 491 N.Y.S.2d 128, 131 (1985).[9] The Constitution does not require "meticulous specificity" and does not require a law to be drafted with such specificity that it leaves no room for interpretation. Matter of Children of Bedford, Inc. v. Petromelis, 77 N.Y.2d 713, 570 N.Y.S.2d 453 (1991). As a result, in order to succeed on a facial vagueness challenge, plaintiff must do more than show that the statute in question "requires a person to conform his conduct to an imprecise but comprehensible normative standard," United States v. Schneiderman, 968 F.2d 1564, 1567 (2d Cir. 1992), cert. denied, 507

---

[9]    The federal and state constitutional standards for adjudicating vagueness claims are indistinguishable. See People v. Smith, 44 N.Y.2d 613, 407 N.Y.S.2d 462 (1978) (applying federal case law to vagueness claims brought under federal and state constitutions).

U.S. 921, 113 S. Ct. 1283 (1993), or that one may have "difficulty in determining whether certain marginal activities fall within the scope of the statutory regulations." Wegman's Food Markets, Inc. v. State of New York, 76 A.D.2d 95, 101 (4th Dep't 1980).

"'[I]mprecise language does not render a statute fatally vague so long as that language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" People v. Foley, 94 N.Y.2d 668, 681, 709 N.Y.S.2d 467, 474-75 (2000), cert denied, 531 U.S. 875, 121 S. Ct. 181 (2000) (quoting People v. Shack 86 N.Y.2d 529, 538, 634 N.Y.S.2d 666 (1995)). In fact, to succeed on its vagueness claim, plaintiff must demonstrate that the challenged regulations are so vague that "no standard of conduct is specified at all ...." Village of Hoffman Estates v. The Flip Side, Hoffman Estates, Inc., 455 U.S. 489, 499, 102 S. Ct. 1186, 1193 (1981). Plaintiff cannot do so, and, thus its claims fail as a matter of law.

The prohibition of certain levels of commercial noise in the City's Noise Code (Admin. Code § 24-241.1) and against making or causing "unreasonable noise" (Admin. Code § 24-218) set forth comprehensible normative standards capable of easy understanding by persons of common intelligence. First, Admin. Code § 24-241.1 sets forth very specific decibel limits for which commercial music is prohibited. See Admin. Code § 24-241.1. That section sets forth the limit at 45 decibels, and describes with specificity the means by which such decibel levels are measured. As such, plaintiffs are hard pressed to argue that that provision is at all vague. Moreover, Admin. Code § 24-218 prohibiting the making or causing of unreasonable noise further sets forth comprehensible standards easily capable of understanding by persons of common intelligence. As defined in Administrative Code § 24-203(ccc), unreasonable noise means "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a

reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person or normal sensitivities or which causes injury to plant or animal life, or damage to property or business." This definition conveys a sufficiently definite warning as to the proscribed conduct when measured by persons of common understanding. Indeed, the New York Appellate Division, First Department recently held that Admin. Code § 24-218 which bans "unreasonable noise" as set forth in Admin. Code § 24-203(ccc) is not impermissibly vague. See Harlem Yacht Club, 2007 N.Y. Slip Op. 4053, at *2-3.

"In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance and consider interpretations of comparable laws." Sharkeys, Inc. v. City of Waukesha, 265 F. Supp. 2d 984, 990 (E.D. Wisc. 2003). Indeed, as set forth above, Admin. Code § 24-218 premised upon the "unreasonable noise" definition set forth in Admin. Code § 24-203(ccc), specifically challenged herein, was recently found not to be unconstitutionally vague. See Harlem Yacht Club, 2007 N.Y. Slip Op. 4053, at *2-3. Moreover, other courts have already upheld unreasonable noise statutes that are similar to both provisions of the Administrative Code challenged herein. For example, in Howard Opera House Associates v. Urban Outfitters, Inc., 131 F. Supp. 2d 559, 566 (D. Vt. 2001), the Court rejected a virtually identical claim to the instant challenge to Admin. Code § 24-218, holding that an ordinance prohibiting any person from making or causing "loud or unreasonable noise"[10] was not vague because "the ordinance gives sufficiently fair warning of prohibited conduct by using 'words of common understanding,' and, [because it uses an objective standard], the ordinance avoids arbitrary and discriminatory enforcement." Id. (citations omitted). In reaching this conclusion,

