Index No.  07 CV 3560 (LAK) ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENCO IMPORTING INC. d/b/a MANITOBA'S and
RICHARD MANITOBA,

Plaintiffs,

- against -

CITY OF NEW YORK, EMILY LLOYD, in her capacity
as Commissioner of the New York City Department of
Environmental Protection and as Chairman of the New
York City Environmental Control Board, NEW YORK
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Ave Maria Brennan*
*Tel:  (212) 788-0782*
*NYCLIS No. 2007-015423*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATUTORY FRAMEWORK ............................................................................. 4

STATEMENT OF MATERIAL FACTS ............................................................. 11

ARGUMENT

    POINT I

        PLAINTIFFS' FACIAL CHALLENGE TO SECTIONS
        OF THE OLD NOISE CODE IS MOOT AND NOT
        JUSTICIABLE.................................................................................. 11

    POINT II

        THE CHALLENGED PROVISIONS OF THE NOISE
        CODES ARE CONTENT NEUTRAL TIME, PLACE
        AND MANNER REGULATIONS THAT ARE
        NARROWLY TAILORED TO PROMOTE A
        SIGNIFICANT GOVERNMENT INTEREST AND
        AFFORD PLAINTIFFS AMPLE AVENUES FOR
        SPEECH, AND THUS, DO NOT VIOLATE THE
        FIRST AMENDMENT OF THE UNITED STATES
        CONSTITUTION. .......................................................................... 13

        A.    The Challenged Provisions of the Noise Code
              (Administrative Code §§ 24-218 And 24-231) are
              Content-Neutral.................................................................. 15

        B.    The Challenged Provisions of the Noise Code are
              Narrowly Tailored to the City's Interest in
              Protecting the Public Health, Welfare, And
              Safety ................................................................................ 19

        C.    The Challenged Provisions of the Noise Code
               Afford Plaintiffs and Others Ample Channels of
              Communication.................................................................. 23

POINT II

THE CHALLENGED PROVISIONS OF THE CITY'S
NOISE CODES ARE NOT UNCONSTITUTIONALLY
VAGUE..................................................................................................24

A.    The Challenged Provisions of the Prior and
Current Noise Codes are not Unconstitutionally
Vague Under the Void-For-Vagueness Doctrine..................................24

B.    The Challenged Provisions of the Prior and
Current Noise Codes are not Unconstitutionally
Vague Under the Stringent Vagueness Test
Applied in First Amendment Cases. .....................................................30

CONCLUSION..................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Pages**

Alexander v. United States,
    509 U.S. 544, 113 S. Ct. 2766 (1993)................................................................23

Boos v. Barry,
    485 U.S. 312, 108 S. Ct. 1157 (1988)................................................................18

Burson v. Freeman,
    504 U.S. 191, 112 S. Ct. 1846 (1992)................................................................14

Carew-Reid v. Metropolitan Transp. Authority,
    903 F.2d 914 (2d. Cir. 1990)..................................................................21-22

Catanzano v. Wing,
    277 F.3d 99 (2d Cir. 2001) ....................................................................12

Children of Bedford, Inc. v. Petromelis,
    77 N.Y.2d 713, 570 N.Y.S.2d 453 (1991) ...........................................................25

City Council of Los Angeles v. Taxpayers for Vincent,
    466 U.S. 789, 104 S. Ct. 2118 (1984)..............................................................19, 31

City of Beaufort v. Baker,
    315 S.C. 146, 432 S.E.2d 470 (S.C. 1993) ...........................................................28

City of Madison v. Baumann,
    162 Wis. 2d 660, 470 N.W.2d 296 (Wis. 1991) ...................................................28

Clark v. Community for Creative Non-Violence,
    468 U.S. 288, 104 S. Ct. 3065 (1984)..........................................................15, 16, 20

DA Mortgage, Inc. v. City of Miami Beach,
    486 F.3d 1254 (11th Cir. 2007) .............................................................18, 23, 29

Dae Woo Kim v. City of New York,
    774 F. Supp. 164 (S.D.N.Y. 1991),
    aff'd without opinion, 962 F. 2d 3 (2d Cir.),
    cert. denied, 506 U. S. 853, 113 S. Ct. 157 (1992) ...............................................28

Foss v. City of Rochester,
    65 N.Y.2d 247, 491 N.Y.S.2d 128 (1985) ...........................................................25

**Cases**                                                            **Pages**

Frisby v. Schultz,
    487 U.S. 474, 108 S. Ct. 2495 (1988)...................................................................20

Golden v. Zwickler,
    394 U.S. 103, 89 S. Ct. 956 (1969)...................................................................12

Grayned v. City of Rockford,
    408 U.S. 104, 92 S. Ct. 2294 (1972)...........................................................15, 20

Heffron v. International Society for Krishna Consciousness, Inc.,
    452 U.S. 640, 101 S. Ct. 2559 (1981)...............................................................14

Housing Works, Inc. v. Kerik,
    283 F.3d 471 (2d Cir. 2002)...................................................................14, 15

Howard Opera House Associates v. Urban Outfitters, Inc.,
    131 F. Supp. 2d 559 (D. Vt. 2001)...........................................................27-28, 29

Jim Crockett Promotion, Inc. v. City of Charlotte,
    706 F.2d 486 (4th Cir. 1983) ...................................................................29, 32

Kovacs v. Cooper,
    336 U.S. 77, 69 S. Ct. 448 (1949)...................................................................20

Lewis v. Continental Bank Corp.,
    494 U.S. 472, 110 S. Ct. 1249 (1990)...............................................................12

Lujan v. Defenders of Wildlife,
    504 U.S. 555, 112 S. Ct. 2130 (1992)...............................................................12

Martin-Trigona v. Shiff,
    702 F.2d 380 (2d Cir. 1983)...................................................................11

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
    312 U.S. 270, 61 S. Ct. 510 (1941) ...................................................................12

Muhammad v. City of New York Dep't of Corrections,
    126 F.3d 119 (2d Cir. 1997) ...................................................................12

New Amber Auto Service, Inc. v. New York City Environmental Control Board,
    163 Misc. 2d 113, 619 N.Y.S.2d496 (N.Y. Supreme Ct., N.Y. County 1994).....................31

New York State Nat'l Org. for Women v. Terry,
    886 F.2d 1339 (2d Cir. 1989)...................................................................15

**Cases**                                                      **Pages**

Olivieri v. Ward,
 801 F.2d 602 (2d Cir. 1986),
 cert. denied, 480 U.S. 917, 107 S. Ct. 1371 (1987) ........................................14, 15

Penguin Books USA, Inc. v. Walsh,
 929 F.2d 69 (2d Cir. 1991) ..................................................................................12

People v. The Engineers Country Club, Inc.,
 2003 N.Y. Slip Op. 51069U; 2003 N.Y. Misc. LEXIS 858
 (Village Court, Roslyn Harbor, June 23, 2003) ...........................................18-19

People v. Foley,
 94 N.Y.2d 668, 709 N.Y.S.2d 467 (2000),
 cert. denied, 531 U.S. 875, 121 S. Ct. 181 (2000) ...............................................25

People v. New York Trap Rock Corp.,
 57 N.Y.2d 371, 456 N.Y.S.2d 711 (1982) ..........................................................28

People v. Shack,
 86 N.Y.2d 529, 634 N.Y.S.2d 660 (1995) ..........................................................25

People v. Smith,
 44 N.Y.2d 613, 407 N.Y.S.2d 462 (1978) ..........................................................25

People v. Toback,
 170 Misc. 2d 1011, 652 N.Y.S.2d 946 (City Court, Long Beach, Dec. 17, 1996)............18, 32

Price v. State,
 622 N.E.2d 954 (Ind. 1993) ................................................................................28

Pro-Choice Network v. Schenck,
 67 F.3d 359 (2d Cir. 1994),
 modified on other grounds en banc, 67 F.3d 377 (2d Cir. 1995),
 aff'd in part, rev'd in part on other grounds, 519 U.S. 357, 117 S. Ct. 855 (1997)........... 28-29

Reaves v. McConn,
 631 F.2d 377 (5th Cir. 1980) ..............................................................................29

Reminisce Bar & Lounge v. City of New York Dep't of Envt'l Protection,
 178 Misc. 2d 640 (Supreme Ct., N.Y. County 1998) ............................................32

Russman v. Board of Education,
 260 F.3d 114 (2d Cir. 2001) ................................................................................11

Sharkeys, Inc. v. City of Waukesha,
 265 F. Supp. 2d 984 (E.D. Wisc. 2003)................................................27, 28, 29, 31

**Cases**                                                                                                    **Pages**

Shuttlesworth v. City of Birmingham,
    394 U.S. 147, 89 S. Ct. 935 (1969)...................................................................14

Spencer v. Kemna,
    523 U.S. 1, 118 S. Ct. 978 (1998) .............................................................. 11-12

State v. Linares,
    232 Conn. 345, 655 A.2d 737 (Conn. 1995)........................................................28

Stewart v. Nynex Corp.,
    78 F. Supp. 2d 172 (S.D.N.Y. 1999) ............................................................11, 12

Stokes v. City of Madison,
    930 F.2d 1163 (7th Cir. 1991) .............................................................................20

Texas v. Johnson,
    491 U.S. 397, 109 S. Ct. 2533 (1989)........................................................... 14-15

The Harlem Yacht Club v. City of New York Environmental Control Board,
    40 A.D.2d 331, 836 N.Y.S.2d 66 (1st Dep't 2007) ........................................ passim

Turley v. Giuliani,
    86 F. Supp. 2d 291 (S.D.N.Y. 2000)............................................................. 21-22

Turley v. New York City Police Dep't,
    No. 93 Civ. 8748, 1996 WL. 93726 (S.D.N.Y. 1996),
    aff'd in part, rev'd in part on other grounds,
    167 F.12d 1163 (2d Cir. 1999)...........................................................................20

United States v. Albertini,
    472 U.S. 675, 689, 105 S. Ct. 2897 (1985)........................................................21

