Index No. 07 CV 3560 (LAK) ECF Case

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENCO IMPORTING INC. d/b/a MANITOBA'S and RICHARD MANITOBA,

                                                             Plaintiffs,

- against -

CITY OF NEW YORK, EMILY LLOYD, in her capacity as Commissioner of the New York City Department of Environmental Protection and as Chairman of the New York City Environmental Control Board, NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD,

                                                             Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Ave Maria Brennan*
*Tel: (212) 788-0782*
*NYCLIS No. 2007-015423*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
GENCO IMPORTING INC. d/b/a MANITOBA'S and
RICHARD MANITOBA,

                                   Plaintiffs,

              - against -                      07 Civ. 3560 (LAK)

CITY OF NEW YORK, EMILY LLOYD, in her capacity
as Commissioner of the New York City Department of
Environmental Protection and as Chairman of the New
York City Environmental Control Board, NEW YORK    (ECF Case)
CITY DEPARTMENT OF ENVIRONMENTAL
PROTECTION, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD,

                                   Defendants.
------------------------------------------------------------------- x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

       Defendants, the City of New York, Emily Lloyd, in her capacity as Commissioner of the New York City Department of Environmental Protection ("DEP") and as Chair of the New York City Environmental Control Board ("ECB"), DEP, and ECB, submit this reply memorandum of law in further support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the amended complaint as it fails to state a claim upon which relief can be granted against defendants.

       Plaintiffs' memorandum in opposition has failed to demonstrate how the claims set forth in the amended complaint state a legally cognizable claim against defendants. In fact, the memorandum often exhibits apparent confusion on plaintiffs' part as to the difference between a pleading that gives sufficient notice of the claims alleged and a pleading that states a legally cognizable claim. For example, plaintiffs repeatedly argue that the amended complaint gives notice of their claims, i.e., the two challenged provisions of the Noise Codes allegedly

violate First Amendment and Due Process protections. However, plaintiffs miss the point. While the nature of plaintiffs' claims is readily apparent, the claims themselves are not viable and fail on their face.

As well, the submission of an "expert's" affidavit by plaintiffs suggests even more confusion with the basis for defendants' motion. While such an affidavit may be proper opposition to a motion for summary judgment, it is not proper on a motion to dismiss for failure to state a claim. Whether the result of additional confusion, inadvertence or on purpose, this "expert" affidavit should not be considered as valid opposition to defendants' motion and should be disregarded.

Finally, plaintiffs' opposition fails to show that the challenged provisions of the Noise Codes violate the First Amendment as they contain legally permitted time, place and manner restrictions. Similarly, the challenged provisions are not unconstitutionally vague as they are easily understood by persons of ordinary intelligence. As defendants have demonstrated in the moving papers, the Noise Code provisions, when analyzed under relevant case law, pass constitutional muster as a matter of law and the motion can be decided on this basis. For all these reasons, as well as the reasons set forth in the moving papers, defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint should be granted.

## ARGUMENT

### POINT I

**PLAINTIFFS' FACIAL CHALLENGE TO SECTIONS OF THE OLD NOISE CODE IS MOOT AND NOT JUSTICIABLE**

The New York City Noise Control Code ("Noise Code") was adopted by the New York City Council on December 21, 2005 and became effective July 1, 2007. As of July 1, 2007, the provisions of the Old Noise Code that are the subject of plaintiffs' facial challenge were

superseded.[1] Therefore, any facial challenge to the Old Noise Code is moot as "the relief sought … is no longer needed." Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983).

Plaintiffs' argument that the facial challenge is not moot because they continue to be subject to prosecution for the violations issued under the Old Noise Code fails. This argument would only be relevant if defendants sought to dismiss the as-applied challenge as moot, which they do not. The argument is irrelevant to, and ignores the fact that, defendants' mootness argument only goes to the facial claim. Because the two violations issued under the Old Noise Code remain (although adjourned to a future date pending resolution of this motion), it is only those violations, the subject of the as-applied challenge, in which plaintiffs have a personal stake. Of course, while not moot, the as-applied claims still fail as a matter or law.

