UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
GENCO IMPORTING INC., et ano.,

                              Plaintiffs,


            -against-                                          07 Civ. 3560 (LAK)


CITY OF NEW YORK, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

            Appearances:

                        David M. Zensky
                        Jason W. Sunshine
                        Ryan N. Marks
                        AKIN GUMP STRAUSS HAUER & FELD LLP
                        *Attorneys for Plaintiffs*

                        Ave Maria Brennan
                        Michelle L. Goldberg-Cahn
                        Assistant Corporation Counsel
                        MICHAEL A. CARDOZO
                        CORPORATION COUNSEL OF THE CITY OF NEW YORK
                        *Attorneys for Defendants*


LEWIS A. KAPLAN, *District Judge.*

            Plaintiffs Genco Importing Inc., d/b/a Manitoba's, and Richard Manitoba operate a

bar in Manhattan's East Village.  They bring this action against the City of New York, alleging that

certain noise provisions of the New York City Administrative Code (the "Code") violate the First

and Fourteenth Amendments of the United States Constitution facially and as applied.  Defendant

moves to dismiss the amended complaint for failure to state a claim upon which relief may be

2

granted.[1]

*Facts*

I.     *The Underlying Events*

The following facts are taken from the amended complaint[2] and assumed true for the purposes of this motion.

Manitoba's is a bar that operates in space leased on the ground floor of a multi-story building at 99 Avenue B between 6th and 7th Streets.[3]  It is surrounded by bars, restaurants, and other commercial establishments, as well as residential units.[4]

Since its opening in January 1999, Manitoba's has presented and promoted live and pre-recorded performances of punk rock music.[5]  Until approximately 2002, it offered live musical performances several times a week, but subsequently limited them primarily to Monday evenings.[6]  Performances typically began at 8:00 p.m. and concluded before 10:00 p.m.[7]  Manitoba's installed

---

[1]     Docket Item 22.

[2]     Docket Item 19 ("Cpt.").

[3]     Cpt. ¶¶ 3, 23.

[4]     *Id.* ¶¶ 24-26.

[5]     *Id.* ¶¶ 3, 23, 27.

[6]     *Id.* ¶ 28.

[7]     *Id.*

3

double-paned windows and two doors to lessen the sound that emanated from the bar.[8]

On October 23, 2006, an inspector from the City Environmental Control Board (the "ECB") investigated a noise complaint made by a resident living on the second floor of the building in which Manitoba's is located.[9] He noted that the ambient sound level was 35 dB(A) and measured a sound level of 53 dB(A) in the apartment,[10] which exceeded the 45 dB(A) maximum permitted under Code Section 24-241.1.[11] The inspector informed staff members at the bar that the sound level in the apartment was attributable to the live musical performance occurring within Manitoba's and issued a notice of violation and hearing.[12]

On February 12, 2007, an inspector investigated another noise complaint from a resident in the same building.[13] The ambient noise level was 48 dB(A) and the sound level "in

---

[8]

  *Id.*

[9]

  *Id.* ¶ 29.

[10]

  *See* Sunshine Decl. Ex. A. The Court may consider the notices of violation and hearing, copies of which were attached to an affidavit submitted with plaintiffs' opposition papers, as those documents are incorporated by reference into the amended complaint.

[11]

  Cpt. ¶ 30. Under the former version of the Code, decibel was defined as "one-tenth of a bel" and "is a unit of level when the base of the logarithm is the tenth root of ten, and the quantities concerned are proportional to power." *See* Code § 24-203(y). Under the current version of the Code, effective July 1, 2007, decibel is defined as "the practical unit of measurement for sound pressure level; the number of decibels of a measured sound is equal to 20 times the logarithm to the base 10 of the ratio of the sound pressure to the pressure of a reference sound." *See* Code § 24-203(25).

[12]

  Cpt. ¶ 30.

[13]

  *Id.* ¶¶ 35, 37.

4

complainant's hallway" was 65 dB(A).[14]  The inspector informed staff members at Manitoba's that the noise level was attributable to its live musical performance and that the bar would be issued a notice of violation if the volume of the performance were not lowered because 65 dB(A) was unreasonable noise within the meaning of Code Section 24-218.[15]  The musical performance had concluded by that time, but Manitoba's received a notice of violation and hearing two weeks later.[16]

After receiving the second notice, Manitoba's ceased live musical performances altogether.[17]  Its average revenues on Monday nights subsequently dropped 47 percent.[18]

## II.    The Statutes[19]

### A.    Commercial Music Prohibitions

At the time plaintiffs received the first notice of violation and hearing, Old Code Section 24-241.1 (the "Old Commercial Music Prohibition") provided that

> "No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or

---

[14]  Sunshine Decl. Ex. B.

