OFFICE COPY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| GENCO IMPORTING INC. d/b/a MANITOBA'S and RICHARD MANITOBA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF NEW YORK and EMILY LLOYD, in her capacity as Commissioner of the New York City Department of Environmental Protection and as Chairman of the New York City Environmental Control Board,<br><br>Defendants. | Civil Action No. 07 - 3560 (LAK)<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES** |

Plaintiffs Genco Importing Inc. d/b/a Manitoba's and Richard Manitoba (collectively "Manitoba's"), by its attorneys, Akin Gump Strauss Hauer & Feld LLP, as and for its Second Amended Complaint against Defendants, allege as follows:

### INTRODUCTION[1]

1.  The performance and presentation of live music constitutes speech, and is protected by the Constitution of the United States. Of this there can be no dispute.

2.  The *volume at which such music is performed* is an essential component of musical expression and is likewise speech protected by the Constitution from unreasonable

---

[1] On March 31, 2008, this Court issued a Memorandum Decision (the "Decision") dismissing those of Manitoba's' claims arising out of the New York City Administrative Code as it existed prior to July 1, 2007, but preserving the claim that Section 24-231 violates the First Amendment and the claim for damages arising out of the infringement of Manitoba's' constitutional rights. In this Second Amended Complaint, Manitoba's continues to allege, in Count II, that § 24-231 violates the First Amendment, and, in Count I, repleads, in light of the Decision, its claim that New Code 24-231 violates the constitutional right to due process. Manitoba's reserves all rights with respect to those claims that were dismissed by the Decision, including, without limitation, the right to appeal all aspects of the Decision and to raise any claims or make any factual allegations relating to this action in any collateral or administrative proceeding.

1

and/or improper governmental regulation. (*See Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989); *Casey v. City of Newport*, 308 F.3d 106, 118 (1st Cir. 2002).)

3.  This case involves two provisions of the New York City Administrative Code (the "New Code," and, prior to its amendment effective July 1, 2007, the "Code") For many years, Plaintiffs have operated a small bar located at Avenue B and 6th Street in the heart of New York City's East Village. The bar was established principally as a shrine to the punk rock music and performers of the 1970s and other eras as well, and Plaintiffs seek to promote and perpetuate the enjoyment of such music today, in part by presenting new musical acts that bear a relationship to the punk rock genre.

4.  The Code provisions at issue have unreasonably and improperly interfered with Plaintiffs' presentation of live music and, as detailed below, violate Plaintiffs' constitutional rights as provided by the First and Fourteenth Amendments. Under the New Code, such violations continue with respect to Plaintiffs and, upon information and belief, many other establishments, in substantially the same manner.

5.  In or about October 2006, Defendants issued an alleged violation under Code § 24-241.1 against Manitoba's, seeking to impose a fine of $8,000. In or about February 2007, Defendants issued a second alleged violation against Manitoba's, this one under Code § 24-218, seeking to impose a fine of $875. Both violations charged that Plaintiffs had violated certain volume restrictions in connection with live musical performances.

6.  Neither violation has yet been adjudicated. Nevertheless, as a result of the alleged violations issued by Defendants and their potentially ruinous fines, along with the potential for additional violations and fines under the New Code, Manitoba's has been forced to stop

presenting live music performances, with one exception, and thereby forego its First Amendment rights.

7. Upon information and belief, many other establishments are substantially affected by the application of New Code § 24-231 in a manner similar to Manitoba's, including, without limitation, by causing them to refrain from hosting live musical performances or to reduce the volume of such performances in a manner that infringes substantially upon their constitutional rights.

8. Plaintiffs allege that New Code § 24-231 is unconstitutional, because it: (1) violates due process on its face; and (2) substantially burdens protected speech.

9. New Code § 24-231 is unconstitutional because it provides inadequate notice of the conduct it proscribes, makes compliance contingent on the actions of third-party private citizens and other factors wholly beyond the control of establishments subject to the New Code (such as other sound sources, ambient noise, atmospheric conditions, open doors and windows, and the sound-proofing effect of the construction materials used in various structures other than those from which the music is emanating), allows for arbitrary and discriminatory enforcement, disproportionately targets music over other forms of protected speech, and places a severe and unjustified burden on speech in violation of the First and Fourteenth Amendments to the United States Constitution.