---

[10] Similar to the City's unreasonable noise statute (Admin. Code § 24-218), the Burlington ordinance at issue in Howard Opera House defined "loud or unreasonable noise" as noise which "disturbs, injures or endangers the health, safety or welfare of the community." Howard Opera House, 131 F. Supp. 2d at 561.

the Court referred to a number of other cases in which similar "unreasonable noise" statutes have been upheld.[11]  See Howard Opera House, 131 F. Supp. 2d at 565 (citing State v. Linares, 232 Conn. 345, 655 A.2d 737, 743 (Conn. 1995) ("unreasonable noise" is not vague because "unreasonable" denotes objectivity based on circumstances); Price v. State, 622 N.E.2d 954, 967 (Ind. 1993) ("unreasonable noise" prohibition withstands vagueness challenge); City of Beaufort v. Baker, 315 S.C. 146, 432 S.E.2d 470, 474 (S.C. 1993) ("reasonable" test is appropriate guide to prohibited conduct in noise ordinance); City of Madison v. Baumann, 162 Wis. 2d 660, 470 N.W.2d 296, 203-04 (Wis. 1991) (reasonable person standard, incorporated in anti-noise ordinance, limits exercise of police discretion and affords notice of what is prohibited).  See also Pro-Choice Network v. Schenck, 67 F.3d 359 (2d Cir. 1994), modified on other grounds en banc, 67 F.3d 377 (2d Cir. 1995), aff'd in part, rev'd in part on other grounds, 519 U.S. 357, 117 S. Ct. 855 (1997) (finding that the term "excessively loud sound," which was defined as "one that injures, disturbs, or endangers the health or safety of any patient or employee of a health care facility at which abortions are performed," was sufficiently clear to withstand a vagueness challenge.).

Similarly, in Sharkeys, the Court upheld two City of Waukesha noise ordinances, one of which, like New York City Admin. Code § 24-218, prohibits "noise … tending to unreasonably disturb the peace and quiet of persons in the vicinity."  In upholding the ordinances, the court stated "neither ordinance is so vague that citizens cannot conform their behavior to its requirements or that it vests excessive discretion in the police."  Sharkeys 265 F.

---

[11] It should be noted that from a constitutional perspective, "unreasonable noise" statutes which employ an objective standard are distinguishable from "unnecessary noise" statutes which use a subjective standard.  Compare Dae Woo Kim v. City of New York, 774 F. Supp. 164, 169 (S.D.N.Y. 1991) and People v. New York Trap Rock Corp., 57 N.Y.2d 371, 456 N.Y.S.2d 711 (1982) with Sharkeys, 265 F. Supp.2d 992 ("the word 'unreasonably' creates a relatively objective test.").

Supp. 2d at 992-94.  Like the Court in Howard Opera House, the Court in Sharkeys also referred to a number of other cases in which "unreasonable noise" statutes have been upheld.  See Sharkeys 265 F. Supp. 2d at 993 (citing Reeves v. McConn, 631 F.2d 377, 386 (5th Cir. 1980)) (holding that the term "unreasonably loud" is not impermissibly vague); Jim Crockett Promotion, Inc. v. City of Charlotte, 706 F.2d 486, 489 (4th Cir. 1983) ("unreasonably loud" is not unconstitutionally vague)).

**B.     The Challenged Provisions of the Noise Code Are Not Unconstitutionally Vague Under the Stringent Vagueness Test Applied in First Amendment Cases.**

Although plaintiff does not appear to allege that the challenged provisions of the Noise Code are vague under the more stringent vagueness test applicable in First Amendment cases, to the extent that plaintiff challenges the provisions for violating the First Amendment, any such claims plaintiff may have would still fail as a matter of law.  A more stringent vagueness test is not warranted in situations where, as here, the regulation at issue is completely content-neutral.  See Sharkeys, 265 F. Supp at 990 ("the special exactitude that the Supreme Court applies when the First Amendment is implicated appears to extend primarily to content-based regulations.").  As stated by the Court in Sharkeys, "[t]he Supreme Court has shown significant deference in reviewing content-neutral legislation promoting the state's 'substantial interest in protecting its citizens from unwelcome noise.'"  Sharkeys, 265 F. Supp. at 990, (quoting Ward, 491 U.S. at 796, 109 S. Ct. at 2756-57 (1989) (quoting City Council v. Taxpayers for Vincent, 466 U.S. 789, 806, 104 S. Ct. 2118, 2124 (1984)).  See also New Amber Auto Service v. New York City Environmental Control Board, 163 Misc.2d 113 (N.Y. Sup. Ct., N.Y. County 1994) (noting that environmental statutes must speak in general terms and leave room for flexible and reasonable application).