United States v. Grace,
    461 U.S. 171, 103 S. Ct. 1702 (1983).................................................................14

United States v. Schneiderman,
    968 F.2d 1564 (2d Cir. 1992),
    cert. denied, 507 U.S. 921, 113 S. Ct. 1283 (1993) ............................................25

Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,
    455 U.S. 489, 102 S. Ct. 1186 (1981)........................................................... 25-26

Ward v. Rock Against Racism,
    491 U.S. 781, 109 S. Ct. 2746 (1989)......................................................... passim

**Cases**                                                                                                                                          **Pages**

Wegman's Food Markets, Inc. v. State of New York,
   76 A.D.2d 95, 429 N.Y.S.2d 964 (4th Dep't 1980)................................................25

**Statutes and Regulations**

Fed. R. Civ. P. Rule 12(b)(6)................................................................................1, 11

Article 78 of the New York Civil Practice Law and Rules.....................................11

New York City Charter § 1404................................................................................10

New York City Charter § 1404(c)(1)(d) .................................................................10

Local Law 113 of 2005 .......................................................................................4, 12

Administrative Code § 10-108(e) ...........................................................................22

Administrative Code § 24-202.............................................................4, 8, 17, 22

Administrative Code § 24-203(6) .............................................................................4

Administrative Code § 24-203(25) ...........................................................................5

Administrative Code § 24-203(51) ...........................................................................4

Administrative Code § 24-203(62) .............................................................6, 17, 20

Administrative Code § 24-203(g) .............................................................................8

Administrative Code § 24-203(y) .............................................................................8

Administrative Code § 24-203(kk) ...........................................................................8

Administrative Code § 24-203(ss) ............................................................................9

Administrative Code § 24-203(ccc) ................................................................. *passim*

Administrative Code § 24-218.......................................................................... *passim*

Administrative Code § 24-231.......................................................................... *passim*

Administrative Code § 24-241.1....................................................................... *passim*

Administrative Code § 24-257.................................................................................10

15 RCNY § 31-11 ..................................................................................................10

**Cases**                                                     **Pages**

15 RCNY § 31-51 ...................................................................................................10

15 RCNY § 31-57 ...................................................................................................10

15 RCNY § 31-71 ...................................................................................................10

15 RCNY § 31-74 ................................................................................................10-11

15 RCNY § 31-75 ...................................................................................................11

15 RCNY § 31-115 .................................................................................................30

**Treatises and Articles**

Wright, 13A Federal Practice & Procedure § 3533 (2d ed. 1984) ...............................................12

Wright, The Constitution on the Campus,
    22 Vand. L. Rev. 1027, 1042 (1969......................................................................................15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GENCO IMPORTING INC. d/b/a MANITOBA'S and
RICHARD MANITOBA,

                              Plaintiffs,

            - against -                                    07 Civ. 3560 (LAK)

CITY OF NEW YORK, EMILY LLOYD, in her capacity
as Commissioner of the New York City Department of
Environmental Protection and as Chairman of the New        (ECF Case)
York City Environmental Control Board, NEW YORK
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD,

                              Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendants, the City of New York, Emily Lloyd in her capacity as Commissioner

of the New York City Department of Environmental Protection ("DEP") and as Chair of the New

York City Environmental Control Board ("ECB"), DEP, and ECB, submit this memorandum of

law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

for an order dismissing the amended complaint as it fails to state a claim upon which relief can

be granted against defendants.

Plaintiffs are the operator and the part owner and namesake of Manitoba's, a bar

located in the East Village of New York City (sometimes hereinafter collectively "Manitoba's").

Plaintiffs allege that while the bar used to have live musical performances several days a week,

after 2002 they limited the live performances to about one per week, usually scheduled for

Monday evenings (Amended Complaint ¶ 28). Plaintiffs also allege that after February of 2007, they stopped presenting live musical performances subsequent to the issuance of two violations under the prior New York City Noise Control Code ("Old Noise Code") by DEP in October of 2006 and February of 2007 (Amended Complaint ¶ 38).

Plaintiffs herein challenge the two provisions of the Old Noise Code underlying the violations - Administrative Code former §§ 24-218 and 24-241.1 -- as well as the subsequent amendments to those provisions effective July 1, 2007 - Administrative Code §§ 24-218 and 24-231 ("Noise Code") - as unconstitutional. Specifically, plaintiffs raise only facial challenges to Administrative Code § 24-241.1, and the amended Administrative Code § 24-231 (the "Commercial Music" statutes), and allege that the statutes are: (i) unconstitutionally vague in violation of federal due process rights (Amended Complaint - Count 1); and (ii) unconstitutionally burdensome of the right to free speech under the First Amendment of the United States Constitution (Amended Complaint - Count 2). Plaintiffs raise as applied challenges to Administrative Code § 24-218 (based on the violation they received), and facial challenges to both Administrative Code former § 24-218 and amended Administrative Code § 24-218 (the "Unreasonable Noise" statutes), and allege that the statutes are: (i) in violation of plaintiffs' federal due process rights as applied (prior statute) (Amended Complaint - Count 3); (ii) in violation of plaintiffs' First Amendment rights to protected speech as applied (prior statute) (Amended Complaint - Count 4); (iii) unconstitutionally vague in violation of federal due process rights (prior and current statute) (Amended Complaint - Count 5); and (iv) unconstitutionally burdensome of the right to free speech under the First Amendment of the United States Constitution (prior and current statute) (Amended Complaint - Count 6).

As is set forth herein, the allegations set forth in the amended complaint fail to state a claim upon which relief can be granted against defendants. To the extent that the amended complaint raises facial challenges to the Commercial Music and Unreasonable Noise statutes in the Old Noise Code, these claims are moot, as those sections have been amended. Therefore, to the extent that Counts 1 and 2 allege claims raising facial challenges to Administrative Code § 24-241.1, these claims should be dismissed, leaving in Counts 1 and 2 only the remaining facial challenges to amended Administrative Code § 24-231. Then, to the extent that Counts 5 and 6 allege claims raising facial challenges to the prior Administrative Code § 24-218, these claims should also be dismissed as they are moot, leaving only the facial challenges to the amended Administrative Code § 24-218.

The remaining claims in the amended complaint fail to state a cognizable claim and should also be dismissed. First, the claims that Administrative Code § 24-231 violates the First Amendment on its face and that Administrative Code § 24-218 violates the First Amendment both on its face (Noise Code) and as applied to plaintiffs (Old Noise Code) fail as a matter of law, since all provisions contain time, place, and manner restrictions as permitted under the First Amendment. Second, the claims that Administrative Code § 24-231 violates plaintiffs' Due Process rights on its face and that Administrative Code § 24-218 violates their Due Process rights both on its face (Noise Code) and as applied to plaintiffs (Old Noise Code) on the grounds they are unconstitutionally vague, further fails as a matter of law. The meaning of the challenged provisions is easily understood by persons of ordinary intelligence. As well, compliance with the Noise Code is within the control of plaintiffs and the possible monetary penalty does not disproportionately impact commercial music. As a result, this Court should dismiss the amended complaint in its entirety.

## STATUTORY FRAMEWORK

### The Current New York City Noise Control Code

The New York City Noise Control Code effective July 1, 2007 ("Noise Code") was adopted by the New York City Council on December 21, 2005 and approved by the Mayor on December 29, 2005 as Local Law 113 of 2005. A copy of the Local Law is attached to the accompanying Declaration of Ave Maria Brennan, dated August 29, 2007 as Exhibit "C". The Noise Code is codified in Chapter 2 of Title 24 of the Administrative Code. As set forth in Administrative Code § 24-202, the "Declaration of policy" of the Noise Code states that it was enacted to "to reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster the convenience and comfort of its inhabitants, and facilitate the enjoyment of the natural attractions of the city." As further set forth in that section:

> It is the public policy of the city that every person is entitled to ambient sound[1] levels that are not detrimental to life, health and enjoyment of his or her property. It is hereby declared that the making, creation or maintenance of excessive and unreasonable noises within the city affects and is a menace to public health, comfort, convenience, safety, welfare and the prosperity of the people of the city. For the purpose of controlling and

---

[1] As defined in Administrative Code § 24-203(51), sound "means an oscillation in pressure, stress, particle displacement, particle velocity, etc., in a medium with internal forces (e.g., elastic, viscous), or the superposition of such propagated oscillation which evokes an auditory sensation." "Ambient sound" is defined in Administrative Code § 24-203(6), as "the sound level at a given location that exists as a result of the combined contribution in that location of all sound sources, excluding the contribution of a source or sources under investigation for violation of this code and excluding the contribution of extraneous sound sources. For purposes of the enforcement of this code, the ambient sound level of a given location may be determined based upon measurements taken at a comparable site (which includes but is not limited to comparable physical locations and time of day) in the nearby area."

reducing such noises, it is hereby declared to be the policy of the city to set the unreasonable and prohibited noise standards and decibel levels[2] contained herein and to consolidate certain of its noise control legislation into this code. The necessity for legislation by enactment of the provisions of this chapter is hereby declared as a matter of legislative determination.

This code shall be liberally construed so as to effectuate the purposes described in this section. Nothing herein shall be construed to abridge the emergency powers of the board of health or the right of the department of health to engage in any of its necessary or proper activities. Nothing herein shall abridge the powers and responsibilities of the police department to enforce the provisions of this code.

Administrative Code § 24-218 sets forth the "General prohibitions" in the Noise Code, in relevant part, as follows:

(a) No person shall make, continue or cause or permit to be made or continued any unreasonable noise.

(b) Unreasonable noise shall include but shall not be limited to sound, attributable to any device, that exceeds the following prohibited noise levels:

(1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 dB(A) or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.

---

[2] Administrative Code § 24-203(25) defines "decibel" as "the practical unit of measurement for sound pressure level; the number of decibels of a measured sound is equal to 20 times the logarithm to the base 10 of the ratio of the sound pressure to the pressure of a reference sound (20 micropascals); abbreviated 'dB'." Because the decibel scale is logarithmic, an increase of 10 dB(A) will be perceived as a doubling of loudness, a decrease of 10 dB(A) as a halving of loudness.