Therefore, the facial challenges to section 24-241.1 and 24-218 of the Old Noise Code on First Amendment and Due Process grounds as alleged in Counts 1, 2, 5 and 6 of the amended complaint should be dismissed by this Court.

## POINT II

### THE CHALLENGED PROVISIONS OF THE NOISE CODES DO NOT VIOLATE THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

In response to defendants' First Amendment arguments in support of their motion, plaintiffs essentially argue: (i) that the volume of the music played in their bar is protected speech; (ii) that consideration should be given to the environment of their neighborhood that is "filled with shops, restaurants and nightlife destinations"; (iii) that their protected speech is chilled because compliance is allegedly contingent upon third persons; and (iv) the provisions

---

[1] Plaintiffs' quotation of Administrative Code § 24-218(a) is incorrect (see plaintiffs' memorandum in opposition at 9). The bracketed language was removed from the Old Noise Code and is not in the current Noise Code.

are not narrowly tailored and therefore there is no limitation on discretion in enforcement. As explained below, none of plaintiffs' "arguments" withstand examination and defendants' motion to dismiss should be granted.

First, unlike the license issued in Casey v. City of Newport, 308 F.3d 106 (1st Cir. 2002), upon which plaintiffs rely, which completely prohibited amplification, the Noise Code provisions here do not and defendants do not argue that plaintiffs cannot have amplified music. Moreover, defendants do not, as plaintiffs suggest, ignore the amplification issue. Indeed, defendants rely on Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746 (1989) which is about amplification restrictions and argue that plaintiffs' right to play music may be curtailed by reasonable restrictions on the time, place or manner of the speech. See Rock Against Racism, 491 U.S. at 791, 109 S. Ct. at 2753-54 (1989).

Second, plaintiffs' argument that consideration should be given to its "loud neighborhood" in examining the constitutionality of the Noise Code provisions as applied ignores the fact that the City's significant governmental interest is no less significant in a bustling neighborhood than in a quiet neighborhood. In this case, the "nature of a place" is the City and the articulated public policy "to reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare and the peace and quiet of the inhabitants of the city" is equally applicable to the Lower East Side as to Riverdale.

Third, plaintiffs' protected speech is not chilled because compliance with the Noise Code provisions is not contingent upon actions of third parties. In fact, compliance is within their control as plaintiffs can extrapolate, based on the decibel level of music played in their bar which they do not contest is within their control, the loudness of that music in the apartment above the bar. In making this argument, plaintiffs essentially seek to cast off from

- 4 -

themselves all responsibility for compliance and shift that responsibility onto the shoulders of third persons. If this argument is accepted, then the peace and quiet of the inhabitants of the City can never be ensured.

Moreover, it is reasonable for the commercial music provisions to prohibit commercial music above a certain decibel level "as measured inside any receiving property dwelling unit". Here, the language is narrowly tailored so as to require that sound levels of the commercial music be measured where dwellings are. If the provisions just prohibited commercial music above a certain decibel level, then arguably this might not be narrowly tailored, insofar as there are times and locations where loud music is acceptable. However, just because a person lives on the Lower East Side does not mean that commercial music can be played at the same levels as locations where people do not live. Therefore, the commercial music prohibitions are narrowly tailored because the violation turns, in effect, on how the music impacts a dwelling rather than, for example, a factory.

Contrary to petitioners' arguments regarding discretion and enforcement, the Noise Codes set forth parameters and criteria for enforcement. The discretion exercised in enforcing the Noise Code is not unfettered, as plaintiffs would have this Court believe. Unlike the unreasonable noise prohibitions in Howard Opera House Associates v. Urban Outfitters, Inc., 131 F. Supp. 2d 559, 567 (D. Vt. 2001) which had an "absolute ban, without reference to volume level or any other standard" for the "production or reproduction of sound 'in such a manner as to be audible through walls'", the Noise Code provisions here do not absolutely ban sound and do provide references to volume levels.