[15]  Cpt. ¶ 35.

[16]  *Id.* ¶¶ 35, 36.

[17]  *Id.* ¶ 38.

[18]  *Id.* ¶ 40.

[19]  Two versions of the Code are at issue here.  The first was in effect at the time plaintiffs received their notices of violation and hearing.  The second became effective July 1, 2007. (Citations to the former version appear as "Old Code" and citations to the current version appear as "New Code.")

enterprise when the level of sound of such music, as measured inside any residential unit is in excess of either[:]

"(a) 45dB(A) as measured with a sound level meter; or

"(b) 45dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz inclusive (ANSI bands numbers 18 through 27, inclusive), in accordance with American national standards institute standard S.1.6-1984."[20]

Violators were subject to a fine ranging from $2,000 to $8,000 for a first violation.[21]

The Old Commercial Music Prohibition was replaced by New Code Section 24-231 (the "New Commercial Music Prohibition"), effective July 1, 2007, which provides in relevant part that

"(a) No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound attributable to such music, as measured inside any receiving property dwelling unit:

"(1) is in excess of 42 dB(A) as measured with a sound level meter; or

"(2) is in excess of 45 dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz (ANSI bands numbers 18 through 27, Inclusive), in accordance with American National Standards Institute standard S1.6-1984; or

"(3) causes a 6 dB(C) or more increase in the total sound level above the ambient sound level as measured in decibels in the 'C' weighting network provided that the ambient sound level is in excess of 62 dB(C)."[22]

---

[20]

Old Code § 24-241.1.

[21]

*Id.* § 24-257(b)(5) tbl. V.  Fines range from $4,000 to $16,000 for a second violation and $6,000 to $24,000 for third and subsequent violations.  *Id.*

[22]

New Code § 24-231.

6

The fines for violating New Code Section 24-231(a) are the same as those under its predecessor[23] but may be avoided if an offending party makes permanent improvements to bring it within permissible sound levels or obtains a variance from strict application of the decibel limits.[24]

>    B.    *Unreasonable Noise Prohibitions*

At the time plaintiffs received the second notice of violation, Old Code Section 24-218 (the "Old Unreasonable Noise Prohibition") provided that

> "No person shall make, continue or cause or permit to be made or continued any unreasonable noise, except that this section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section of this title and where there is compliance with all other applicable requirements of law with respect to such sound."[25]

"Unreasonable noise" was defined as

> "any excessive or unusually loud sound that disturbs the peace, comfort or repose of a reasonable person of normal sensitivities or injures or endangers the health or safety of a reasonable person of normal sensitivities, or which causes injury to plant or animal life, or damage to property or business."[26]

Violators of the Old Unreasonable Noise Prohibition were subject to fines ranging from $220 to $875 for a first violation.[27]

---

[23]

>    *See id.* § 24-257(b)(5) tbl. I.

[24]

>    *Id.* § 24-231(b), (d).

[25]

>    Old Code § 24-218.

[26]

>    *Id.* § 24-203(ccc).

[27]

>    *See id.* § 24-257(b)(5) tbl. V.  Fines range from $440 to $1,750 for a second violation and $660 to $2,625 for third and subsequent violations.  *Id.*

7

Section 24-218 was amended, effective July 1, 2007 (the "New Unreasonable Noise

Prohibition"), and now provides in relevant part that

> "(a) No person shall make, continue or cause or permit to be made or continued any unreasonable noise.

> "(b) Unreasonable noise shall include but shall not be limited to sound, attributable to any device, that exceeds the following prohibited noise levels:

>> "(1) Sound, other than impulsive sound, attributable to the source, measured at a level of 7 dB(A) or more above the ambient sound level at or after 10:00 p.m. and before 7:00 a.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.

>> "(2) Sound, other than impulsive sound, attributable to the source, measured at a level of 10 dB(A) or more above the ambient sound level at or after 7:00 a.m. and before 10:00 p.m., as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way.

>> "(3) Impulsive sound, attributable to the source, measured at a level of 15 dB(A) or more above the ambient sound level, as measured at any point within a receiving property or as measured at a distance of 15 feet or more from the source on a public right-of-way. Impulsive sound levels shall be measured in the A-weighting network with the sound level meter set to fast response. The ambient sound level shall be taken in the A-weighting network with the sound level meter set to slow response.