10. Under New Code § 24-231, a first-time-offender may be fined up to $8,000. The fine doubles with the second offense and triples with the third—for a potential maximum of $48,000.

11. The fines for violating New Code § 24-231 are wildly disproportionate to those imposable for every other noise violation under the Code, making it clear that the New Code

improperly targets and seeks to deter certain forms of constitutionally protected speech and expression over others. Indeed, though a person issued a first violation under New Code § 24-231 may be fined $8,000, a person shouting at an equivalent volume and in the same context is subject to a maximum fine of just $1,000.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), (4), 2201, and 2202, and 42 U.S.C. § 1983.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred within this District.

## THE PARTIES

14. Plaintiff Genco Importing Inc. d/b/a Manitoba's is a corporation established under the laws of the State of New York. Its principal place of business is at 99 Avenue B in New York City's East Village, between 6th and 7th Streets, where it operates a bar and performance venue known as Manitoba's. Manitoba's has been in continuous operation since January 14, 1999 and since that time has consistently featured pre-recorded and live musical performances.[2]

15. Plaintiff Richard Manitoba, an East Village resident, is part owner of and namesake to Manitoba's. He has been well-known in the music industry for over thirty years as Handsome Dick Manitoba, lead singer for punk rock bands The Dictators, Manitoba's Wild Kingdom, and The MC5.

16. Defendant City of New York, by and through the Office of the Mayor, appoints "the heads of administrations, departments, [and] all commissioners," including the

---

[2] Manitoba's underwent a partial change of ownership in 2005. Richard Manitoba has owned part of the business since founding it in 1999.

Commissioner of the New York City Department of Environmental Protection. (N.Y. City Charter § 6.)

17. Defendant Emily Lloyd is Commissioner of New York City Department of Environmental Protection and Chairman of New York City Environmental Control Board.

18. Defendants are all proper defendants under 42 U.S.C. § 1983 because they enforce the provisions at issue as a matter of official policy and as part of a systematic and deliberate law enforcement effort. At all times herein mentioned, Defendants acted under color of state law.

## FACTS

### A. Manitoba's' History, Purpose, and Surrounding Environment

19. Manitoba's is a world famous shrine to the punk rock music and performers of the 1970s and later eras. Its walls are bedecked with photographs and memorabilia. The music it celebrates – and plays during its hours of operation – often conveys messages of non-conformity and anti-authoritarianism, and is typically loud, fast, and predominated by electric guitars and drums. Examples of this music that may be known to the Court include The Ramones, The Stooges, The Clash, The Sex Pistols, and, from a later time period, Nirvana.

20. Since first opening in January 1999, Manitoba's has occupied a space it leases on the ground floor of a of a multi-story, walk-up building on New York City's Avenue B between 6th and 7th Streets. Avenue B and the surrounding East Village neighborhood have a long history of bars featuring live and pre-recorded music.

21. Today, the East Village in general, and Avenue B in particular, are nightlife destinations. On the same single block stretch as Manitoba's there are four other bars and/or restaurants. There are two "Middle Eastern" bars that play loud dance music heard clearly all

over the block. On the corner, there is a legendary, 60-year-old bar named 7B, which is frequented by New York University students. A French bistro adjacent to Manitoba's plays its jazz music with the windows open. In addition, there are two delicatessens on the block, one of which is open 24 hours a day.

22. This pattern of bars and restaurants exists up and down Avenue B for several blocks in either direction from Manitoba's. Like Manitoba's, many host live musical acts. Weekdays are generally crowded, with a variety of music emanating from the different bar cultures on the block. Weekends are very crowded and the street and its atmosphere can fairly be compared to the busiest and most exciting big city destinations in the country. Suffice it to say, Avenue B is a very active, bustling, and *loud* street.