In any event, because the definition of unreasonable noise set forth in Admin. Code § 24-203(ccc) — upon which violations of Admin. Code § 24-218 are premised — contains words of common understanding, it is not vague under any constitutional standard. There is no question that the definition of unreasonable noise, which includes phrases such as "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities," although not a scientific measurement, is a comprehensible normative standard capable of ready understanding by all who speak English.   This was explicitly found to be the case in Harlem Yacht Club, 2007 N.Y. Slip Op. 4053, at *2-3. Moreover, to the extent that Admin. Code § 24-241.1 does set forth specific decibel levels for which commercial music is prohibited, it is likewise capable of easy understanding those who speak English and cannot be said to be unconstitutionally vague. See People v. Toback, 170 Misc.2d 1011, 1015 (City Court, Long Beach 1996) ("The Noise Code is not vague. The decibel limitation is clear and precise. 'It tells one and all the specific permissible volume of sound that may be generated by amplifying equipment . . .'.") (quoting Crockett Promotion v. City of Charlotte, 706 F.2d 486, 493 (4th Cir. 1983).

Moreover, plaintiff cannot demonstrate that any expression has been or will be "chilled" in any way by the challenged provisions of the Noise Code.  As set forth above, plaintiff is not prevented in any way from continuing to host live music or broadcasting recorded at its establishment.  Rather, all that plaintiff is prevented from doing is hosting music in such a way so as to create unreasonable noise.  Any so-called "chill" that plaintiff might arguably suffer comes not from its alleged inability to understand the "unreasonable noise" and "commercial music" prohibitions, but from the monetary penalties that may legitimately be imposed against it for any subsequent violation of the readily understandable prohibitions.  That the challenged

provisions of the Noise Code do not allow plaintiff to continue to host music (recorded or live) in the exact manner that it hosted music in the past, does not make it vague.[12] Accordingly, Counts 1 and 5 of the complaint should be dismissed their entirety.

## CONCLUSION

For the reasons stated above, the Court should grant defendants' motion to dismiss and dismiss the complaint together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        June 21, 2007

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendants
                        100 Church Street, Room 5-158
                        New York, New York 10007
                        (212) 788-0758

                  By:   _____
                        Michelle Goldberg-Cahn (MG-4490)
                        Assistant Corporation Counsel

---

[12] In any event, the New York State Supreme Court, specifically found that the enforcement of an ECB notice of violation issued pursuant to Admin. Code § 24-241.1 was not arbitrary and capricious, particularly the way in which DEP measured the sound of the music levels. See Reminisce Bar and Lounge v. City of New York Dep't of Env't'l Protection, 178 Misc.2d 640 (Sup. Ct., N.Y. County 1998). In Reminisce Bar and Lounge, the Court found that an agency's interpretation of its own regulations and statutes is entitled to the greatest weight and "the court will not second-guess the agency's judgment in its area of expertise." Id. at 144-45.

# APPENDIX

*2007 NY Slip Op 4053, \*; 2007 N.Y. App. Div. LEXIS 5842, \*\**

**[\*1]** The Harlem Yacht Club, et al., Petitioners-Appellants, v The New York City Environmental Control Board, Respondent-Respondent.

657N, Index 14029/04

SUPREME COURT OF NEW YORK, APPELLATE DIVISION, FIRST DEPARTMENT

2007 NY Slip Op 4053; 2007 N.Y. App. Div. LEXIS 5842

May 10, 2007, Decided
May 10, 2007, Entered

**NOTICE:**

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING THE RELEASE OF THE FINAL PUBLISHED VERSION THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE OFFICIAL REPORTS.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioner yacht club applied to annul the determination of respondent environmental control board that the yacht club violated a city's noise ordinance, Administrative Code of the City of NY § 24-218, and imposing fines. The Supreme Court, Bronx County (New York), denied the application. The yacht club appealed.