(2) Sound, other than impulsive sound, attributable to the source, measured at a level of 10 dB(A) or more above the ambient sound level at or after 7:00 a.m. and before 10:00 p.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.

(3) Impulsive sound, attributable to the source, measured at a level of 15 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way. Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting network with the sound level meter set to slow response.

(c) Notwithstanding the provisions of subdivision b of this section, where a particular sound source or device is subject to decibel level limits and requirements specifically prescribed for such source or device elsewhere in this code, the decibel level limits set forth in this section shall not apply to such sound source or device.

The term "unreasonable noise" is also defined in Administrative Code § 24-203(62) to mean "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business."

Administrative Code § 24-231 sets forth the restrictions on commercial music.  It states, in relevant part, as follows:

### § 24-231 Commercial music.

(a) No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial

- 6 -

establishment or enterprise when the level of sound attributable to such music, as measured inside any receiving property dwelling unit:

(1) is in excess of 42 dB(A) as measured with a sound level meter; or

(2) is in excess of 45 dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz (ANSI bands numbers 18 through 27, Inclusive), in accordance with American National Standards Institute standard S1.6-1984; or

(3) causes a 6 dB(C) or more increase in the total sound level above the ambient sound level as measured in decibels in the "C" weighting network provided that the ambient sound level is in excess of 62 dB(C).

(b) (1) The commissioner may recommend to the board that there shall be no civil penalty imposed for a first violation of this section if, within 30 days after the issuance of such violation or, if applicable, within the time granted by the commissioner pursuant to paragraph two of this subdivision, the respondent admits liability for the violation and files a certification with the department in a form and manner and containing such information and documentation as shall be prescribed in the department's rules that (i) permanent improvements or modifications have been made to the establishment, including but not limited to the installation of appropriate sound insulation, isolators, suspension mounting and/or sound mitigation devices or materials and (ii) appropriate sound measurements taken in accordance with the department's rules substantiate that the establishment is in full compliance with the sound levels set forth in this section. If the commissioner accepts such certification of compliance, he or she shall recommend to the board that no civil penalty shall be imposed for the violation. Such violation may nevertheless serve as a predicate for purposes of imposing penalties for subsequent violations of this section.

**The Prior New York City Noise Control Code**

The "Declaration of policy" of the prior New York City Noise Control Code ("Old Noise Code") stated that it was enacted "to reduce the ambient noise level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster the convenience and comfort of its inhabitants, and facilitate the enjoyment of the natural attractions of the city." Administrative Code § 24-202. The Old Noise Code also set forth in that section:

> It is the public policy of the city that every person is entitled to ambient noise[3] levels that are not detrimental to life, health and enjoyment of his or her property. It is hereby declared that the making, creation or maintenance of excessive and unreasonable noises within the city affects and is a menace to public health, comfort, convenience, safety, welfare and the prosperity of the people of the city. For the purpose of controlling and reducing such noises, it is hereby declared to be the policy of the city to set the unreasonable noise standards and decibel levels[4] contained herein and to consolidate certain of its noise control legislation into this code. The necessity for legislation by enactment of the provisions of this chapter is hereby declared as a matter of legislative determination.

> This code shall be liberally construed so as to effectuate the purposes described in this section. Nothing herein shall be construed to abridge the emergency powers of the board of health or the right of the department of health to engage in any of its necessary or proper activities. Nothing herein

---

[3] As defined in the Old Noise Code, noise "means an erratic, intermittent, or statistically random oscillation." Administrative Code § 24-203(kk). "Ambient noise" was defined in the Old Noise Code as "the all-encompassing noise associated with a given environment, being usually a composite of sounds from many sources near and far." Administrative Code § 24-203(g).

[4] Administrative Code § 24-203(y) defined "decibel" as "one-tenth of a bel. Thus, the decibel is a unit of level when the base of the logarithm is the tenth root of ten, and the quantities concerned are proportional to power."

> shall abridge the powers and responsibilities of the
> police department to enforce the provisions of this
> code.

The Old Noise Code provided that "no person shall make, continue or cause or permit to be made or continued any unreasonable noise, except that this section shall not apply to any sound[5] from any source where the decibel level of such sound is within the limits prescribed by another section of this title and where there is compliance with all other applicable requirements of law with respect to such sound." Administrative Code § 24-218.

The term "unreasonable noise" was defined in the Old Noise Code to mean "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business." Administrative Code § 24-203(ccc).

The Old Noise Code also set forth the following restrictions on commercial music:

> No person shall make or cause or permit to be made
> or caused any music originating from or in
> connection with the operation of any commercial
> establishment or enterprise when the level of sound
> of such music, as measured inside any residential
> unit is in excess of either;
>
> (a)   45 dB(A) as measured with a sound level
>        meter; or
>
> (b)   45 dB in any one-third octave band having a
>        center frequency between 63 hertz and 500
>        (ANSI bands numbers 18 through 27,

---

[5] As defined in the Old Noise Code, a sound is "an oscillation in pressure, stress, particle displacement, particle velocity, etc., in a medium with internal forces (e.g., elastic, viscous), or the superposition of such propagated oscillation which evokes an auditory sensation." Administrative Code § 24-203(ss).

> inclusive), in accordance with American
> National Standards standard S1.6-1984.

Administrative Code § 24-241.1.

## Adjudication of Noise Code Violations at ECB

ECB is a division of DEP which is headed by a thirteen member board and which has the powers and duties enumerated in Section 1404 of the New York City Charter ("City Charter"). Pursuant to City Charter § 1404(c)(1)(d) and Administrative Code § 24-257, ECB is empowered to adjudicate and enforce the provisions of the Noise Codes. To this end, ECB may conduct adjudicatory proceedings, impose penalties, and enter and enforce judgments. City Charter § 1404(c)(1)(d) and Administrative Code § 24-257. ECB has adopted rules and regulations governing the conduct of its enforcement proceedings.[6]

ECB's hearing procedures are set forth in Title 15, Chapter 31, Sub-Chapter C, of the Rules of the City of New York ("RCNY"). Title 15 RCNY Section 31-51 sets forth the general rules for hearings at ECB, and states that ECB respondents shall receive a fair and impartial hearing before an ECB hearing officer. ECB hearing officers render recommended decisions and orders in accordance with 15 RCNY § 31-57. Title 15 RCNY § 31-71 sets forth the procedures for appealing an ECB hearing officer's decision. If a party aggrieved by a

---

[6] In addition to the rules and regulations adopted by ECB, from time to time the Board adopts resolutions at its public meetings, which set penalty schedules, that are later published in the *City Record,* pursuant to the provisions in the New York City Administrative Procedure Act, that become rules setting forth the penalty schedules for ECB Hearing Officers to use when assessing fines. As defined in 15 RCNY § 31-11, a "respondent" is the person against whom the charges alleged in the NOV have been filed. The "petitioner" is the commissioner, department or bureau within a department of the City, which commences adjudicatory, or enforcement proceedings before ECB. See 15 RCNY § 31-11.

hearing officer's determination files written exceptions[7] with the Board, the Board will review the record and render a determination in accordance with 15 RCNY § 31-74.

As set forth in 15 RCNY § 31-75, "judicial review of the final decision and order of the board may be sought pursuant to Article 78 of the New York Civil Practice Law and Rules."

## STATEMENT OF MATERIAL FACTS

The statement of material facts is set forth in the amended complaint at ¶¶ 22-41. For the purposes of this motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6), defendants will assume those facts to be true.

## ARGUMENT

## POINT I

## PLAINTIFFS' FACIAL CHALLENGE TO SECTIONS OF THE OLD NOISE CODE IS MOOT AND NOT JUSTICIABLE

Pursuant to Article III of the United States Constitution, a dispute before the court "must be real and live, not feigned, academic or conjectural." Russman v. Board of Education, 260 F.3d 114, 118 (2d Cir. 2001) (holding "if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot"). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or it is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).

"A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." Stewart v. Nynex Corp., 78 F. Supp. 2d 172, 179 (S.D.N.Y. 1999). The dispute

---

[7] For the purposes of full ECB review, the filing of exceptions is the same as the filing of an appeal.

must exist at all stages of review and the parties must "continue to have a 'personal stake in the outcome' of the lawsuit." Spencer v. Kemna, 523 U.S. 1, 7, 118 S. Ct. 978, 983 (1998), citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477-48, 110 S. Ct. 1249, 1253-54 (1990). See Golden v. Zwickler, 394 U.S. 103, 108, 89 S. Ct. 956, 959 (1969); Muhammad v. City of New York Dep't of Corrections, 126 F.3d 119, 123 (2d Cir. 1997). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 523 U.S. at 7, 118 S. Ct. at 983, citing Lewis, 494 U.S. at 477, 110 S. Ct. at 1253 (citation omitted). "'The central question ... is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'" Catanzano v. Wing, 277 F.3d 99, 107 (2d Cir. 2001), citing Wright, 13A Federal Practice & Procedure § 3533 (2d ed. 1984).

Although an exception exists where the dispute is "capable of repetition, yet evading review," a merely "speculative possibility of future harm is insufficient to qualify under that standard." Stewart, 78 F. Supp. 2d at 180, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992). In the context of a declaratory judgment action, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Penguin Books USA, Inc. v. Walsh, 929 F.2d 69, 72 (2d Cir. 1991), quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941).

The Old Noise Code was amended by Local Law 113 of 2005, effective July 1, 2007. As of that date, the sections of the Old Noise Code that are the subject of plaintiffs' facial

challenge herein, i.e., Administrative Code §§ 24-241.1 and 24-218, ceased to exist and thus are

of no further force and effect.  There is no longer a case or controversy left to resolve regarding

the alleged facial unconstitutionality of these statutes and plaintiffs' claims alleging a facial

challenge to the Old Noise Code are now moot.  To the extent that the amended complaint raises

as applied challenges to the Old Noise Code, those claims are not moot.