Plaintiffs also rely on Turley v. Giuliani, 86 F. Supp. 2d 291, 298 (S.D.N.Y. 2000) (plaintiffs' memorandum in opposition at 31), pointing out that there the Court found

inspectors had to much discretion in deciding which noises to exclude as extraneous in measuring sound levels on the street in Times Square. However, after <u>Turley</u> was decided, DEP added a newly defined term to the Noise Code, i.e., Administrative Code § 24-203(33) "Extraneous sound", so as to limit the discretion of DEP inspectors. Moreover, in connection with the measurements of sound made by the inspectors, <u>Turley</u> discusses outdoor measurements where there is a high likelihood of extraneous sound or interfering noises. In contrast, when measurements are indoors, as in this case, there is little effect of extraneous sounds on the sound meter readings taken by an inspector.

Thus, for all of the reasons set forth above, Administrative Code §§ 24-218 and 24-231 do not violate the First Amendment of the United States Constitution, and plaintiffs' claims should be dismissed.

### POINT III
### THE CHALLENGED PROVISIONS OF THE CITY'S NOISE CODES ARE NOT UNCONSTITUTIONALLY VAGUE

In response to defendants' motion which demonstrates that the challenged Noise Code provisions comply with due process guarantees, plaintiffs state that they have pled enough facts to state a claim for relief (plaintiffs' memorandum in opposition at 12-13, 27). Here, too, plaintiffs again confuse the pleading requirement in Fed. R. Civ. P. 8 which is not the basis of the motion herein, with the actual grounds for defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), i.e., the claims are not legally cognizable.

Plaintiffs continue to confuse the issues when they rely upon <u>People v. New York Trap Rock Corp.</u>, 57 N.Y.2d 371, 456 N.Y.S.2d 711 (1982) and <u>Dae Woo Kim v. City of New York</u>, 774 F. Supp. 164 (S.D.N.Y 1991), <u>aff'd</u>, 962 F.2d 3, <u>cert. denied</u>, 506 U.S. 853, 113 S. Ct 157 (1992) to support their contention that the challenged Noise Code provisions are vague

because they provide only a subjective standard. However, in those two cases, the general prohibition was against "unnecessary noise". New York Trap Rock Corp., 57 N.Y.2d at 375, 456 N.Y.S.2d at 713 and Dae Woo Kim, 774 F. Supp. at 166. In contrast, the Noise Code provisions challenged herein prohibit "unreasonable noise". In contrast to "unnecessary noise" statutes, "unreasonable noise" statutes have been upheld as they provide an objective standard. See cases cited in defendants' memorandum in support at 28-29. Accordingly, insofar as plaintiffs' due process argument is based on lack of objective standard and discretion in enforcement, it fails.

In opposition to defendants' due process arguments, plaintiffs again argue that because compliance with the Noise Code provisions is contingent upon third parties, due process is violated. They assert they "cannot be expected to know whether the music is exceeding the ordinance's decibel limit." (Plaintiffs' memorandum in opposition at 16.) As stated in response to the same argument on the First Amendment issues (supra at 4-5), plaintiffs are in control of the music played in their bar and can extrapolate from that knowledge what they need to do to comply with the Noise Code provisions. If plaintiffs' argument is accepted, then the substantial government interest in protecting the peace and quiet of those inside there dwelling units could never succeed. Curiously, if taken to its logical conclusion, plaintiffs could not object to a provision that measured the volume of music on the sidewalk just outside the bar (or even inside the bar) because then compliance would not be contingent on the acts of a third person. Surely, plaintiffs would object to this location for sound level measurement for many reasons, the least of which would probably be that it does not take into account residences.

Plaintiffs' reliance on People v. Bakolas, 59 N.Y.2d 51, 462 N.Y.S.2d 844 (1983) is equally misplaced. In Bakolas, the court construed a criminal disorderly conduct statute with an "intent" requirement "to cause a public inconvenience" by the making of "unreasonable

noise". In <u>Bakolas</u>, defendants argued that the term "unreasonable noise" in the criminal statute was meaningless, a claim rejected by the Court which found specifically that the "term 'unreasonable noise' is not incapable of definition." <u>Bakolas</u>, 59 N.Y.2d at 53, 462 N.Y.S.2d at 846. The Court upheld the entire statute and rejected the due process attack, addressing all elements in the statute. In any event, the cases that uphold "unreasonable noise" provisions on due process grounds are myriad. <u>See</u> cases cited in defendants' memorandum in support at 28-29, 31-32.