> "(c) Notwithstanding the provisions of subdivision b of this section, where a particular sound source or device is subject to decibel level limits and requirements specifically prescribed for such source or device elsewhere in this code, the decibel level limits set forth in this section shall not apply to such sound source or device."[28]

The Code defines "ambient sound" as "the sound level at a given location that exists

as a result of the combined contribution in that location of all sound sources, excluding the

contribution of a source or sources under investigation for violation of this code and excluding the

---

[28] New Code § 24-218.

8

contribution of extraneous sound sources."[29]  It does not amend the definition of "unreasonable

noise."[30]  A first-time violator now may be punished by a fine ranging from $350 to $1,000.[31]

III.    *The Amended Complaint*

Plaintiffs challenge the former and current versions of both the Commercial Music

and Unreasonable Noise Prohibitions, raising six claims for relief that may be categorized into two

general groups.

The first, third, and fifth claims for relief collectively allege that the Commercial

Music and Unreasonable Noise Prohibitions violate the Due Process Clause of the Fourteenth

Amendment because they are impermissibly vague.  The first specifically contends that the Old and

New Commercial Music Prohibitions are unconstitutionally vague on their face.  The third claim

asserts that the Old Unreasonable Noise Prohibition was vague as applied, and the fifth asserts that

the Old and New Unreasonable Noise Prohibitions are vague on their face.

The second, fourth, and sixth claims for relief collectively allege that the Code

provisions in question infringe upon plaintiffs' First Amendment rights by placing an impermissible

burden on protected speech.  The second specifically challenges the Old Commercial Music and New

Commercial Music Prohibitions, but does not articulate whether these challenges are facial or "as

---

[29]    *Id.* § 24-203(6).

[30]    *See id.* § 24-203(62).

[31]    Second violations now are punishable by a fine ranging from $700 to $2,000 and third and
subsequent violations by fines ranging from $1,050 to $3,000.  *See id.* § 24-257(b)(5) tbl.
I.

9

applied" attacks or both.[32]  The fourth alleges that the Old Unreasonable Noise Prohibition violated

plaintiffs' First Amendment rights as applied.  And the sixth claim for relief contends that both the

Old Unreasonable Noise and New Unreasonable Noise Prohibitions violate the First Amendment

on their face.


*Discussion*

I.      Younger *Abstention*

                Manitoba's is a respondent in pending administrative proceedings before the ECB

in which it is charged with violating certain of the provisions it seeks to challenge here.  This raises

the question whether this Court should entertain the action before the ECB proceedings and any state

court review of the results there are completed.

                A federal district court may abstain from hearing a matter over which it has

jurisdiction if exercising that jurisdiction would interfere unduly with state administrative

proceedings in which the plaintiff could fully and fairly litigate the federal constitutional claim

asserted in the district court.[33]  The parties here, however, have agreed to adjourn the administrative

proceedings pending the outcome of this case.[34]  Notwithstanding that agreement, the Court must

---

[32]

        The Court assumes for purposes of this motion that plaintiffs intended to raise both types
        of challenges.

[33]

        *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986).

[34]

        *See* Tr., Nov. 8, 2007, at 6.

determine as a threshold matter whether it should abstain from exercising jurisdiction.[35]

Plaintiffs may challenge their notices of violation in a hearing before an officer of the ECB.[36]  Plaintiffs then may seek ECB review of the officer's decision and, if unsuccessful, judicial review of the ECB's action in an Article 78 proceeding.[37]  Although Article 78 proceedings are appropriate only for challenging the application of an ordinance,[38] the state courts may entertain a facial challenge by treating an Article 78 petition as a complaint for a declaration that the challenged provision is unconstitutional on its face.[39]

Abstention, however, is "the exception, not the rule."[40]  When a state "voluntarily submit[s] to federal jurisdiction even though it might have had a tenable claim for abstention," it is considered to have waived any abstention claim.[41]  Defendant here has not asked the Court to

---

[35]

Although neither party raised the issue of abstention, the Court may do so *sua sponte*.  *See Naylor v. Case & McGrath, Inc.*, 585 F.2d 557, 563 (2d Cir. 1978).

[36]

Old Code § 24-263.

[37]

*See* 15 R.C.N.Y. § 31-75.

[38]

*See Matter of Kovarsky v. Housing & Dev. Admin.*, 31 N.Y.2d 184, 191 (1972).

[39]

*See, e.g.*, *Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000); *Ellentuck v. Klein*, 570 F.2d 414, 423 (2d Cir. 1978).

[40]

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).