23. In addition to bars, restaurants, delicatessens, and other commercial establishments, Avenue B contains some residential units, both next to and on top of these commercial establishments. But no one moving here could ever mistake Avenue B for York Avenue, West End Avenue, or any other of New York City's quiet, predominantly residential streets.

24. A central part of Manitoba's' mission is to keep the music it celebrates alive. Thus, showcasing new acts that share a musical, political, and emotional foundation with the punk rock music of the 1970s is extremely important to Manitoba's.

25. Until approximately 2002, Manitoba's presented live musical performances several days a week, generally featuring multi-piece bands using electronically-amplified instruments. Thereafter, Manitoba's limited the live musical performances to about one per week, usually scheduled for Monday evenings. These performances began at approximately eight o'clock p.m. and *ended before approximately ten o'clock p.m.* In addition to restricting the

hours during which it presented live musical acts, Manitoba's has double-paned glass windows and two doors to keep the sound coming from its stereo and jukebox contained inside.

### B. The First Alleged Violation and the Deficiencies of New Code § 24-231

26.    Upon information and belief, on or about October 23, 2006, an inspector associated with Defendants investigated a noise complaint made by a resident of the second floor of the building where Manitoba's is located. Upon information and belief, that resident was aware of Manitoba's' existence and the nature of its business prior to purchasing this apartment.

27.    Following the investigation, the inspector informed Manitoba's' staff that it was in violation of the Code in connection with a live musical performance because the sound level readings the inspector had taken from *inside the complainant's residential unit* purportedly exceeded Code § 24-241.1's 45 dB(A)[3] limit. Sometime after the investigation, Manitoba's received by mail a Notice of Violation and Hearing charging a violation of Code § 24-241.1.

28.    Pursuant to Table V in Code § 24-257(b)(5), Manitoba's may be fined up to $8,000 if found to have violated Code § 24-241.1, $16,000 for a second violation, and $24,000 for a third violation. Further, the Code, in §§ 24-257(b)(8) and (10), appears to authorize Defendants to increase these potential fines by 25% to 100%, depending on the alleged circumstances. These fines are imposed solely for violations in connection with musical performances, are more than twice the amount of the next largest fine imposable for a noise violation and almost ten times larger than the fines imposable under the Code against other types of speech.

---

[3] "dB(A)" is the sound level measurement unit applied to sounds measured, in decibels, "with a sound level meter using the 'A' weighting network." *See* Code § 24-203(a). The Code defines "decibel" as follows: "The decibel is one-tenth of a bel. Thus, the decibel is a unit of level when the base of the logarithm is the tenth root of ten, and the quantities concerned are proportional to power." Code § 24-203(y).

29. A violation of Code § 24-241.1 or New Code § 24-231 is not based on the sound level inside of the place where the music is being performed; rather a violation occurs if a sound measurement taken *inside any residential unit* (under Code § 24-241.1), or *inside any receiving property dwelling* (under New Code § 24-231), exceeds 45 dB(A). 45 dB(A) is approximately the volume of a quiet conversation.[4]

30. It is impossible, however, for Manitoba's, or most, if not all, any other commercial music establishments, to monitor the sound level inside the private residences above, behind, and next to it each time it seeks to present a musical act (much less repeatedly throughout the course of a performance, as the volume of the music varies, and as the effect of ambient sound and other sources of music and noise contributing to the noise levels in any given apartment vary as well). It is therefore impossible for Manitoba's, or most, if not all, other commercial music establishments subject to the New Code, to host musical performances and know if it is in compliance with New Code § 24-231.

31. Manitoba's and, upon information and belief, many other establishments subject to the New Code, are substantially affected by the uncertainty regarding New Code § 24-231's application described above, including, without limitation, by causing them to refrain from hosting live musical performances or to reduce the volume of such performances in a manner that infringes substantially upon their constitutional rights.