**OVERVIEW:** The yacht club fired a cannon at sundown each day during the boating season to alert its members and guests that the flag on the club's grounds was about to be lowered so that they could stand and show respect. After issuance of the first challenged noise violation, the yacht club switched to a different gauge to produce a lower sound, but a second violation was nevertheless issued. The appellate court found that while the firing of the cannon was protected speech, the ordinance at issue, Administrative Code of the City of NY § 24-218, was constitutional. The ordinance was content-neutral, enacted to further a substantial governmental interest in protecting its citizens from unwelcome noise, and was narrowly tailored to achieve that goal. Also, the yacht club was not without alternative means of communication, as the ordinance did not impose a complete ban on the firing of a cannon. The determination was supported by substantial evidence, including, inter alia, the testimony of the control board's inspector as to the number of decibels by which the noise created by the cannon exceeded the ambient, or background, level of noise.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** noise, cannon, ordinance, firing, flag, reasonable person, sensitivities, ban, yacht club

### LexisNexis® Headnotes ◆ Hide Headnotes

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Nuisances > Eyesores, Noises & Odors >
General Overview
Environmental Law > Noise
Governments > Local Governments > Ordinances & Regulations

*HN1* ± Administrative Code of the City of NY § 24-218 is content-neutral, enacted to further a substantial governmental interest in protecting its citizens from unwelcome noise, and is narrowly tailored to achieve that goal. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Nuisances > Eyesores, Noises & Odors >

General Overview

Environmental Law > Noise

Governments > Local Governments > Ordinances & Regulations

HN2 That a city's limitations on volume may reduce to some extent the potential audience for speech is of no consequence absent showing that remaining avenues of communication are inadequate. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness
Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Nuisances > Eyesores, Noises & Odors >
General Overview

Environmental Law > Noise

Governments > Legislation > Vagueness

HN3 Administrative Code of the City of NY § 24-218, which bans "unreasonable noise," defined as any excessive or unusually loud sound that disturbs the peace, comfort, or repose of a reasonable person of normal sensitivities, injures, or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business, Administrative Code of the City of NY § 24-203(62), is not impermissibly vague. More Like This Headnote

**COUNSEL:** [**1] Dan L. Johnston ▾, New York, for appellants.

Michael A. Cardozo ▾, Corporation Counsel, New York (Suzanne K. Colt ▾ of counsel), for respondent.

**JUDGES:** Mazzarelli ▾, J.P., Williams ▾, Gonzalez ▾, Catterson ▾, Kavanagh, JJ.

## OPINION

Order, Supreme Court, Bronx County (Sallie Manzanet-Daniels, J.), entered on or about March 3, 2006, which denied the application of petitioners yacht club and its commodore to annul the determination of respondent New York City Environmental Control Board (ECB) that petitioners violated the City's noise ordinance on July 19 and August 30, 2000, and imposing fines, unanimously affirmed, without costs.

Petitioner yacht club fires a cannon at sundown each day during the boating season to alert its members and guests that the flag on the club's grounds is about to be lowered so that they could stand and show respect. Neighbors complained about the noise, resulting in the issuance of the first challenged violation for unreasonable noise. The club then switched from a 10-to a 12-gauge shot to produce a lower sound, but a second violation was nevertheless issued.