Therefore, the facial challenges to section 24-241.1 and 24-218 of the Old Noise

Code on First Amendment and Due Process grounds as alleged in Counts 1, 2 5 and 6 of the

amended complaint should be dismissed by this Court.

## POINT II

### THE CHALLENGED PROVISIONS OF THE NOISE CODES ARE CONTENT NEUTRAL TIME, PLACE AND MANNER REGULATIONS THAT ARE NARROWLY TAILORED TO PROMOTE A SIGNIFICANT GOVERNMENT INTEREST AND AFFORD PLAINTIFFS AMPLE AVENUES FOR SPEECH, AND THUS, DO NOT VIOLATE THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

While the amended complaint apparently attempts to cure deficiencies in the

complaint and to explain exactly what aspect of plaintiffs' speech is allegedly curtailed by the

requirements of Administrative Code § 24-231 and the two versions of Administrative Code §

24-218, the alleged First Amendment violations are still somewhat unclear.[8]  To the extent that

plaintiffs are alleging that their First Amendment rights to have live music or loud recorded

music played at their commercial establishment are violated by the challenged Noise Code

provisions (both on their face and as applied to plaintiffs), plaintiffs' arguments fail as a matter

---

[8] The facial challenges on First Amendment grounds to prior Administrative Code §§ 24-241.1 and 24-218 alleged in Counts 2 and 6 of the amended complaint are moot, as the Old Noise Code was amended. See supra, Point I.

of law.  Similarly, to extent that plaintiffs allege that the Noise Code singles out commercial music without any sufficient "government interest in reducing noise" or that plaintiffs' compliance is "contingent on the actions of third-parties and other factors" (Amended Complaint ¶¶ 52 and 53) they are incorrect.  As well, insofar as the amended complaint alleges that the Noise Code "leaves those wishing to comply with it guessing which speech will be subject to sanction" and thus "chills" protected speech (Amended Complaint ¶ 69), it fails to state a claim and should be dismissed.

While defendants recognize that music constitutes expression that is entitled to First Amendment protection, the United States Supreme Court has held that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981). See also United States v. Grace, 461 U.S. 171, 177-78, 103 S. Ct. 1702, 1706-08 (1983); Olivieri v. Ward, 801 F.2d 602, 605 (2d Cir. 1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1371 (1987) ("the First Amendment does not guarantee an absolute right to anyone to express their views any place, at any time, and in any way they want."). "'[E]xpressive activity, even in a quintessential public forum, may interfere with other important activities for which the property is used.'" Housing Works, Inc. v. Kerik, 283 F.3d 471, 478 (2d Cir. 2002), quoting Burson v. Freeman, 504 U.S. 191, 196, 112 S. Ct. 1846, 1850 (1992).

The Supreme Court has held that the use of public streets and parks, although covered by the First Amendment, is not considered "pure speech" within the First Amendment. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 152, 89 S. Ct. 935, 939 (1969). Accordingly, the government "has a freer hand in restricting expressive conduct than it has in

restricting the written or spoken word." Texas v. Johnson, 491 U.S. 397, 406, 109 S. Ct. 2533, 2540 (1989).  Thus, plaintiffs' right to play music may be curtailed by reasonable restrictions on the time, place, or manner of speech.  See Ward v. Rock Against Racism, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753-54 (1989); Housing Works, Inc., 283 F.3d at 478.  The challenged provisions at issue here are exactly the type of regulation of expression that has been upheld on numerous occasions and in numerous contexts.

To pass constitutional muster, a time, place and manner restriction of speech or conduct in a public forum must be content-neutral, narrowly tailored to meet a significant governmental interest, and leave open ample alternative means of communication.  See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3069 (1984); Olivieri, 801 F.2d at 605.  In addition, the Supreme Court has found that the "nature of a place, [] 'the pattern of its normal activities, dictate the kind of regulations of time, place and manner that are reasonable.'"  Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S. Ct. 2294, 2303 (1972), quoting Wright, The Constitution on the Campus, 22 Vand. L. Rev. 1027, 1042 (1969); New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1363 (2d Cir. 1989).

## A.    The Challenged Provisions of the Noise Code (Administrative Code §§ 24-218 and 24-231) are Content-Neutral

Plaintiffs set forth the bald conclusion that the challenged provisions burden "substantially more protected speech than is constitutionally permissible to further New York City's noise control policy."  Amended Complaint ¶¶ 51, 69.  Plaintiffs allege that "[t]he hosting of live musical performances or playing of pre-recorded music by a commercial establishment constitutes speech protected under the First and Fourteenth Amendments to the United States Constitution."  Amended Complaint ¶ 50.  While defendants do not dispute that music is a form a protected expression, plaintiffs do not allege — and, indeed, cannot allege — that the

- 15 -

challenged Noise Code provisions are not content-neutral. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Rock Against Racism, 491 U.S. at 791, 109 S. Ct. at 2754. "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Id. A regulation is content-neutral where, as here, it is "justified without reference to the content of the regulated speech...." Id., quoting Clark, 468 U.S. at 293, 104 S. Ct. at 3069.

The current Administrative Code § 24-218 prohibits "any reasonable noise" and defines "any unreasonable noise" as follows:

> (b) Unreasonable noise shall include but shall not be limited to sound, attributable to any device, that exceeds the following prohibited noise levels:
>
> (1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 dB(A) or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.
>
> (2) Sound, other than impulsive sound, attributable to the source, measured at a level of 10 dB(A) or more above the ambient sound level at or after 7:00 a.m. and before 10:00 p.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.
>
> (3) Impulsive sound, attributable to the source, measured at a level of 15 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way. Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting

- 16 -

> network with the sound level meter set to slow response.
>
> (c) Notwithstanding the provisions of subdivision b of this section, where a particular sound source or device is subject to decibel level limits and requirements specifically prescribed for such source or device elsewhere in this code, the decibel level limits set forth in this section shall not apply to such sound source or device.

The term "unreasonable noise" is also defined in Administrative Code § 24-203(62) to mean "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business."

Moreover, Administrative Code § 24-231 also sets forth explicit decibel limits prohibiting "music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound attributable to such music, as measured inside any receiving property dwelling unit" exceeds that decibel limit. These Noise Code provisions govern the use of sound and music heard on the City's streets, without regard to the genre of the music or message it conveys – be it classical, rock and roll, or rap. As set forth above, the Noise Code was enacted "to reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city, prevent injury to human, plant and animal life and property, foster convenience and comfort to its inhabitants, and facilitate the enjoyment of the natural attractions of the city." Administrative Code § 24-202. The Noise Code was not enacted due to a disagreement with any messages that may be associated with certain types of noise or music.

Similarly, prior Administrative Code § 24-218 prohibited "any unreasonable noise, except that this section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section of this title …." Administrative Code § 24-203(ccc) defined "unreasonable noise" as "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities or endangers the health or safety of a reasonable person of normal sensitivities, or which causes injury to plant or animal life, or damage to property or business." These Old Noise Code provisions also governed the use of sound and music heard on the City's streets, without regard to the genre of the music or message it conveyed. These Old Noise Code provisions were not enacted due to a disagreement with any messages that may be associated with certain types of noise or music.

Noise code provisions similar to the challenged provisions have already been found by the courts to be content-neutral. See Rock Against Racism, 491 U.S. at 791-92, 109 S. Ct. at 2753-54 (holding that sound-amplification guideline based on city's desire to control noise levels "'has nothing to do with content'"), quoting Boos v. Barry, 485 U.S. 312, 320, 108 S. Ct. 1157, 1163 (1988) and DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254, 1266-67 (11th Cir. 2007) (holding that ordinance prohibiting use or operation of sound equipment in such a "manner as to disturb the peace, quiet and comfort of the neighboring inhabitant" was content neutral. See also People v. Toback, 170 Misc. 2d 1011, 1013, 652 N.Y.S.2d 946, 948 (City Court, Long Beach, Dec. 17, 1996) (upholding town noise code as content neutral as it "places a limitation on the loudness of the speech and in no way distinguishes its content"); People v. The Engineers Country Club, Inc., 2003 N.Y. Slip Op. 51069U; 2003 N.Y. Misc.

LEXIS 858, *8 (Village Court, Roslyn Harbor, June 23, 2003) (a copy is appended hereto) (finding unreasonable noise statute to be content neutral).

Indeed, the New York State Supreme Court, Appellate Division, First Department, recently upheld the constitutionality of Administrative Code § 24-218 — the provision of the Old Noise Code specifically challenged herein "as applied" to plaintiffs — in The Harlem Yacht Club v. City of New York Environmental Control Board, 40 A.D.2d 331, 836 N.Y.S.2d 66 (1st Dep't 2007). In Harlem Yacht Club, the petitioner therein challenged Administrative Code § 24-218 alleging that such ordinance violated its First Amendment rights and was unconstitutionally vague. The Appellate Division, First Department found that "[t]here is no dispute that the ordinance is content-neutral; respondent met its burden of demonstrating that the ordinance was enacted to further a substantial government interest in protecting its citizens from unwelcome noise and is narrowly tailored to achieve that goal [citations omitted]; and petitioners are not without alternative means of communication . . . ." The Harlem Yacht Club, 40 A.D.2d at 332, 836 N.Y.S.2d at 68.