Plaintiffs argue the unreasonable noise provision, as applied to them, violates due process because they received one violation when the volume of the music at the bar was played very loudly such that it exceeded 65 decibels as measured in the complainant's hallway (Sunshine Declaration-Exhibit "B") and they could not be expected to know that measurements, they contend, of louder than 45 decibels "could constitute unreasonable noise" (plaintiffs' memorandum in opposition at 24). The unreasonable noise provision in prior Administrative Code 24-218 prohibited "unreasonable noise" which was defined in Administrative Code § 24-303(ccc) as "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities, injures or endangers the health or safety of a reasonable person of normal sensitivities or which causes injury to plant or animal life, or damage to property or business". Based on this definition, plaintiffs are hard pressed to argue that they were not on notice that music measured at 65 decibels was unreasonable noise. This is especially true insofar as the decibel scale is logarithmic, and an increase of 10 decibels from 45 decibels to 55 decibels will be perceived as a doubling of loudness, and from 55 to 65 decibels is a doubling again of loudness. In effect, plaintiffs argue because DEP was precise in setting forth a basis for the violation and noted on the violation itself a decibel level (which is not required under

unreasonable noise provision), that somehow the provision is vague. This is a far cry from <u>Deegan v. City of Ithaca</u>, 444 F.3d 135, 146 (2d Cir. 2006), upon which plaintiffs rely, where the Court found that the Ithaca noise regulations did not give "fair notice that speaking in a voice that can be heard at a distance of 25 feet, without more, constitutes 'unreasonable noise.'" Plaintiffs' argument turns logic on its head and penalizes DEP for its accuracy. On the contrary, the provision, as applied was not vague.

Plaintiffs' attempt to distinguish the holding of <u>The Harlem Yacht Club v. City of New York Environmental Control Board</u>, 40 A.D.3d 331, 836 N.Y.S.2d 66 (1st Dept. 2007) by arguing that the case was decided upon "a full factual record" also fails. The affirmance by the Appellate Division of the lower court's determination was based on its conclusion that the record supported the finding that The Harlem Yacht Club violated the unreasonable noise provisions. On the other hand, the holding of the Appellate Division that the prior unreasonable noise provisions were not "impermissibly vague" was a legal determination that did not rely on the record. To the extent plaintiffs suggest this legal finding relied on the factual record, they are incorrect.

Plaintiffs similarly attempt to distinguish <u>Sharkeys, Inc. v. City of Waukesha</u>, 265 F. Supp. 2d 984, 990 (E.D. Wisc. 2003) by arguing that it was "decided on a motion for summary judgment upon a complete record". This is truly a distinction without a difference as the court's analysis in <u>Sharkeys</u> is a legal analysis of the facial challenge to an ordinance where the court holds that the ordinance prohibiting "unreasonable noise" does not violate due process as the word "'unreasonably' creates a relatively objective test." <u>Sharkeys, Inc.</u>, 265 F. Supp. 2d at 992. Equally unavailing are plaintiffs' attempts to distinguish <u>Howard Opera House Associates v. Urban Outfitters, Inc.</u>, 131 F. Supp. 2d 559, 566 (D. Vt. 2001), where the Court

held that the challenged ordinance prohibiting any person from making or causing "loud or unreasonable noise" was not vague. Numerous courts (see cases cited in defendants' memorandum in support) have rejected claims virtually identical to the claim herein and have found that "unreasonable noise" prohibitions do not violate due process guarantees.

Lastly, plaintiffs' apparently concede that the penalty scheme in the Noise Code does not disproportionately impact commercial music and there is no due process violation on this ground, as the opposing papers are silent on this point.

## CONCLUSION

For the reasons stated above, the Court should grant defendants' motion to dismiss the amended complaint together with such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         October 12, 2007

                                MICHAEL A. CARDOZO
                                Corporation Counsel of the
                                  City of New York
                                Attorney for Defendants
                                100 Church Street, Room 5-162
                                New York, New York 10007
                                (212) 788-0782

                                By: _____
                                    AVE MARIA BRENNAN (AB7488)
                                    Assistant Corporation Counsel