[41]

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986); *see also Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n.9 (1984) ("Since the State's Attorney General has thereby agreed to our adjudication of the controversy, considerations of comity are not implicated, and we need not address the merits of the *Younger* abstention claim."); *Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 480 (1977) ("If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case

abstain.  Rather, the City has conceded that it "ha[s] never invoked . . . abstention in a case like this"

and agreed with plaintiffs to submit to this forum.[42]  Given defendant's position, the Court declines

to abstain.

II.    *The Motion to Dismiss*

    A.    *Standard*

        When deciding a motion to dismiss for failure to state a claim upon which relief may

be granted, the Court considers only facts alleged in and documents attached as exhibits to or

incorporated by reference into the complaint.[43]  The Court ordinarily accepts as true all well-pleaded

factual allegations and draws all reasonable inferences in the plaintiff's favor.[44]  In order to survive

such a motion, however, "the plaintiff must provide the grounds upon which his claim rests through

factual allegations sufficient 'to raise a right to relief above the speculative level.'"[45]

---

back into the State's own system."); *Sosna v. Iowa*, 419 U.S. 393, 396 n.3 (1975); *Christ the King Reg'l High Sch. v. Culvert*, 815 F.2d 219, 223 & n.3 (2d Cir.), *cert. denied* 484 U.S. 830 (1987).

[42]

    Tr., Nov. 8, 2007, at 4-5.

[43]

    *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006).

[44]

    *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001), *cert. denied* 535 U.S. 1054 (2002).

[45]

    *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

B.      *The Old Noise Prohibitions*

This case, in its most general sense, concerns the balance that must be struck between plaintiffs' right to express themselves and defendant's power to regulate that expression in order to reduce the overall level of noise in the City, and how precise the language of those regulations must be in order to provide persons with fair notice of what conduct is prohibited.

1.      *The First Amendment Claims*

Plaintiffs allege that the Old Commercial Music Prohibition and the Old Unreasonable Noise Prohibition (collectively the "Old Noise Prohibitions") violated their free speech rights under the First Amendment by restricting their ability to present amplified punk rock music.

It is common ground that music is a form of expression protected by the First Amendment.[46]  The First Amendment, however, "does not guarantee an absolute right to anyone to express their views[, musical or verbal,] any place, at any time, and in any way they want."[47]  To the contrary, municipalities may enact time, place, and manner restrictions that reasonably limit constitutionally protected expression provided that the restrictions (1) are content-neutral, (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication.[48]

---

[46]
    *See Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989).

[47]
    *Olivieri v. Ward*, 801 F.2d 602, 605 (2d Cir. 1986) (citing *Heffron v. Int'l Soc'y for Krisha Consciousness, Inc.*, 452 U.S. 640, 647 (1981)), *cert. denied* 480 U.S. 917 (1987).

[48]
    *Clark v. Cmty for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006).

The City has "a substantial interest in protecting its citizens from unwelcome noise."[49] Plaintiffs do not dispute the content-neutrality of the Old Noise Prohibitions. Nor do they seriously assert that they have no ample alternative channels for communication.[50] Plaintiffs' First Amendment challenge to the Old Noise Prohibitions turns entirely on the assertion that they are not narrowly tailored to further this significant governmental interest. They attack these provisions both facially and as applied. As a plaintiff generally will prevail on a facial challenge only if it demonstrates also that the statute is invalid as applied, the Court will address plaintiffs' as-applied challenges first.[51]

### a.    The As-Applied Challenges

As-applied challenges "require[] an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the

---

[49]

> *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984); *see Ward*, 491 U.S. at 796; *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972). The purpose of the Code's noise control provisions is to "reduce the ambient sound level in the city, so as to preserve, protect and promote the public health, safety and welfare, and the peace and quiet of the inhabitants of the city . . . ." New Code § 24-202. Moreover, plaintiffs concede that commercial music impacts the ambient sound level of the East Village. *See* Cpt. ¶ 24 ("There are two 'Middle Eastern' bars that play loud dance music heard clearly all over the block."); ¶ 25 ("Weekdays are generally crowded, with a variety of music emanating from the different bar cultures on the block. . . . Suffice it to say, Avenue B is a very active, bustling, and *loud* street.) (emphasis in original).

[50]

> Indeed, although plaintiffs now are refraining from presenting live musical performances, they hosted such performances during the nearly four months between when they received their first and second notices of violation. *See* Cpt. ¶ 5.

[51]

> *See, e.g.*, *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006).