32. Moreover, given the high level of ambient noise, including from other music and sound sources, on many busy streets in New York City, such as Avenue B (as described above), over which Manitoba's or any other similarly-situated establishment has no control, it is arbitrary

---

[4] *See* National Institute on Deafness and Other Communication Disorders, Common Sounds, *available at* http://www.nidcd.nih.gov/health/education/teachers/common_sounds.asp.

and grossly unreliable to penalize an establishment on such a street for the noise level in any given residential unit. Likewise, Manitoba's or any other similarly-situated establishment has no control over atmospheric conditions, the opening or closing of doors and windows, and the quality of the materials used in the construction of neighboring residences, all of which affect how sound travels.

### C. The Second Alleged Violation and the Effects of the Challenged Provisions

33. On or about February 12, 2007, Manitoba's was issued another Notice of Violation and Hearing in connection with a live musical performance. The violation purportedly arose under Code § 24-218, the general noise provision.

34. Soon after it received the second violation, Manitoba's, with one exception, ceased presenting live, amplified musical acts to avoid the very real risk of ruinous, repetitive fines. Manitoba's is a small business that averages *gross* receipts of approximately $6,000 per week. Because of the economic magnitude of such potential fines, for the first time in its existence, Manitoba's has completely stopped featuring live music performances, with one exception, since receiving the two notices of violation. Further, Manitoba's has determined that the cost of complete sound-proofing would be prohibitive at this time.

35. The inability to continue to present live musical acts has inhibited Manitoba's' expression and left it unable to fulfill part of its mission to share the music it celebrates with its patrons and thereby keep this music alive.

36. Manitoba's has suffered economic losses as a result of its decision to stop featuring live musical performances. Specifically, its average revenues on Monday nights, the only night on which it featured live musical performances, have dropped 47%.

37.  Upon information and belief, many other establishments are substantially affected by the application of New Code § 24-231, including, without limitation, by causing them to refrain from hosting live musical performances or to reduce the volume of such performances in a manner that infringes substantially upon their constitutional rights

38.  With regard to both violations, a hearing before an administrative law judge associated with Defendant New York City Environmental Control Board is scheduled for a future date. Under New York law, the administrative law judge lacks authority to address Manitoba's' constitutional claims.

## CLAIMS FOR RELIEF

### COUNT ONE
(New Code § 24-231 Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution)

39.  Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 38 as if set forth herein in full.

40.  New Code § 24-231 is entitled "Commercial music" and reads, in relevant part, as follows:

> (a) No person shall make or cause or permit to be made or caused any music originating from or in connection with the operation of any commercial establishment or enterprise when the level of sound attributable to such music, as measured inside any receiving property dwelling unit:
>
> (1) is in excess of 42 dB(A) as measured with a sound level meter; or
> (2) is in excess of 45 dB in any one-third octave band having a center frequency between 63 hertz and 500 hertz (ANSI bands numbers 18 through 27, Inclusive), in accordance with American

>>National Standards Institute standard S1.6-1984; or
>>(3) causes a 6 dB(C) or more increase in the total sound level above the ambient sound level as measured in decibels in the "C" weighting network provided that the ambient sound is in excess of 62 dB(C).

41.     Violation of New Code § 24-231 is based on the sound level as measured *inside any receiving property dwelling*, rather than inside the commercial establishment playing the music itself. It is impossible, however, for Manitoba's, or, upon information and belief, most, if not all, other establishments subject to New Code § 24-231, to monitor the sound level inside the private residences above, behind, and next to them, and therefore impossible for Manitoba's, or, upon information and belief, most, if not all, other establishments subject to New Code § 24-231, to ever again host musical performances and know if it is in compliance with New Code § 24-231.

42.     New Code § 24-231 thus deprives ordinary persons of the right to fair notice of the conduct it proscribes and allows for arbitrary and discriminatory enforcement. Therefore, New Code § 24-231 violates the Due Process Clause of the Fourteenth Amendment because it is unconstitutionally vague.

43.     Through the enforcement of New Code § 24-231, Defendants, acting under color of state law, have deprived and will deprive Manitoba's and, upon information and belief, many other establishments subject to New Code § 24-231, of the rights, privileges, and immunities secured to it by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

## COUNT TWO
### (New Code § 24-231 Violates the Right to Free Speech, Protected by the First and Fourteenth Amendments to the United States Constitution)

44. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 43 as if set forth herein in full.