While we agree with petitioners that the firing of the cannon while engaged in a ceremony lowering the flag is protected speech (see Spence v Washington, 418 U.S. 405, 409-410, 94 S. Ct. 2727, 41 L. Ed. 2d 842 [1974]), [**2] we reject their challenge to the constitutionality of the subject noise ordinance (Administrative Code of City of NY, § 24-218). There is no dispute that HN1 the ordinance is content-neutral; respondent met its burden of demonstrating that the ordinance was enacted to further a substantial governmental interest in protecting its citizens from unwelcome noise and is narrowly tailored to achieve that goal (see Ward v Rock Against Racism, 491 U.S. 781, 796, 799, 109 S. Ct. 2746, 105 L. Ed. 2d 661 [1989]; Carew-Reid v Metropolitan Transp. Auth., 903 F.2d 914, 917, 919 [2d Cir 1990]; Howard Opera House Assoc. v Urban Outfitters, 131 F. Supp. 2d 559, 567 [D Vt 2001]); and petitioners are not without alternative means of communication, as the ordinance does not impose a complete ban on the firing of a cannon and petitioners can still show respect for the flag by firing a cannon at lower sound levels (see Ward, 491 U.S. at 802 HN2 [that city's limitations on volume may reduce to some extent the potential audience for speech is of no consequence absent showing that remaining avenues of communication are inadequate]). Nor is HN3 the ordinance, which bans "unreasonable noise," defined as "any excessive or unusually loud sound that disturbs [**3] the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal [*2] life, or damage to property or business" (Administrative Code § 24-203[62]), impermissibly vague (see e.g. Howard Opera House, 131 F. Supp. 2d at 565; Sharkeys, Inc. v City of Waukesha, 265 F. Supp. 2d 984, 992 [ED Wisc. 2003]).

The determination is supported by substantial evidence, including the testimony of respondent's Inspector as to the number of decibels by which the noise created by the cannon exceeded the ambient, or background, level of noise, and that, while standing on the property line of a complainant's abode, about 75 feet from the cannon, the sound of the cannon was "startling" and made him jump even though he was expecting it.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: MAY 10, 2007

Service:    **Get by LEXSEE®**
Citation:   **2007 N.Y. App. Div. LEXIS 5842**
View:       Full
Date/Time:  Thursday, June 21, 2007 - 9:02 AM EDT



About LexisNexis  |  Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LEXSEE 2003 NY MISC LEXIS 858

**[*1]  The People of the State of New York v. The Engineers Country Club, Inc.,  [*2] Defendant.**

**Summons No. 01-03**

**JUSTICE COURT OF NEW YORK, VILLAGE OF ROSLYN HARBOR, NASSAU COUNTY**

*2003 NY Slip Op 51069U; 2003 N.Y. Misc. LEXIS 858*

**June 23, 2003, Decided**

**NOTICE:        [**1]    THIS OPINION IS UNCOR-RECTED AND WILL NOT BE PUBLISHED IN THE OFFICIAL REPORTS.**

**COUNSEL:** Karl C. Seman, Esq., Counsel for Defendant.

Michael A. Montesano, Village Prosecutor.

**JUDGES:** David H. Pfeffer, Village Justice, Roslyn Harbor.

**OPINION BY:** David H. Pfeffer

**OPINION**

**JUDGMENT**

The defendant, a local country club, stands accused of violating a local law precluding the playing of outdoor music or the use of an outdoor public address system.

When the matter came onto the calendar for trial on May 19, 2003, the defendant, appearing through counsel, sought leave to file a motion dismissing the Information because of alleged unconstitutionality of the Village ordinance and/or  [*3] because the Information was alleg-edly defective, the motion not yet having been served and filed, and no earlier motion to stay having been made.

The defendant's plea of not guilty in lieu of formal arraignment was served on March 11, 2003. The case was set for trial to begin on April 14, 2003. That trial date was then adjourned at defendant's request to May 19, 2003. Thus, the motion to dismiss was sought [**2] to be filed more than 45 days after the plea in lieu of arraignment. Under *CPL § 255.20(3)*, this Court was free to summarily deny the motion. Nevertheless, the Court, in the interest of justice, decided to proceed with the trial

on the merits, and entertain the motion, insofar as it re-lated to alleged unconstitutionality of the Village ordi-nance, subject to permitting the People an opportunity to respond to the motion within about four weeks. While the motion also asserted a request for dismissal because of an alleged defective information, no basis for relief was set forth and the supporting papers merely asked for dismissal for alleged unconstitutionality.

For the reasons set forth below, the motion to dis-miss the information is denied and the defendant is found guilty of violating the Village ordinance as charged.

**The Village Ordinance Involved**

The defendant is charged with violating Roslyn Harbor Village Zoning Code Section 6-1.3 subsection a., item v.