**B.     The Challenged Provisions of the Noise Code are Narrowly Tailored to the City's Interest in Protecting the Public Health, Welfare, and Safety**

It appears that plaintiffs' attack on the constitutional viability of the challenged Noise Code provisions is based upon their argument that they are not narrowly tailored to a significant government interest. Specifically, plaintiffs allege that the challenged provisions of the Noise Code "burden substantially more protected speech than is constitutionally permissible to further New York City's noise control policy." Amended Complaint ¶¶ 51, 69. It is undisputed that the City has "'a substantial interest in protecting its citizens from unwelcome noise.'" Rock Against Racism, 491 U.S. at 796, 109 S. Ct. at 2756, quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806, 104 S. Ct. 2118, 2129 (1984). See also

Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S. Ct. 2294, 2303-04 (1972); Turley v. New York City Police Dep't, No. 93 Civ. 8748, 1996 LEXIS 2582, *17-18 (S.D.N.Y. 1996) (finding the "regulation of sound and noise, especially when competing values are threatened, has long been a recognized government interest", quoting Stokes v. City of Madison, 930 F.2d 1163, 1179 (7th Cir. 1991)), aff'd in part, rev'd in part on other grounds, 167 F. 3d 757 (2d Cir. 1999). It has been held that "[t]his interest is perhaps at its greatest when government seeks to protect 'the well-being, tranquility, and privacy of the home,' Frisby v. Schultz, 487 U.S. at 484 [quotations omitted], but it is by no means limited to that context, for the government may act to protect even such traditional public forums as city streets and parks from excessive noise." Rock Against Racism, 491 U.S. at 796, 109 S. Ct. at 2756, citing Kovacs v. Cooper, 336 U.S. 77, 86-87, 69 S. Ct. 448, 453-54 (1949) ("The unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street he is practically helpless to escape this interference with his privacy by loud speakers except through the protection of the municipality."); Clark v. Community for Creative Non-Violence, 468 U.S. 288, 296, 104 S. Ct. 3065, 3070 (1984) (holding that government has substantial interest in maintaining the parks in an attractive manner for all to use and enjoy). That plaintiffs take issue with the City's chosen method for protecting the public (both in their homes and on the streets) from loud noise is not legally significant. Indeed, the requirements that no person shall make any "unreasonable noise" as defined in Administrative Code §§ 24-218 and 24-203(62) so as not to disturb the "peace, comfort or repose of a reasonable person of normal sensitivities or injure[] or endanger[] the health or safety of a reasonable person of normal sensitivities or … cause[] injury to plant or animal life, or damage to property of business" and that commercial music be limited to under 42 decibels "measured inside any residential unit" with a meter (Administrative

Code § 24-231)[9] are narrowly tailored to these significant government interests. See The Harlem Yacht Club, 40 A.D.2d at 332, 836 N.Y.S.2d at 68.

It is well-established that regulation of the time, place or manner of protected expression, such as the expression covered by the challenged Noise Code provisions, need not be "the least restrictive or least intrusive means" of achieving the City's interest in protecting the public from excessive noise. See Rock Against Racism, 491 U.S. at 798, 109 S. Ct. at 2757. Rather, "the requirement of narrow tailoring is satisfied 'so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Id., quoting United States v. Albertini, 472 U.S. 675, 689, 105 S. Ct. 2897, 2906 (1985).

Moreover, municipalities are afforded substantial deference in determining what steps are necessary to protect the public health, welfare and safety. So long as the regulations are "not substantially broader than necessary to achieve the government's interest ... the regulation[s] will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Rock Against Racism, 491 U.S. at 800, 109 S. Ct. at 2758. "'The validity of [time, place or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id., quoting Albertini, 472 U.S. at 689, 105 S. Ct. at 2907. Indeed, the "'essence' of narrow tailoring is a 'focus on the source of the evils' that the regulation seeks to eliminate and the elimination of those evils 'without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils.'"

---

[9] In fact, whenever DEP takes sound level measurements for commercial music or unreasonable sound, it has adopted a "permissive policy of not pursuing enforcement unless the measured sound level exceeds the permissible sound level limit by more than 3 decibels." Turley v. Giuliani, 86 F. Supp. 2d 291, 293-94 (S.D.N.Y. 2000)(footnote omitted).

See Carew-Reid v. Metropolitan Transp. Authority, 903 F.2d 914, 917 (2d. Cir. 1990), quoting

Rock Against Racism, 491 U.S. at 799 n.7, 109 S. Ct. at 2758 n.7. In Turley v. Giuliani, where

plaintiffs raised a concern about Administrative Code § 24-218 and the decibel limitation

applicable to permits issued at that time pursuant to Administrative Code § 10-108(e), the Court

found that plaintiffs were not likely to succeed on the merits because the City's then-applicable

method with regard to the timing of sound measurements "is not so arbitrary as to be inherently

inconsistent with valid time, place and manner restrictions." Turley v. Giuliani, 86 F. Supp. 2d

291, 298 (S.D.N.Y. 2000), citing Rock Against Racism, 491 U.S. at 800, 109 S. Ct. at 2758.

Here, as stated in Administrative Code § 24-202 (the "Declaration of policy" of

the Noise Code), the City has declared that its policy is "to reduce the ambient sound level in the

city, so as to preserve, protect and promote the public heath, safety and welfare, and the peace

and quiet of the inhabitants to the city…." via the enactments of the provisions of the Noise Code

setting standards for controlling unreasonable noise and decibel levels. Contrary to plaintiffs'

allegations, the challenged provisions of the Noise Code do not "burden[] substantially more

protected speech than is constitutionally permissible." Amended Complaint ¶¶ 51, 69.

Plaintiffs' conclusion that the challenged provisions burden more protected speech than is

permitted by the United States Constitution because plaintiffs decided to stop hosting live music

performances in order to prevent the issuance of additional violations by DEP (Amended

Complaint ¶ 38), is not sufficient to render the determination by DEP to issue the notices of

violation to plaintiff Genco Importing Inc. d/b/a Manitoba's --- or the challenged provisions of

the Noise Codes themselves — incorrect or unconstitutional. Indeed, as set forth above, the fact

that plaintiffs would prefer that the City would regulate differently is constitutionally insignificant.[10]

## C.    The Challenged Provisions of the Noise Code Afford Plaintiffs and Others Ample Channels of Communication

The challenged provisions of the Noise Code afford plaintiffs and others ample channels of communication.  Indeed, Administrative Code §§ 24-218 and 24-231 do "not attempt to ban any particular manner or type of expression at a given place or time."  Rock Against Racism, 491 U.S. at 802, 109 S. Ct. at 2760; see also The Harlem Yacht Club, 40 A.D.2d at 332, 836 N.Y.S.2d at 68.  Rather, the Noise Code provisions allow First Amendment expressive musical activity on the City's streets and in the City's commercial establishments subject to certain limited time, place, and manner restrictions.  The Noise Code provisions have no effect on the quantity or content of that expression beyond regulating the extent of the volume of the music.  See Rock Against Racism, 491 U.S. at 802, 109 S. Ct. at 2760.  Like in DA Mortgage, Inc., the challenged provisions do not impose a total ban, but only "restrict[] the volume at which [reproduced sound devices] may operate so as not to intrude on the peace and quiet of neighborhood residents ...."  DA Mortgage, Inc., 486 F. Supp. 2d at 1268.  In fact, so long as the sound made by music is not unreasonably loud, it is perfectly legal for plaintiffs to host and enjoy live music or recorded music at their commercial establishment.  As a result, the challenged provisions of the Noise Code leave ample channels of communication open for people to both perform and enjoy listening to live or recorded music.[11]

_____

[10] Notably, plaintiffs fail to set forth any allegation as to how they would otherwise choose to regulate noise levels in furtherance of the City's legitimate policy.

[11] That plaintiff Genco Importing Inc. d/b/a Manitoba's may, after hearing and adjudication (or upon default) on a notice of violation, be subjected to monetary fines for violating the Noise Code, is not a prior restraint on speech, but rather, it is a subsequent penalty punishing plaintiff for a violation of the challenged regulation after the fact.  See Alexander v. United States, 509

Thus, for all of the reasons set forth above, Administrative Code §§ 24-218 and 24-231 do not violate the First Amendment of the United States Constitution, and plaintiffs' claims should be dismissed.

## POINT III

### THE CHALLENGED PROVISIONS OF THE CITY'S NOISE CODES ARE NOT UNCONSTITUTIONALLY VAGUE

A.    **The Challenged Provisions of the Prior and Current Noise Codes are not Unconstitutionally Vague Under the Void-for-Vagueness Doctrine**

Plaintiffs challenge the prior Administrative Code § 24-218 (as applied), as well as the current Administrative Code §§ 24-231 and 24-218 (facial challenge) on the grounds that those provisions of the Noise Codes are unconstitutionally vague and thus, violate the Due Process clause of the United States Constitution.[12]    Amended Complaint - Counts 1, 3 and 5. Plaintiffs allege that the challenged provisions of the Noise Codes deprive ordinary persons of the right to fair notice of the conduct the ordinances proscribe and allow for arbitrary and discriminatory enforcement.    Amended Complaint ¶¶ 46, 66.    The void-for-vagueness doctrine

---

U.S. 544, 549-52, 113 S. Ct. 2766, 2770-72 (1993) (order directing asset forfeiture which effectively shut down adult entertainment business is not a prior restraint because it "does not forbid petitioner to engage in any expressive activities in the future, nor does it require him to obtain prior approval for any expressive activities"; it simply imposes a penalty for previous racketeering violations).  To the extent that plaintiffs claim that they are afraid to host live music because they do not know whether they will be subjected to the issuance of further notices of violation, which carry monetary fines, plaintiffs' claim is really that the possibility of being subject to sanctions "chills" their speech, not that the Noise Code gives the government the potential power to freeze speech in the first instance.  Thus, plaintiffs' claim is more properly analyzed under the vagueness doctrine, discussed below.

[12] The facial challenges on Due Process grounds to prior Administrative Code §§ 24-241.1 and 24-218 alleged in Counts 1 and 5 are moot, as the Old Noise Code was amended. See supra, Point I.

requires that laws be clear enough so as to give notice as to prohibited conduct and so that protected expression will not be "chilled."

It is well-settled that due process "requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not forced to guess at the meaning of statutory terms [citations omitted]." Foss v. City of Rochester, 65 N.Y.2d 247, 253, 491 N.Y.S.2d 128, 131 (1985).[13] The Constitution does not require "meticulous specificity" and does not require a law to be drafted with such specificity that it leaves no room for interpretation. Children of Bedford, Inc. v. Petromelis, 77 N.Y.2d 713, 730, 570 N.Y.S.2d 453, 462 (1991). As a result, in order to succeed on a facial vagueness challenge, plaintiffs must do more than show that the statute in question "requires a person to conform his conduct to an imprecise but comprehensible normative standard," United States v. Schneiderman, 968 F.2d 1564, 1567 (2d Cir. 1992), cert. denied, 507 U.S. 921, 113 S. Ct. 1283 (1993), or that one may have "difficulty in determining whether certain marginal activities fall within the scope of the statutory regulations [citation omitted]." Wegman's Food Markets, Inc. v. State of New York, 76 A.D.2d 95, 101, 429 N.Y.S.2d 964, 969 (4th Dep't 1980).