14

individual to whom it was applied of a protected right."[52]  In this case, plaintiffs received their first notice of violation for a sound level of 53 dB(A), as measured in the complainant's apartment,[53] and their second for a level of 65 dB(A), as measured "in complainant's hallway."[54]  These levels corresponded to noises that were nearly two and four times as loud as the statutorily prescribed limit for commercial music sound sources.[55]  Moreover, plaintiffs' own submissions indicate that noises in excess of 60 decibels are considered above the level of comfortable hearing.[56]

Although the amended complaint includes a description of the neighborhood in which the bar is located, it is devoid of facts from which it reasonably might be concluded that the Old Noise Prohibitions were impermissible as applied to the specific sound levels allegedly caused by plaintiffs in that location.  Rather, plaintiffs allege that the Old Unreasonable Noise Prohibition was unconstitutional because its 45 dB(A) sound level limit "subject[ed] to penalty *any* sound louder than the approximate volume of quiet conversation, as measured from anywhere and in any context."[57]

---

[52]

    *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006).

[53]

    Sunshine Decl. Ex. A.

[54]

    *Id*. Ex. B.

[55]

    As decibel levels are calculated using a logarithmic, not a linear, scale, an increase of 10 decibels in a sound level corresponds to a doubling of the loudness of that sound as perceived by the human ear.  Thus, a sound measured at 65 dB(A) is perceived to be four times louder than a sound measured at 45 dB(A).  *See, e.g.*, *Balt. & Ohio R.R. Co. v. Oberly*, 837 F.2d 108, 112 n.1 (3d Cir. 1988).  Further, both sounds were nearly four times as loud as the ambient noise levels measured at the time of the violations.

[56]

    *See* National Institute on Deafness and Other Communication Disorders, Common Sounds, *available at* http://www.nidcd.nih.gov/health/education/teachers/common_sounds.asp.

[57]

    Cpt. ¶ 61 (emphasis in original).

And they contend that the Old Commercial Music Prohibition unconstitutionally chilled protected speech because "commercial music must be played at a volume lower than 45 dB(A), approximately the volume of quiet conversation."[58]

The problem with plaintiffs' argument is that the Old Noise Prohibitions, *as applied to them,* did not affect quiet conversation or its aural equivalent. They were applied, assuming the ECB inspector can prove his charges, to sound levels two to four times louder. As there is nothing in the complaint to suggest that the application of these ordinances to the sound levels that plaintiffs are charged with having generated violated their First Amendment rights, these claims are dismissed.

### b.    The Facial Challenges

Plaintiffs allege also that both of the Old Noise Prohibitions violated the First Amendment on their face because they "burden[ed] substantially more protected speech than is constitutionally permissible to further New York City's noise control policy."[59] The Court construes this as an overbreadth challenge.[60]

---

[58]

    *Id.* ¶ 53.

[59]

    *Id.* ¶¶ 51, 69.

[60]

    *See Grayned v. City of Rockford*, 408 U.S. 104, 114-17 (1972) (discussing narrow tailoring in the context of overbreadth). The amended complaint is ambiguous in raising these claims because plaintiffs fail to articulate the theory under which they intend their challenges to proceed. The "substantial burden" language they employ may be interpreted as raising a classic overbreadth claim, s*ee, e.g.*, *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) ("In a facial challenge to the overbreadth . . . of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.") (internal footnotes omitted), or as a challenge to the facial validity of the statute on the ground that it may never be applied constitutionally because it is not narrowly tailored. *See e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622,

"The traditional rule is that a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court. . . .  What has come to be known as the First Amendment overbreadth doctrine is one of the few exceptions to this principle and must be justified by 'weighty countervailing policies.'"[61]  The overbreadth doctrine is "predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions."[62]  Accordingly, a statute found to be overbroad is invalid *in toto*.

This "is, manifestly, strong medicine," and the overbreadth exception therefore is employed "sparingly and only as a last resort."[63]  A plaintiff therefore may challenge a statute, though it may validly be applied to its own conduct, only if the statute curtails a "substantial" amount of constitutionally protected activity of parties not before the court.[64]

The Old Noise Prohibitions no longer are in force. They therefore do not now reach

---

662 (1994); *Vincenty v. Bloomberg*, 476 F.3d 74, 84 (2d Cir. 2007).  To the extent, however, that it is the latter, such a challenge inevitably fails because plaintiffs have not established as a threshold matter that the Old Noise Prohibitions were invalid as applied.

[61]  *New York v. Ferber*, 458 U.S. 747, 767-68 (1982) (quoting *United States v. Raines*, 362 U.S. 17, 22-23 (1960)).

[62]  *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989); *see also Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006).