45. The hosting of live musical performances or playing of pre-recorded music by a commercial establishment constitutes speech protected under the First and Fourteenth Amendments to the United States Constitution.

46. New Code § 24-231 burdens substantially more protected speech than is constitutionally permissible to further New York City's noise control policy. New Code § 24-231, therefore infringes upon the right to free speech protected by the First and Fourteenth Amendments to the United States Constitution.

47. The fines imposable against commercial music are grossly disproportionate to those applicable to other forms of speech of equivalent volume and magnitude. The New Code thus singles out music, which is constitutionally protected speech, and does so in a manner that is insufficiently justified by any governmental interest in reducing noise.

48. New Code § 24-231 unconstitutionally restricts free speech even if it does not target the specific *content* of musical speech. New Code § 24-231's 42 dB(A) limit, under which violations may be issued only where measurements are taken from the inside of a residential unit, renders compliance with New Code § 24-231 contingent on the actions of third-parties and other factors, and requires that those wishing to comply gain access to all residences within audible range of the music. In order to ensure compliance with the provisions in the absence of such access and with no control over the various other factors affecting sound level measurements, commercial music must be played at a volume lower than 42dB(A), approximately the volume of

quiet conversation. As a result, constitutionally protected speech is chilled in violation of the First Amendment.

49. Through the enforcement of New Code § 24-231, Defendants, acting under color of state law, have deprived and will deprive Manitoba's and, upon information and belief, many other establishments subject to New Code § 24-231, of the rights, privileges, and immunities secured to it by the Fourteenth Amendment to the United States Constitution and protected under 42 U.S.C. § 1983.

### COUNT THREE
### (Manitoba's Has Suffered Damages as a Result of the Violation of Its Constitutional Rights)

50. Manitoba's repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if set forth herein in full.

51. On account of Defendants' actions, Manitoba's has suffered damages resulting from lost trade, lost revenues, and the infringement of its constitutional rights.

### JURY DEMAND

52. Manitoba's hereby demands a trial by jury on all issues so triable

### PRAYER FOR RELIEF

WHEREFORE, Manitoba's respectfully asks this Court to enter judgment in its favor and against Defendants:

a. Declaring and determining that the offending provisions of New York City's Administrative Code are void and unenforceable as violative of the United States Constitution;

b. Awarding Manitoba's damages for its unlawful prosecution, the deprivation of its constitutional liberties, and the costs incurred in this litigation, including reasonable attorneys' fees;

c. Granting such other and further relief as the Court may deem just and proper.

880097.0001 EAST 8019821 v2                    13

Dated: New York, New York
       June 16, 2008

*[signature]*

David M. Zensky (DZ5913)
Jason W. Sunshine (JS0562)
Ryan N. Marks (RM6034)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, NY 10022
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)

*Pro Bono Counsel for Plaintiffs*



David M. Zensky (DZ 5913)
Jason W. Sunshine (JS 0562)
Ryan N. Marks (RM 6034)
AKIN GUMP STRAUSS HAUER & FELD LLP
590 Madison Avenue
New York, New York, 10022
(212) 872-1000 (telephone)
(212) 872-1002 (facsimile)

*Pro Bono Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENCO IMPORTING INC. d/b/a MANITOBA'S and RICHARD MANITOBA,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF NEW YORK and EMILY LLOYD, in her capacity as Commissioner of the New York City Department of Environmental Protection and as Chairman of the New York City Environmental Control Board,<br><br>Defendants. | Civil Action No. 07 - 3560 (LAK) |

## CERTIFICATE OF SERVICE

I, Jason W. Sunshine, hereby certify that I caused to be served via first class mail the Second Amended Complaint For Declaratory And Injunctive Relief on this 16th day of June, 2008 upon the following:

                              Ave Maria Brennan, Esq.
                              NEW YORK CITY LAW DEPARTMENT
                              100 Church Street
                              New York, NY 10007

                              *Counsel for Defendants*

Dated: June 16, 2008
       New York, New York

                                                      Jason W. Sunshine