Section 6-1.3 is entitled "Supplemental regulations for use in residential districts" subsection a, of which Item v is a part, is entitled "Private recreational clubs and [*4] outdoor recreational [**3] uses" and sets forth an overall scheme for the protection of surrounding resi-dents. Item i of subsection a. requires interior areas of such clubs to be sufficiently sound insulated or separated from adjacent residential structures so as to avoid "noise nuisance." Item ii requires that the appearance of any structure not be out of character or scale with the neighborhood. Item iii requires suitable screening or buffering adjacent to residential use areas. Item iv re-stricts intensive outdoor activity and restricts the location of outdoor service facilities. Items viii, ix and x restrict the location of swimming pools, equipment and parking with regard to surrounding residences. Item xii restricts outdoor lighting so as not to impinge on residential prop-erty. At issue here is Item v which provides "No outdoor music or public address system shall be provided." In context, the word "outdoor" was intended to apply to

Case 1:07-cv-03560-LAK    Document 11    Filed 06/21/2007    Page 34 of 36

Page 2

2003 NY Slip Op 51069U, *; 2003 N.Y. Misc. LEXIS 858, **

both "music" and "public address system." No prohibition of Item v applies to indoor activities.

### The Nature of Defendant and its Accused Activity

The defendant is a private country club located within a residential district and surrounded entirely by private [**4] residences. The defendant is expressly accused of violating the provision of the zoning ordinance by having an activity conducted outdoors with a live band on July 14, 2002. In the course of questioning by the Court, the defendant has indicated a desire and intention to continue a practice of providing outdoor music including associated amplification.

### [*5] The Nature of Defendant's Constitutional Challenge

Defendant contends that the Village zoning law provision violates the "Freedom of Speech" provision of the U.S. Constitution, i.e. the First Amendment. At the same time, defendant in its paper concedes that the restriction of the zoning ordinance is "content-neutral."

In addition, defendant asserts first that defendant is denied "due process of law" and then asserts that the ordinance "is a denial of equal protection under the law and therefore unconstitutional." To the extent it can be understood, defendant's equal protection/due process argument is based upon the fact that the outdoor live music, outdoor amplification ban applies only to private recreational clubs within residential districts of which defendant is the only one, and not to other private residents living [**5] in their homes surrounding the defendant club.

### [*6] The Legal Criteria Used to Decide First Amendment Challenges to Statutes

The Supreme Court of the United States has established the criteria to be used in considering a First Amendment challenge to a statute. In *U.S. v. O'Brien, 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968)*, the Supreme Court stated: "when speech and non-speech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." In *Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984)*, the Supreme Court stated: "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided they are justified without reference to the content of the regulated speech, that they are narrowly targeted to serve a significant government interest, and that they leave open ample alternative chan-

nels for communication of the [**6] information." The Supreme Court has also noted that local governments have "a substantial interest in protecting its citizens from unwelcome noise." *City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806, 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984). See also, Carey v. Brown, 447 U.S. 455, 471, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980)* where the Court said the government's interest in "protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."

The Supreme Court of the United States has also described the right of residential privacy, i.e. the right of a citizen in his home to be free from the intrusion of [*7] unwanted speech, and the important governmental interest in protecting against such intrusion. *See Frisby v. Schultz, 487 U.S. 474, 484-5, 101 L. Ed. 2d 420, 108 S. Ct. 2495 (1988)*:

One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different ... A special benefit of the privacy all citizens enjoy within [**7] their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom.

*See also Kovacs v. Cooper, 336 U.S. 77, 86-87, 93 L. Ed. 513, 69 S. Ct. 448 (1949)*, where the Court said that "the unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street he is practically helpless to this interference with his privacy by loud speakers except through the protection of the municipality."

There is no requirement, as long as the ordinance is content-neutral, for a court to second guess the municipality in determining whether the scheme selected constitutes the least intrusive or least restrictive means available for effectuating the [*8] governmental interest. *See Ward v. Rock Against Racism, 491 U.S. 781, 798, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989)*.