"'[I]mprecise language does not render a statute fatally vague so long as that language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" People v. Foley, 94 N.Y.2d 668, 681, 709 N.Y.S.2d 467, 474-75, cert. denied, 531 U.S. 875, 121 S. Ct. 181 (2000), quoting People v. Shack 86 N.Y.2d 529, 538, 634 N.Y.S.2d 660, 666 (1995). In fact, to succeed on its vagueness claim, plaintiffs must demonstrate that the challenged regulations are so vague that "no standard of

---

[13] The federal and state constitutional standards for adjudicating vagueness claims are indistinguishable. See People v. Smith, 44 N.Y.2d 613, 407 N.Y.S.2d 462 (1978) (applying federal case law to vagueness claims brought under federal and state constitutions).

conduct is specified at all ...."  Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1981).  Plaintiffs cannot do so, and, thus their claims fail as a matter of law.

The prohibition of certain specific levels of commercial noise in the City's Noise Code (Administrative Code § 24-231) and against making or causing "unreasonable noise" (prior and current Administrative Code § 24-218) sets forth comprehensible normative standards capable of easy understanding by persons of common intelligence.  First, Administrative Code § 24-231 sets forth very specific decibel limits above which commercial music is prohibited.  That section sets forth a limit at (i) 42 dB(A) as measured with a sound level meter; or (ii) at 45 dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz (ANSI bands numbers 18 through 27, inclusive), in accordance with American National Standards Institute standard S1.6-1984; or (iii) which causes a 6 dB(C) or more increase in the total sound level above the ambient sound level as measured in decibels in the "C" weighting network provided that the ambient sound level is in excess of 62 dB(C).  See Administrative Code § 24-231(a).  As such, plaintiffs are hard pressed to argue that that provision is at all vague.

Moreover, the prior Administrative Code § 24-218 (the subject of the "as applied" challenge prohibiting the making or causing of unreasonable noise) further sets forth comprehensible standards easily capable of understanding by persons of common intelligence.  As defined in Administrative Code § 24-203(ccc), unreasonable noise means "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business."  This definition conveys a sufficiently definite warning as to the proscribed conduct when

measured by persons of common understanding. Indeed, the New York Appellate Division, First Department recently held that former Administrative Code § 24-218 which bans "unreasonable noise" as set forth in Administrative Code § 24-203(ccc) is not impermissibly vague. See The Harlem Yacht Club, 40 A.D.2d at 332, 836 N.Y.S.2d at 68. As for section 24-218 in the Noise Code (the subject of the facial challenge in Count 6 of the amended complaint), in addition to the prohibition stated in the prior section, this section adds specific decibel readings to describe what is included in the meaning of unreasonable noise. See Administrative Code § 24-218. Insofar as the prior section has been found not to be vague in the Harlem Yacht Club case, this Noise Code section cannot be found to be vague in light of its additional specific decibel descriptions of the prohibited levels of sound.

       "In determining whether an ordinance is unconstitutionally vague, a court must examine the words of the ordinance and consider interpretations of comparable laws." Sharkeys, Inc. v. City of Waukesha, 265 F. Supp. 2d 984, 990 (E.D. Wisc. 2003). Indeed, as set forth above, Administrative Code § 24-218 premised upon the "unreasonable noise" definition set forth in Administrative Code § 24-203(ccc), specifically challenged herein, was recently found not to be unconstitutionally vague. See The Harlem Yacht Club, 40 A.D.2d at 332, 836 N.Y. S.2d at 68. Moreover, other courts have already upheld unreasonable noise statutes that are similar to the provisions of the Administrative Code challenged herein. For example, in Howard Opera House Associates v. Urban Outfitters, Inc., 131 F. Supp. 2d 559, 566 (D. Vt. 2001), the Court rejected a virtually identical claim to the instant challenge to Administrative Code § 24-218, holding that an ordinance prohibiting any person from making or causing "loud or

unreasonable noise"[14] was not vague because the "ordinance gives sufficiently fair warning of prohibited conduct by using 'words of common understanding,' and, [because it uses an objective standard], the ordinance avoids arbitrary and discriminatory enforcement."    Id. (citations omitted). In reaching this conclusion, the Court referred to a number of other cases in which similar "unreasonable noise" statutes have been upheld.[15]  See Howard Opera House, 131 F. Supp. 2d at 565, citing State v. Linares, 232 Conn. 345, 655 A.2d 737, 743 (Conn. 1995) ("unreasonable noise" is not vague because "unreasonable" denotes objectivity based on circumstances); Price v. State, 622 N.E.2d 954, 967 (Ind. 1993) ("unreasonable noise" prohibition withstands vagueness challenge); City of Beaufort v. Baker, 315 S.C. 146, 432 S.E.2d 470, 474 (S.C. 1993) ("reasonable" test is appropriate guide to prohibited conduct in noise ordinance); City of Madison v. Baumann, 162 Wis. 2d 660, 470 N.W.2d 296, 203-04 (Wis. 1991) (reasonable person standard, incorporated in anti-noise ordinance, limits exercise of police discretion and affords notice of what is prohibited).  See also Pro-Choice Network v. Schenck, 67 F.3d 359 (2d Cir. 1994), modified on other grounds en banc, 67 F.3d 377 (2d Cir. 1995), aff'd in part, rev'd in part on other grounds, 519 U.S. 357, 117 S. Ct. 855 (1997) (finding that the term "excessively loud sound," which was defined as "one that injures, disturbs, or endangers the

---

[14] Similar to the City's unreasonable noise statute, the Burlington ordinance at issue in Howard Opera House defined "loud or unreasonable noise" as noise which "disturbs, injures or endangers the health, safety or welfare of the community."  Howard Opera House, 131 F. Supp. 2d at 561.

[15] It should be noted that from a constitutional perspective, "unreasonable noise" statutes which employ an objective standard are distinguishable from "unnecessary noise" statutes which use a subjective standard.  Compare Dae Woo Kim v. City of New York, 774 F. Supp. 164, 169 (S.D.N.Y. 1991), aff'd without opinion, 962 F. 2d 3 (2d Cir.), cert. denied, 506 U.S. 853, 113 S. Ct. 157 (1992) and People v. New York Trap Rock Corp., 57 N.Y.2d 371, 456 N.Y.S.2d 711 (1982) with Sharkeys, 265 F. Supp. 2d 992 ("the word 'unreasonably' creates a relatively objective test.").

health or safety of any patient or employee of a health care facility at which abortions are performed," was sufficiently clear to withstand a vagueness challenge).

Similarly, in Sharkeys, the Court upheld two City of Waukesha noise ordinances, one of which, like Administrative Code § 24-218, prohibits "noise … tending to unreasonably disturb the peace and quiet of persons in the vicinity." In upholding the ordinances, the court stated "neither ordinance is so vague that citizens cannot conform their behavior to its requirements or that it vests excessive discretion in the police." Sharkeys, 265 F. Supp. 2d at 994. Like the Court in Howard Opera House, the Court in Sharkeys also referred to a number of other cases in which "unreasonable noise" statutes have been upheld. See Sharkeys, 265 F. Supp. 2d at 993, citing Reeves v. McConn, 631 F.2d 377, 386 (5th Cir. 1980) (holding that the term "unreasonably loud" is not impermissibly vague); Jim Crockett Promotion, Inc. v. City of Charlotte, 706 F.2d 486, 489 (4th Cir. 1983) ("unreasonably loud" is not unconstitutionally vague). See also DA Mortgage, Inc., 486 F. 3d at 1271 (finding that ordinance stating that it is unlawful to play a device that reproduces sound in such manner "as to disturb the peace, quite and comfort of the neighboring inhabitants" is not vague).

Moreover, contrary to plaintiffs' assertions, the challenged provisions do not violate due process protections because compliance with them is not contingent upon third parties or other factors beyond plaintiffs' control. For example, soundproofing of plaintiffs' bar based upon the maximum decibel level of music played there would ensure compliance. The decibel level of music played is within plaintiffs' control and is ascertainable by plaintiffs. Once the maximum decibel level of music is determined, then the appropriate level of soundproofing insulation material can be installed.

Nor do the possible monetary penalties for commercial music violations demonstrate that the challenged provision disproportionately impacts commercial music. First, it should be noted that the possible penalties asserted by plaintiffs (e.g., $8,000 for the first offense) are only the possible penalties if the recipient defaults and does not appear at the hearing, and not if the recipient is found in violation after a hearing. See Title 15 Rules of the City of New York § 31-115 ("Noise Code Penalty Schedule"). Second, the Noise Code Penalty Schedule also reiterates the language in Administrative Code § 24-231(b)(1) that a zero penalty may be imposed for a first offense upon submission to DEP of an acceptable certification of compliance. Third, in contrast to noise caused by a jackhammer repairing a sidewalk or road which will end once the repair is completed, commercial music emanating from a bar such as plaintiffs', by its very nature tends to be repetitive (night after night) and is stationary (the bar is not moving on to another location). Therefore, the detrimental effect of commercial music emanating from a bar or club on the "peace and quiet of the inhabitants of the city", especially those living above that establishment, is clear. Fourth, whether the commercial music resulting in the issuance of a violation is from a 60 piece band or a single musician, only one violation is issued (and not, for example, 60 violations for each musician). If on the other hand, the operation of five jackhammers results in the issuance of violations, then five violations are issued, one per jackhammer. For all these reasons, it cannot be said that the penalty scheme in the Noise Code disproportionately impacts commercial music and there is no due process violation on this ground.