[63]  *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973); *Amidon v. Student Ass'n of the State Univ. of New York at Albany*, 508 F.3d 94, 98 (2d Cir. 2007) (citing *Broadrick*).

[64]  *See Oakes*, 491 U.S. at 581; *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) (citing *Broadrick*, 413 U.S. at 615).

a substantial amount of constitutionally protected activity, even assuming *arguendo* that they ever did. Plaintiffs assert only that "[a] favorable decision on its facial claims would result in Manitoba's no longer being subject to prosecution or penalty, and could enable Manitoba's to recover damages for the violation of its constitutional rights."[65]

The Old Noise Prohibitions, so far as the complaint reveals, are a dead letter except insofar as they may be applied to plaintiffs in the adjudication of the charges pending against them before the ECB. In consequence, there is no basis for overbreadth challenges to these repealed or amended ordinances.

### 2.    *The Due Process Claims*

Plaintiffs allege broadly that the Old Noise Prohibitions violated their due process rights under the Fourteenth Amendment because they failed to provide notice as to what conduct they prohibited and therefore were subject to arbitrary and discriminatory enforcement. They challenge the Old Unreasonable Noise Prohibition as applied[66] and the Old Noise Prohibitions collectively as vague on their face.

"The vagueness doctrine is a component of the right to due process."[67] It is based on the principle that "a statute which either forbids or requires the doing of an act in terms so vague that

---

[65]

Docket Item 29, at 12. It is of no moment, however, that facial invalidation of the Old Noise Prohibitions would provide *plaintiffs* with an avenue for relief vis-à-vis the charges made against them.

[66]

*See* Cpt. ¶ 7 (indicating that the Old Commercial Music Prohibition is challenged on vagueness grounds only "on [its] face").

[67]

*Farrell*, 449 F.3d at 485.

men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."[68]  A statute therefore must provide (1) "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and (2) explicit standards so that the law is not subject to arbitrary or discriminatory enforcement.[69]

A court presented with a vagueness challenge examines the text of the ordinance, considered in light of any narrowing interpretations provided by the state's courts.[70]  Where the challenged ordinance allegedly infringes upon First Amendment rights, the doctrine "demands a greater degree of specificity [from the language of the ordinance] than in other contexts."[71]

### a.    The As-Applied Challenge

Plaintiffs contend that the ECB inspector "invented and enforced a 45 dB(A) standard for defining unreasonable noise" and, in consequence, impermissibly issued a notice of violation under the Old Unreasonable Noise Prohibition because the volume of sound attributable to plaintiffs exceeded 45 dB(A).[72]  They argue that they did not have fair notice that music played above 45

---

[68]
   *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926); *see also Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

[69]
   *Hill v. Colorado*, 530 U.S. 703, 732 (2000); *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Farrell*, 449 F.3d at 486; *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir.), *cert. denied* 510 U.S. 933 (1993).

[70]
   *Coates v. City of Cincinnati*, 402 U.S. 611, 613-14 (1971).

[71]
   *Smith v. Goguen*, 415 U.S. 566, 573 (1974).

[72]
   Cpt. ¶¶ 37, 58.

dB(A) would be deemed unreasonably loud because this standard did not appear in the statute. Accordingly, plaintiffs contend, the Old Unreasonable Noise Prohibition was unconstitutionally vague as applied.

Although the Old Unreasonable Noise Prohibition did not refer to specific decibel levels, it did create a safe harbor such that the provision did not apply when (1) another provision of the Code governed the permissible decibel limits of the sound source in question, and (2) the measured decibel level attributable to that source fell within those limits.[73]  Sound attributable to a commercial music source such as plaintiffs was governed by Old Code Section 24-241.1, which prohibited noise in excess of 45 dB(A).[74]  The inspector therefore did not "invent[] . . . a 45 dB(A) standard for defining unreasonable noise."[75]  Rather, he articulated the statutory limit of the safe harbor exception for commercial music and then applied the Old Unreasonable Noise Prohibition to the commercial music sound source in light of the standards set forth in the statute.[76]  This challenge therefore lacks merit.

---

[73]

See Old Code § 24-218 ("[T]his section shall not apply to any sound from any source where the decibel level of such sound is within the limits prescribed by another section").

[74]

See id. § 24-241.1(a).

[75]

Cpt. ¶ 58.

[76]

This is true notwithstanding defendant's statement that the inspector made a mistake when noting that the maximum allowable decibel level was 45 dB(A).  Tr., Nov. 8, 2007, at 33. The notice of violation indicated that the 65 dB(A) sound was (1) "caused and permitted . . . to be made and continued" by plaintiffs, and (2) "unreasonable noise."  Sunshine Decl. Ex. B.