### Application of the Constitutional Standard to this Case

We can assume music is a form of speech that is subject to First Amendment [**8] protection. *See Ward v. Rock Against Racism, 491 U.S. 781, 790, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989)*. The ordinance at issue here does not restrict any specific content of the music. Indeed defendant admits the ordinance is content-neutral. (Seman Aff. P28)

Case 1:07-cv-03560-LAK    Document 11    Filed 06/21/2007    Page 35 of 36

Page 3

2003 NY Slip Op 51069U, *; 2003 N.Y. Misc. LEXIS 858, **

Given the admittedly content-neutral nature of the ordinance involved, and its clear application to a substantial government interest, i.e. protecting the tranquility of residents in their homes, and given the undisputed and substantially unimpeded right [1] of the defendant to play live or amplified music indoors, thereby providing an alternative avenue of communication, the ordinance is presumptively valid. *See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986).*

  1 The only restriction on indoor activities it that the areas be sufficiently sound-insulated or separated from adjacent residential structures. Village Ordinance § 6-1.3a.i.

The defendant's primary challenge [**9] appears to be that some decibel limitation or unreasonable noise prohibition might have been more appropriate than an absolute ban on outdoor music or outdoor amplification. The Court of Appeals for the Second Circuit has stated that there is no constitutional prohibition against a ban on amplification, provided there is a basis for such a ban. *See Housing Works, Inc. v. Kerik, 283 F.3d 471, 481 (2d Cir. 2002).* [*9] There the Court explained that there are inherent problems associated with adjustment of sound volumes and monitoring that make an absolute ban more appropriate. *See also Madsen v. Women's Health Ctr., 512 U.S. 753, 129 L. Ed. 2d 593, 114 S. Ct. 2516 (1994)* [upholding ban against singing, chanting, etc. in vicinity of hospitals, even without a distinction between different levels of noise].

Particularly on point is *Carew-Reid v. Metropolitan Transportation Authority, 903 F.2d 914 (2d Cir. 1990).* There the Second Circuit held that the MTA's absolute ban on amplified music on a subway platform passed constitutional muster, even though the lower court thought that a less restrictive alternative could also eliminate the problem [**10] of offensive noise. Citing to Supreme Court precedent, the Second Circuit noted that "the validity of [time, place or manner] regulations does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interests." *903 F.2d at 918* (alterations in original)(internal quotation marks and citations omitted).

With respect to alternative means for expression, the ordinance does not bar live music indoors, subject only to the requirement for adequate noise insulation. The defendant is free to perform live music, amplified or otherwise indoors. The fact that defendant prefers outdoor music is not relevant to constitutionality. As noted in *Carew-Reid*, "The First Amendment, however, does not guarantee appellees access to every or even the best channels or locations for their expression." *903 F.2d at 919.*

The need for the Village ordinance is clear from the testimony of Gerald [*10] Unger, a Village resident, whose property abuts that of the defendant club. Mr. Unger testified that because of the music being played at the club for 1 1/2 to 2 hours, music conceded by defendants to be [**11] live outdoor music, he and his guests were seriously disturbed at his home.

The two cases relied on by defendant to support its view of unconstitutionality are inapposite. In *People v. Edinger*, the City Court of Long Beach struck down an absolute prohibition on the use of power blowers, such as leaf blowers, because the court concluded that there was no state of facts that could be reasonably assumed to support the ordinance as an enactment that promotes a legitimate government interest. *179 Misc. 2d 104, 106 (Long Beach City Ct. 1998).* In *Kim v. City of New York*, the court sustained a public preacher's challenge to an unnecessary noise ordinance because the court concluded that the ordinance's definition of unnecessary, which was defined to mean any sound that annoys a person, was both overbroad and vague. *774 F. Supp. 164, 169-70 (S.D.N.Y. 1991).*

The *Edinger* case did not involve a First Amendment issues while the *Kim* case went off on the issue of whether the noise standard could be understood and enforced.

This Court is satisfied that the clear legislative intent to protect residents in their homes surrounding defendant's property is [**12] a proper motivation for the outdoor music and amplification ban, a ban which is content-neutral. On the basis of the authorities discussed above, the challenge to constitutionality of the Village ordinance [*11] based upon First Amendment considerations is overruled.