**B.    The Challenged Provisions of the Prior and Current Noise Codes are not Unconstitutionally Vague Under the Stringent Vagueness Test Applied in First Amendment Cases**

Although plaintiffs do not appear to allege that the challenged provisions of the Noise Codes are vague under the more stringent vagueness test applicable in First Amendment

cases, to the extent that plaintiffs challenge the provisions for violating the First Amendment, any such claims plaintiffs may have would still fail as a matter of law. A more stringent vagueness test is not warranted in situations where, as here, the regulation at issue is completely content-neutral. See Sharkeys, 265 F. Supp. 2d at 990 ("the special exactitude that the Supreme Court applies when the First Amendment is implicated appears to extend primarily to content-based regulations."). As stated by the Court in Sharkeys, "[t]he Supreme Court has shown significant deference in reviewing content-neutral legislation promoting the state's 'substantial interest in protecting its citizens from unwelcome noise.'" Sharkeys, 265 F. Supp. 2d at 990, quoting Rock Against Racism, 491 U.S. at 796, 109 S. Ct. at 2756-57 (1989), quoting City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806, 104 S. Ct. 2118, 2129 (1984). See also New Amber Auto Service, Inc. v. New York City Environmental Control Board, 163 Misc. 2d 113, 116-17, 619 N.Y.S.2d 496, 499 (N.Y. Supreme Ct., N.Y. County 1994) (noting that environmental statutes must speak in general terms and leave room for flexible and reasonable application).

In any event, because the definition of unreasonable noise set forth in Administrative Code § 24-203(ccc) — upon which a violation of the prior Administrative Code § 24-218 is premised — as well as the definition of unreasonable noise set forth in Administrative Code § 24-203(62) — contain words of common understanding, they are not vague under any constitutional standard. There is no question that the definition of unreasonable noise, which includes phrases such as "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities," although not a scientific measurement, is a comprehensible normative standard capable of ready understanding by all who speak English. This was explicitly found to be the case in The Harlem Yacht Club, 40 A.D.2d at 332,

836 N.Y.S.2d at 68.  So too, can there be no question that the decibel levels set forth in sections 24-218 and 24-231 of the Noise Code, satisfy this standard.  See People v. Toback, 170 Misc. 2d 1011, 1015, 652 N.Y.S.2d 946, 949 (City Court, Long Beach 1996) ("The Noise Code is not vague.  The decibel level limitation is clear and precise. 'It tells one and all the specific permissible volume of sound that may be generated by amplifying-equipment . . .'."), quoting Jim Crockett Promotion, Inc.  v. City of Charlotte, 706 F.2d 486, 493 (4th Cir. 1983).

Moreover, plaintiffs cannot demonstrate that any expression has been or will be "chilled" in any way by the challenged provisions.  As set forth above, plaintiffs are not prevented in any way from continuing to host live music at their establishment.  Rather, all that plaintiffs are prevented from doing is hosting music in such a way so as to create unreasonable noise or noise in excess of the levels set forth in the Noise Code.  Any so-called "chill" that plaintiffs might arguably suffer comes not from their alleged inability to understand the "unreasonable noise" and "commercial music" prohibitions, but from the monetary penalties that may legitimately be imposed against them for any subsequent violation of the readily understandable prohibitions.  That the challenged provisions of the Noise Code do not allow plaintiffs to continue to host music (recorded or live) in the exact manner that they hosted music in the past, does not make it vague.[16]  Accordingly, Counts 1, 3 and 5 of the amended complaint should be dismissed in their entirety on these grounds.

---

[16] In any event, the New York State Supreme Court specifically found that the enforcement of an ECB notice of violation issued pursuant to Administrative Code § 24-241.1 was not arbitrary and capricious, particularly the way in which DEP measured the sound of the music levels.  See Reminisce Bar & Lounge v. City of New York Dep't of Env't'l Protection, 178 Misc. 2d 640, 680 N.Y.S.2d 143 (N.Y. Supreme Ct., N.Y. County 1998).  In Reminisce Bar & Lounge, the Court found that an agency's interpretation of its own regulations and statutes is entitled to the greatest weight and "the court will not second-guess the agency's judgment in its area of expertise." Reminisce Bar & Lounge, 178 Misc. 2d at 643, 680 N.Y.S.2d at 144-45.

## CONCLUSION

For the reasons stated above, the Court should grant defendants' motion to dismiss the amended complaint together with such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            August 29, 2007

                          MICHAEL A. CARDOZO
                          Corporation Counsel of the
                            City of New York
                          Attorney for Defendants
                          100 Church Street, Room 5-162
                          New York, New York 10007
                          (212) 788-0782

                          By: *Ave Maria Brennan*
                          AVE MARIA BRENNAN (AB7488)
                          Assistant Corporation Counsel

- 33 -

APPENDIX

LEXSEE 2003 NY MISC LEXIS 858

**[*1]  The People of the State of New York v. The Engineers Country Club, Inc.,  [*2] Defendant.**

**Summons No. 01-03**

**JUSTICE COURT OF NEW YORK, VILLAGE OF ROSLYN HARBOR, NASSAU COUNTY**

*2003 NY Slip Op 51069U; 2003 N.Y. Misc. LEXIS 858*

**June 23, 2003, Decided**

**NOTICE:**      **[**1]**   THIS OPINION IS UNCOR-RECTED AND WILL NOT BE PUBLISHED IN THE OFFICIAL REPORTS.

**COUNSEL:** Karl C. Seman, Esq., Counsel for Defendant.

Michael A. Montesano, Village Prosecutor.

**JUDGES:** David H. Pfeffer, Village Justice, Roslyn Harbor.

**OPINION BY:** David H. Pfeffer

**OPINION**

**JUDGMENT**

The defendant, a local country club, stands accused of violating a local law precluding the playing of outdoor music or the use of an outdoor public address system.

When the matter came onto the calendar for trial on May 19, 2003, the defendant, appearing through counsel, sought leave to file a motion dismissing the Information because of alleged unconstitutionality of the Village ordinance and/or  [*3]  because the Information was allegedly defective, the motion not yet having been served and filed, and no earlier motion to stay having been made.

The defendant's plea of not guilty in lieu of formal arraignment was served on March 11, 2003. The case was set for trial to begin on April 14, 2003. That trial date was then adjourned at defendant's request to May 19, 2003. Thus, the motion to dismiss was sought [**2] to be filed more than 45 days after the plea in lieu of arraignment. Under *CPL § 255.20(3)*, this Court was free to summarily deny the motion. Nevertheless, the Court, in the interest of justice, decided to proceed with the trial

on the merits, and entertain the motion, insofar as it related to alleged unconstitutionality of the Village ordinance, subject to permitting the People an opportunity to respond to the motion within about four weeks. While the motion also asserted a request for dismissal because of an alleged defective information, no basis for relief was set forth and the supporting papers merely asked for dismissal for alleged unconstitutionality.

For the reasons set forth below, the motion to dismiss the information is denied and the defendant is found guilty of violating the Village ordinance as charged.

**The Village Ordinance Involved**

The defendant is charged with violating Roslyn Harbor Village Zoning Code Section 6-1.3 subsection a., item v.

Section 6-1.3 is entitled "Supplemental regulations for use in residential districts" subsection a, of which Item v is a part, is entitled "Private recreational clubs and [*4] outdoor recreational [**3] uses" and sets forth an overall scheme for the protection of surrounding residents. Item i of subsection a. requires interior areas of such clubs to be sufficiently sound insulated or separated from adjacent residential structures so as to avoid "noise nuisance." Item ii requires that the appearance of any structure not be out of character or scale with the neighborhood. Item iii requires suitable screening or buffering adjacent to residential use areas. Item iv restricts intensive outdoor activity and restricts the location of outdoor service facilities. Items viii, ix and x restrict the location of swimming pools, equipment and parking with regard to surrounding residences. Item xii restricts outdoor lighting so as not to impinge on residential property. At issue here is Item v which provides "No outdoor music or public address system shall be provided." In context, the word "outdoor" was intended to apply to

Case 1:07-cv-03560-LAK    Document 24    Filed 08/31/2007    Page 45 of 47

Page 2

2003 NY Slip Op 51069U, *; 2003 N.Y. Misc. LEXIS 858, **

both "music" and "public address system." No prohibition of Item v applies to indoor activities.

### The Nature of Defendant and its Accused Activity

The defendant is a private country club located within a residential district and surrounded entirely by private [**4] residences. The defendant is expressly accused of violating the provision of the zoning ordinance by having an activity conducted outdoors with a live band on July 14, 2002. In the course of questioning by the Court, the defendant has indicated a desire and intention to continue a practice of providing outdoor music including associated amplification.

### [*5]  The Nature of Defendant's Constitutional Challenge

Defendant contends that the Village zoning law provision violates the "Freedom of Speech" provision of the U.S. Constitution, i.e. the First Amendment. At the same time, defendant in its paper concedes that the restriction of the zoning ordinance is "content-neutral."

In addition, defendant asserts first that defendant is denied "due process of law" and then asserts that the ordinance "is a denial of equal protection under the law and therefore unconstitutional." To the extent it can be understood, defendant's equal protection/due process argument is based upon the fact that the outdoor live music, outdoor amplification ban applies only to private recreational clubs within residential districts of which defendant is the only one, and not to other private residents living [**5] in their homes surrounding the defendant club.

### [*6]  The Legal Criteria Used to Decide First Amendment Challenges to Statutes

The Supreme Court of the United States has established the criteria to be used in considering a First Amendment challenge to a statute. In *U.S. v. O'Brien, 391 U.S. 367, 376, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968)*, the Supreme Court stated: "when speech and non-speech elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the non-speech element can justify incidental limitations on First Amendment freedoms." In *Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 104 S. Ct. 3065 (1984)*, the Supreme Court stated: "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions. We have often noted that restrictions of this kind are valid provided they are justified without reference to the content of the regulated speech, that they are narrowly targeted to serve a significant government interest, and that they leave open ample alternative chan-

nels for communication of the [**6] information." The Supreme Court has also noted that local governments have "a substantial interest in protecting its citizens from unwelcome noise." *City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 806, 80 L. Ed. 2d 772, 104 S. Ct. 2118 (1984)*. See also, *Carey v. Brown, 447 U.S. 455, 471, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980)* where the Court said the government's interest in "protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society."