### b.    The Facial Challenges

Courts generally disfavor facial vagueness challenges outside the context of the First Amendment unless the plaintiff can "demonstrate that the law is impermissibly vague in all of its applications."[77]   The same special solicitude afforded First Amendment rights that permits overbreadth challenges, however, similarly permits facial vagueness challenges where the "challenged regulation 'reaches a substantial amount of constitutionally protected conduct.'"[78] Such challenges may be brought, even where the statute might be applied to the plaintiff in a manner consistent with the Constitution, because they are intended as a vehicle to vindicate the free speech rights of parties not before the Court.

Plaintiffs' facial vagueness challenges, however, fail for the same reason as their overbreadth challenges.  They fail to allege any facts from which the Court reasonably could infer that the Old Noise Prohibitions, which no longer are on the statute books, continue to chill the protected speech of parties not before the Court.

### C.    The New Noise Prohibitions

Plaintiffs have not been charged under either the New Commercial Music Prohibition or New Unreasonable Noise Prohibition (collectively the "New Noise Prohibitions").  They assert, however, that they have ceased presenting live, amplified musical acts to avoid being fined and

---

[77]     *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982); *Farrell v. Burke*, 449 F.3d 470, 495 (2d Cir. 2006).

[78]     *Farrell*, 449 F.3d at 496 (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)).

therefore have suffered a significant decline in revenue.[79]  They seek a declaration that the New

Noise Prohibitions are facially invalid because they violate plaintiffs' due process and free speech

rights.

    1.    *The Due Process Claims*

        a.    *The New Commercial Music Prohibition*

Plaintiffs allege that the New Commercial Music Prohibition is facially vague because

compliance requires parties to measure sound levels inside nearby dwelling units, access to which

normally is controlled by third parties.  But this does not fairly state the question.

The New Commercial Music Prohibition sets forth explicitly what it prohibits, and

it places plaintiffs on notice that they may comply by ensuring that noise levels within and

immediately outside their establishment do not exceed 42 dB(A).[80]  The problem, if there is one, is

that it is theoretically possible that plaintiffs could exceed the 42 dB(A) level inside and immediately

outside the bar without exceeding that level in nearby residential units, but would lack the ability to

know whether sound levels in those units also exceeded 42 dB(A).

In order to prevail on a facial vagueness challenge, a plaintiff, as indicated above,

must show that the "challenged regulation 'reaches a substantial amount of constitutionally protected

---

[79]    Cpt. ¶¶ 38, 40.

[80]    Plaintiffs' allegation that the New Commercial Music Prohibition is vague on its face because it is subject to arbitrary and discriminatory enforcement is without merit.  The application of the New Commercial Music Prohibition is based on a technical measurement of decibel levels, something that is not subject to arbitrary or discriminatory application.

conduct.'"[81]  The Court takes this to mean, in this context, that the complaint must allege facts from which it reasonably might be concluded that the uncertainty about the noise level in residential units that could be affected by commercial music sound sources when sound levels generated by those sources exceed 42 dB(A) at and near those sources reaches a substantial amount of constitutionally protected conduct.  As it does not do so, this claim is dismissed.

### b.    The New Unreasonable Noise Prohibition

Plaintiffs allege next that the New Unreasonable Noise Prohibition is facially vague because its "'unreasonable noise' standard deprives ordinary persons of the right to fair notice of the conduct the ordinance[] proscribe[s] and allow [*sic*] for arbitrary and discriminatory enforcement."[82]

In determining whether a statue is unconstitutionally vague, a court may look to cases interpreting similarly worded statutes.[83]   In *Howard Opera House Associates v. Urban Outfitters, Inc.*, the Second Circuit rejected a vagueness challenge to a statute that defined unreasonable noise as "that which 'disturbs, injures or endangers the peace or health of another or . . . endangers the health, safety or welfare of the community.'"[84]  The Circuit in *Deegan v. City of*

---

[81]     *Farrell*, 449 F.3d at 496 (quoting *Kolender*, 461 U.S. at 358 n.8).

[82]     Cpt. ¶ 66.

[83]     *See Howard Opera House Assocs. v. Urban Outfitters, Inc.*, 131 F. Supp. 2d 559, 564 (D. Vt. 2001).