**The Equal Protection Challenge**

The Equal Protection clause requires states to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).* An equal protection challenge to an economic or social regulation is subject to a rational basis review since a legislative enactment carries a strong presumption of constitutionality. This strong presumption of constitutionality can be overcome only by showing "beyond a reasonable doubt that there was no rational basis for the adoption of the local law here at issue." *Town of N. Hempstead v. Exxon Corp., 53 N.Y.2d 747, 749, 439 N.Y.S.2d 342, 421 N.E.2d 834 (1981).*

Equal protection claims brought by a "class of one" may be successful where this "class of one" "has been

Case 1:07-cv-03560-LAK    Document 11    Filed 06/21/2007    Page 36 of 36

Page 4

2003 NY Slip Op 51069U, *; 2003 N.Y. Misc. LEXIS 858, **

intentionally treated differently from others similarly situated and that there is no rational [**13] basis for the difference in treatment." *Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000)* (per curium) (holding that a property owner stated an Equal Protection claim against a village which demanded a 33-foot easement in order to connect the property owner to the municipal water supply where the village demanded a 15-foot easement from other similarly situated property owners). Since *Olech*, the Second Circuit has stated that an equal protection claim could proceed to trial if either there was no rational basis for the discriminatory treatment received or the action complained of was motivated by animus. *Harlen Assoc. v. Incorporated Village of* [*12] *Mineola, 273 F.3d 494, 500 (2d Cir. 2001)* (holding that a zoning board's denial of a special use permit for a convenience store did not state an equal protection claim because of the Board's legitimate concern that the convenience store would encourage nearby school children to cross a busy intersection).

Although the ordinance challenged here applies only to this defendant, the only private recreational club within the Village, absent a showing of animus or [**14] ill-will on the part of the Village, the equal protection question is whether the Village has a rational basis for discriminating against outdoor music and public address systems on the defendant's property.

The nature of defendant's activities, by its own admission places it in a unique position in comparison to its surrounding residential neighbor. Private recreational clubs are the only entities permitted by the Village to engage on a regular basis in a residentially zoned area in the business of catering various affairs involving large groups of people and the playing of music, including weddings, showers, bar and bat mitzvahs, christenings, anniversaries, birthdays, mother and father day celebrations, golf and tennis outings, meetings, fund raisers, memorials, and concerts. Seman Aff. PP11, 13. Otherwise, the only other permitted uses in residentially zoned areas within the Village are single family detached dwellings, municipal uses, places of worship, schools, and outdoor recreational uses. None of the permitted uses, other than private recreational clubs, cater to such affairs on a regular basis. No other entities, other than private recreational clubs, have a desire or incentive [**15] to hold such affairs outdoors on a regular [*13] basis.

Both cases cited by defendant in support of its argument are inapposite because such cases involved regulations discriminating on the basis of content. In *Police Department of Chicago v. Mosley, 498 U.S. 92 (1972)* and *Carey v. Brown, 447 U.S. 455, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980)*, the challenged regulations distinguished among different classes of speech on the basis of content. The challenged regulation in *Mosley* prohibited all forms of picketing near schools, except for peaceful labor picketing was held to be a content based distinction that violated the Equal Protection clause. The challenged regulation in *Carey* prohibited all forms of picketing of residences, except for the peaceful picketing of a place of employment. The court held that the distinction between the picketing of a place of employment and other forms of picketing was a content-based distinction that violated the Equal Protection clause.

Here, the Court finds that there was a rational basis for establishing specific regulations on noise likely to occur as a result of the catering and other activities of the defendant [**16] club. No motive other than that has been established. No ill will or animus toward the defendant has even been suggested. As a result, the defendant has failed to sustain its burden of establishing invalidity on the basis of constitutional equal protection.

The challenge to constitutionality of the Village ordinance based upon equal protection considerations is overruled.

The motion to dismiss the Information is denied.

**[*14] Decision on the Merits**

At the trial, the court heard the testimony of Mr. Unger referred to above. The Court also accepted as an admission of defendant, the statement in paragraph 19 of the Attorney Affirmation by Karl C. Seman, defendant's counsel, as expressly verified by David Shaw, the defendant's General Manager and authorized corporate agent:

"19. On July 14, 2002 the ECC [abbreviation used for defendant Engineers Country Club, Inc.] did sponsor its annual 4th of July celebration where the evening culminated with music performed outdoors by a live band."

The defendant is therefore found guilty of violating Roslyn Harbor Zoning Ordinance § 6-1.3, subsection a., item v. The defendant is ordered to appear for sentencing on July 21, 2003 at [**17] 7:30 p.m.

So ordered this    day of June, 2003.

David H. Pfeffer

Village Justice, Roslyn Harbor

**[*15]** Decision Date: June 23, 2003