The Supreme Court of the United States has also described the right of residential privacy, i.e. the right of a citizen in his home to be free from the intrusion of [*7] unwanted speech, and the important governmental interest in protecting against such intrusion. See *Frisby v. Schultz, 487 U.S. 474, 484-5, 101 L. Ed. 2d 420, 108 S. Ct. 2495 (1988)*:

One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear ... A special benefit of the privacy all citizens enjoy within [**7] their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom.

See also *Kovacs v. Cooper, 336 U.S. 77, 86-87, 93 L. Ed. 513, 69 S. Ct. 448 (1949)*, where the Court said that "the unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street he is practically helpless with his privacy by loud speakers except through the protection of the municipality."

There is no requirement, as long as the ordinance is content-neutral, for a court to second guess the municipality in determining whether the scheme selected constitutes the least intrusive or least restrictive means available for effectuating the [*8] governmental interest. See *Ward v. Rock Against Racism, 491 U.S. 781, 798, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989)*.

### Application of the Constitutional Standard to this Case

We can assume music is a form of speech that is subject to First Amendment [**8] protection. See *Ward v. Rock Against Racism, 491 U.S. 781, 790, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989)*. The ordinance at issue here does not restrict any specific content of the music. Indeed defendant admits the ordinance is content-neutral. (Seman Aff. P28)

Page 3

2003 NY Slip Op 51069U, *; 2003 N.Y. Misc. LEXIS 858, **

Given the admittedly content-neutral nature of the ordinance involved, and its clear application to a substantial government interest, i.e. protecting the tranquility of residents in their homes, and given the undisputed and substantially unimpeded right [1] of the defendant to play live or amplified music indoors, thereby providing an alternative avenue of communication, the ordinance is presumptively valid. *See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47, 89 L. Ed. 2d 29, 106 S. Ct. 925 (1986).*

1  The only restriction on indoor activities it that the areas be sufficiently sound-insulated or separated from adjacent residential structures. Village Ordinance § 6-1.3a.i.

The defendant's primary challenge [**9] appears to be that some decibel limitation or unreasonable noise prohibition might have been more appropriate than an absolute ban on outdoor music or outdoor amplification. The Court of Appeals for the Second Circuit has stated that there is no constitutional prohibition against a ban on amplification, provided there is a basis for such a ban. *See Housing Works, Inc. v. Kerik, 283 F.3d 471, 481 (2d Cir. 2002).* [*9] There the Court explained that there are inherent problems associated with adjustment of sound volumes and monitoring that make an absolute ban more appropriate. *See also Madsen v. Women's Health Ctr., 512 U.S. 753, 129 L. Ed. 2d 593, 114 S. Ct. 2516 (1994)* [upholding ban against singing, chanting, etc. in vicinity of hospitals, even without a distinction between different levels of noise].

Particularly on point is *Carew-Reid v. Metropolitan Transportation Authority, 903 F.2d 914 (2d Cir. 1990).* There the Second Circuit held that the MTA's absolute ban on amplified music on a subway platform passed constitutional muster, even though the lower court thought that a less restrictive alternative could also eliminate the problem [**10] of offensive noise. Citing to Supreme Court precedent, the Second Circuit noted that "the validity of [time, place or manner] regulations does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interests." *903 F.2d at 918* (alterations in original)(internal quotation marks and citations omitted).

With respect to alternative means for expression, the ordinance does not bar live music indoors, subject only to the requirement for adequate noise insulation. The defendant is free to perform live music, amplified or otherwise indoors. The fact that defendant prefers outdoor music is not relevant to constitutionality. As noted in *Carew-Reid,* "The First Amendment, however, does not guarantee appellees access to every or even the best

channels or locations for their expression." *903 F.2d at 919.*

The need for the Village ordinance is clear from the testimony of Gerald [*10] Unger, a Village resident, whose property abuts that of the defendant club. Mr. Unger testified that because of the music being played at the club for 1 1/2 to 2 hours, music conceded by defendants to be [**11] live outdoor music, he and his guests were seriously disturbed at his home.

The two cases relied on by defendant to support its view of unconstitutionality are inapposite. In *People v. Edinger,* the City Court of Long Beach struck down an absolute prohibition on the use of power blowers, such as leaf blowers, because the court concluded that there was no state of facts that could be reasonably assumed to support the ordinance as an enactment that promotes a legitimate government interest. *179 Misc. 2d 104, 106 (Long Beach City Ct. 1998).* In *Kim v. City of New York,* the court sustained a public preacher's challenge to an unnecessary noise ordinance because the court concluded that the ordinance's definition of unnecessary, which was defined to mean any sound that annoys a person, was both overbroad and vague. *774 F. Supp. 164, 169-70 (S.D.N.Y. 1991).*

The *Edinger* case did not involve a First Amendment issues while the *Kim* case went off on the issue of whether the noise standard could be understood and enforced.

This Court is satisfied that the clear legislative intent to protect residents in their homes surrounding defendant's property is [**12] a proper motivation for the outdoor music and amplification ban, a ban which is content-neutral. On the basis of the authorities discussed above, the challenge to constitutionality of the Village ordinance [*11] based upon First Amendment considerations is overruled.

### The Equal Protection Challenge

The Equal Protection clause requires states to treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985).* An equal protection challenge to an economic or social regulation is subject to a rational basis review since a legislative enactment carries a strong presumption of constitutionality. This strong presumption of constitutionality can be overcome only by showing "beyond a reasonable doubt that there was no rational basis for the adoption of the local law here at issue." *Town of N. Hempstead v. Exxon Corp., 53 N.Y.2d 747, 749, 439 N.Y.S.2d 342, 421 N.E.2d 834 (1981).*

Equal protection claims brought by a "class of one" may be successful where this "class of one" "has been

Case 1:07-cv-03560-LAK    Document 24    Filed 08/31/2007    Page 47 of 47

Page 4

2003 NY Slip Op 51069U, *: 2003 N.Y. Misc. LEXIS 858, **

intentionally treated differently from others similarly situated and that there is no rational [**13] basis for the difference in treatment." *Village of Willowbrook v. Olech, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000)* (per curium) (holding that a property owner stated an Equal Protection claim against a village which demanded a 33-foot easement in order to connect the property owner to the municipal water supply where the village demanded a 15-foot easement from other similarly situated property owners). Since *Olech*, the Second Circuit has stated that an equal protection claim could proceed to trial if either there was no rational basis for the discriminatory treatment received or the action complained of was motivated by animus. *Harlen Assoc. v. Incorporated Village of [*12] Mineola, 273 F.3d 494, 500 (2d Cir. 2001)* (holding that a zoning board's denial of a special use permit for a convenience store did not state an equal protection claim because of the Board's legitimate concern that the convenience store would encourage nearby school children to cross a busy intersection).

Although the ordinance challenged here applies only to this defendant, the only private recreational club within the Village, absent a showing of animus or [**14] ill-will on the part of the Village, the equal protection question is whether the Village has a rational basis for discriminating against outdoor music and public address systems on the defendant's property.

The nature of defendant's activities, by its own admission places it in a unique position in comparison to its surrounding residential neighbor. Private recreational clubs are the only entities permitted by the Village to engage on a regular basis in a residentially zoned area in the business of catering various affairs involving large groups of people and the playing of music, including weddings, showers, bar and bat mitzvahs, christenings, anniversaries, birthdays, mother and father day celebrations, golf and tennis outings, meetings, fund raisers, memorials, and concerts. Seman Aff. PP11, 13. Otherwise, the only other permitted uses in residentially zoned areas within the Village are single family detached dwellings, municipal uses, places of worship, schools, and outdoor recreational uses. None of the permitted uses, other than private recreational clubs, cater to such affairs on a regular basis. No other entities, other than private recreational clubs, have a desire or incentive [**15] to hold such affairs outdoors on a regular [*13] basis.

Both cases cited by defendant in support of its argument are inapposite because such cases involved regulations discriminating on the basis of content. In *Police Department of Chicago v. Mosley, 498 U.S. 92 (1972)* and *Carey v. Brown, 447 U.S. 455, 65 L. Ed. 2d 263, 100 S. Ct. 2286 (1980)*, the challenged regulations distinguished among different classes of speech on the basis of content. The challenged regulation in *Mosley* prohibited all forms of picketing near schools, except for peaceful labor picketing was held to be a content based distinction that violated the Equal Protection clause. The challenged regulation in *Carey* prohibited all forms of picketing of residences, except for the peaceful picketing of a place of employment. The court held that the distinction between the picketing of a place of employment and other forms of picketing was a content-based distinction that violated the Equal Protection clause.

Here, the Court finds that there was a rational basis for establishing specific regulations on noise likely to occur as a result of the catering and other activities of the defendant [**16] club. No motive other than that has been established. No ill will or animus toward the defendant has even been suggested. As a result, the defendant has failed to sustain its burden of establishing invalidity on the basis of constitutional equal protection.

The challenge to constitutionality of the Village ordinance based upon equal protection considerations is overruled.

The motion to dismiss the Information is denied.

### [*14] Decision on the Merits

At the trial, the court heard the testimony of Mr. Unger referred to above. The Court also accepted as an admission of defendant, the statement in paragraph 19 of the Attorney Affirmation by Karl C. Seman, defendant's counsel, as expressly verified by David Shaw, the defendant's General Manager and authorized corporate agent:

"19. On July 14, 2002 the ECC [abbreviation used for defendant Engineers Country Club, Inc.] did sponsor its annual 4th of July celebration where the evening culminated with music performed outdoors by a live band."

The defendant is therefore found guilty of violating Roslyn Harbor Zoning Ordinance § 6-1.3, subsection a., item v. The defendant is ordered to appear for sentencing on July 21, 2003 at [**17] 7:30 p.m.

So ordered this    day of June, 2003.

David H. Pfeffer

Village Justice, Roslyn Harbor

[*15] Decision Date: June 23, 2003