[84]     322 F.3d 125, 128 (2d Cir. 2003) (quoting Burlington Code of Ordinances § 21-13(b)(1)). The court viewed the holding as an extension of its decision in *Pro-Choice Network v. Schenck*, which rejected a vagueness challenge to an injunction prohibiting "excessively loud sound," defined as sound that "injures, disturbs, or endangers the health or safety of any patient or employee of a health care facility at which abortions are performed."  67 F.3d

*Ithaca* rejected a vagueness challenge to an ordinance that defined unreasonable noise as "any sound created or caused to be created by any person which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of the public or which causes injury to animal life or damages to property or business."[85]

The only differences between the challenged provision and those previously upheld are that the New Unreasonable Noise Prohibition (1) bars "unusually loud" as well as excessively loud sounds and (2) is violated when the noise affects a "reasonable person of normal sensitivities" rather than "another," "the public," or the "community."  Neither distinction is sufficient to warrant a different result.

### 2.    The First Amendment Claims

#### a.    The New Commercial Music Prohibition

Plaintiffs allege that the New Commercial Music Prohibition unconstitutionally restricts speech because it prohibits sound attributable to commercial music that exceeds 42 dB(A) when measured inside any receiving property dwelling unit.[86]  They contend that this maximum

---

[85]    359, 373 (2d Cir. 1994), *vacated in part by* 67 F.3d 377 (2d Cir. 1995) (en banc), *aff'd in part, rev'd in part on other grounds*, 519 U.S. 357 (1997).

444 F.3d 135, 138, 145 (2d Cir. 2006); *see also Harlem Yacht Club v. New York City Envt'l Control Bd.*, 836 N.Y.S.2d 66, 68 (1st Dept. 2007) (holding that the Old Unreasonable Noise Prohibition, which contained the identical definition of "unreasonable noise," was not impermissibly vague).

[86]    New Code § 24-231(a).  Despite the statutory limits, inspectors will not enforce the provision unless the sound measures at least 45 dB(A).  *See* Tr., Nov. 8, 2007, at 13.

decibel level, which they claim is approximately the level of quiet conversation,[87] exceeds in strictness anything necessary to further any governmental interest.

Defendant clearly has a significant interest in protecting its citizens from noise and need not employ the least restrictive means when doing so.[88]  Nevertheless, the burden of proving that the 42 dB(A) level is narrowly tailored to serve that interest lies with the City.  It cannot be resolved against plaintiffs on this motion.

b.    *The New Unreasonable Noise Prohibition*

Plaintiffs contend also that the New Unreasonable Noise Prohibition is not narrowly tailored because it fails to consider the context in which the noise occurs.[89]  They argue that, even though Section 24-218(b) factors in the ambient sound level and time of day at which the noise is produced, it does not apply here, pursuant to Section 24-218(c), because the noise is governed by the New Commercial Music Prohibition.[90]

This argument rests on a faulty premise.  Although plaintiffs are correct that Section

---

[87]

Cpt. ¶¶ 32 & n.5, 53.

[88]

*Ward v. Rock Against Racism*, 491 U.S. 781, 796-97 (1989); *Vincenty v. Bloomberg*, 476 F.3d 74, 84-85 (2d Cir. 2007).

[89]

*See Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) ("The nature of a place, the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable.") (internal quotation marks omitted). Plaintiffs' articulation of this challenge is derived from their papers submitted in opposition to the motion to dismiss. *See* Docket Item 29, at 29-31.  This clarifies plaintiffs' position in the amended complaint, in which they seemingly state that the New Unreasonable Noise Prohibition is not narrowly tailored because it is impermissibly vague.  *See* Cpt. ¶ 69.

[90]

*See* New Code § 24-218(b)(1)-(3), (c).

25

24-218(b) does not apply to commercial music sound sources, they overlook the fact that it is not the only subdivision of the New Unreasonable Noise Prohibition that considers the context in which sound is produced. Section 24-218(a) bars unreasonable noises, which by definition are noises as perceived by reasonable persons of normal sensitivities. Whether or not a noise disturbs the peace of a reasonable person will depend upon what a reasonable person would expect in the context in which the noise is perceived. If, as plaintiffs suggest, "Avenue B is a very active, bustling, and *loud* street,"[91] then a reasonable person necessarily would have a different expectation of what is disturbing than he or she might if that same noise were made elsewhere. This challenge therefore lacks merit.

*Conclusion*

For the foregoing reasons, defendant's motion to dismiss the amended complaint [docket item 22] is granted in all respects except plaintiffs' contention that N.Y.C. Admin. Code Section 24-231 burdens substantially more protected speech than is constitutionally permissible.

SO ORDERED.

Dated:        March 31, 2008

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[91]        Cpt. ¶ 25 (emphasis in original).